**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PLANNED PARENTHOOD** | : | **Case No. 1:15-CV-568** |
| **SOUTHWEST OHIO REGION, et al.,** | : | |
| **Plaintiffs,** | : | **Judge Michael R. Barrett** |
| **vs.** | : | |
| | : | **PLAINTIFFS' MEMORANDUM IN** |
| | : | **OPPOSITION TO DEFENDANTS'** |
| **RICHARD HODGES, et al.,** | : | **UNIVERSITY OF CINCINNATI** |
| **Defendants.** | : | **MEDICAL CENTER AND UC HEALTH** |
| | : | **MOTION TO DISMISS FOR LACK OF** |
| | : | **STANDING** |
| | : | |

## I.    INTRODUCTION

This case challenges as unconstitutional changes made to the ambulatory surgical facility ("ASF") licensing law. In 2013, the Ohio legislature passed HB 59, prohibiting all "public hospitals" from entering into a written transfer agreement ("WTA") with abortion providers. O.R.C. § 3727.60. The law also prohibits doctors with admitting privileges at a public hospital from entering into a back-up agreement with an abortion clinic to admit patients. Defendants University of Cincinnati Medical Center ("UCMC") and UC Health (collectively "UC defendants") have asked this Court to dismiss all claims against them, arguing that Plaintiffs lack Article III standing. Motion to Dismiss, RE 44. The Court should deny this motion because Plaintiffs have properly pleaded that they have suffered an injury in fact, that UCMC and UC Health caused this injury, and that a declaratory order from this Court will redress the injury.

## II.    FACTS

Ohio requires medical providers performing surgical abortions to obtain an ASF license. To obtain a license, all ASFs must maintain a WTA with a hospital "for transfer of patients in the

event of medical complications, emergency situations, and for other needs as they arise."
Amended Complaint, RE 42, Page ID# 435. In 2013, as part of the omnibus budget bill HB 59,
the Ohio legislature amended the ASF licensing provisions to prohibit any "public hospital" from
"enter[ing] into a written transfer agreement with an ambulatory surgical facility in which
nontherapeutic abortions are performed or induced" and from allowing physicians with
privileges at a public hospital from using those privileges to admit patients as a substitution for a
WTA. Ohio Rev. Code Ann. § 3727.60(B)(1) and (B)(2) ("Public Hospital Ban"). The ban
applies only to clinics that provide abortions and does not apply to any other ASF in the state. *Id.*
at 437.

Plaintiffs PPSWO and WMGPC are the only two remaining abortion providers in
Southwest Ohio. Amended Complaint, RE 42, Page ID# 431. Plaintiff PPSWO operates an ASF
which provides surgical abortions in Cincinnati, Ohio. Prior to the passage of HB 59 and the
Public Hospital Ban, PPSWO had a WTA with UCMC. Amended Complaint, RE 42, Page ID#
443. When HB 59 was passed, UCMC notified PPSWO that it would terminate its WTA with
PPSWO effective September 28, 2013, the day before the effective date of the Public Hospital
Ban. *Id.* PPSWO was denied a WTA by all other local hospitals. *Id.* at 444. PPSWO applied for a
variance from the WTA requirement. *Id.* Without ruling on the variance application, ODH
threatened to revoke PPSWO's ASF license. *Id.* PPSWO filed a lawsuit in federal court, and
soon thereafter, ODH granted a variance to PPSWO. *Id.* at 445. In May 2015, PPSWO applied
for a renewal of its variance. In September 2015, ODH denied the variance and again proposed
to revoke PPSWO's ASF license. *Id.* ODH's stated reason for denying the variance was that
PPSWO named only three back-up physicians. *Id.* In compliance with the Public Hospital Ban,
UCMC is prohibited from allowing its doctors with admitting privileges at UCMC to act as

2

back-up doctors for PPSWO. Ultimately, PPSWO was able to secure a fourth back-up doctor and reapply for a variance. *Id.* at 446. However, because PPSWO does not have a WTA with a hospital, it is in constant jeopardy of having its variance revoked if a back-up doctor quits or for any reason the director of health comes up with.[1] O.R.C. § 3702.304.

WMGPC previously operated an ambulatory surgical facility (ASF) in Sharonville, Ohio called Lebanon Road Surgery Center (LRSC). *Id.* In 2013, LRSC requested a written transfer agreement (WTA) from Defendant UCMC. *Id.* at 448. In a letter dated August 5, 2013, UCMC notified LRSC that it was not able to enter into a WTA due to the recently passed Public Hospital Ban. The letter stated, "Due to recent changes in Ohio law and the ownership and leasehold interests of the City of Cincinnati and the University in [UCMC], we are not able to execute and provide the transfer agreement you requested." *Id.* LRSC was unable to obtain a WTA with another hospital. In January 2014, ODH formally denied LRSC's variance request, and LRSC was forced to cease providing surgical abortions following an appeal to the Ohio court of common pleas. *Id.*

## III. ARGUMENT

To bring a claim in federal court, a plaintiff "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Supreme Court has identified three elements that must be met for a plaintiff to establish Article III standing: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

---

[1] PPSWO recently applied for its 2016 variance on March 31, 2016. PPSWO's 2016 variance request remains pending.

*Cleveland Branch, N.A.A.C.P. v. City of Parma,* 263 F.3d 513, 524 (6th Cir. 2001), quoting

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). The essence of

the standing issue is whether a litigant has "alleged such a personal stake in the outcome of the

controversy as to assure that concrete adverseness which sharpens the presentation of issues

upon which the court so largely depends for illumination of difficult constitutional questions."

*Baker v. Carr*, 369 U.S. 186, 204 (1962).

### A. Plaintiffs' Injury in Fact Is the Threatened Loss of Their Ambulatory Surgical Facility License Without Due Process of Law.

Defendants UCMC and UC Health argue that Plaintiffs PPSWO and WMGPC can show

no "injury in fact" for purposes of Article III standing. An "injury in fact" requires "an invasion

of a legally-protected interest which is (a) concrete and particularized, and (b) 'actual or

imminent, not 'conjectural' or 'hypothetical.'" *Kardules v. City of Columbus*, 95 F.3d 1335,

1346 (6th Cir. 1996), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs can show injury in fact with respect to all of their claims. As this Court has

already held, PPSWO has a constitutionally protected property interest in the continued

operation of its business and in its ASF license. Order Granting Preliminary Injunction, RE 28,

Page ID# 331-32, citing *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Brookpark Entm't, Inc. v.

Taft*, 951 F.2d 710, 716 (6th Cir. 1991); *State v. Hochhausler*, 76 Ohio St. 3d 455, 460 (1996).

Plaintiff PPSWO has alleged that they are at imminent risk of losing their ASF licenses without

due process of law due to the WTA requirement, the Public Hospital Ban, and the Automatic

Suspension Provision. Amended Complaint, RE 42, Page ID# 449. If either Plaintiff were to

provide surgical services without a license, it would be subject to civil penalties between one

thousand and two hundred and fifty thousand dollars and/or daily civil penalties between one

thousand and ten thousand dollars for each day that the ASF operates. Amended Complaint, RE

42, Page ID# 441-42; Ohio Admin. Code § 3701-83-05.1(A); Ohio Rev. Code Ann. § 3702.32

(A). The risk of losing this constitutionally protected property interest without due process of law

as well as the risk of being forced to shut down or suffer civil penalties are sufficient injuries in

fact to claim standing.

   Plaintiffs have also alleged a Fourteenth Amendment Equal Protection challenge based

on the Public Hospital Ban. For purposes of standing in an Equal Protection challenge, the injury

in fact is the discrimination itself, not the ultimate denial of a the benefit:

> When the government erects a barrier that makes it more difficult for members of
> one group to obtain a benefit than it is for members of another group, a member
> of the former group seeking to challenge the barrier need not allege that he would
> have obtained the benefit but for the barrier in order to establish standing. The
> "injury in fact" in an equal protection case of this variety is the denial of equal
> treatment resulting from the imposition of the barrier, not the ultimate inability to
> obtain the benefit. See, *e.g., Turner v. Fouche, supra,* 396 U.S., at 362, 90 S.Ct.,
> at 541 ("We may assume that the [plaintiffs] have no right to be appointed to the
> ... board of education. But [they] do have a federal constitutional right to be
> *considered* for public service without the burden of invidiously discriminatory
> disqualifications") (footnote omitted) (emphasis added).

*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508

U.S. 656, 666 (1993). Applying this principle to the present case, Plaintiffs are also injured for

purposes of standing by the fact that pursuant to the Public Hospital Ban, UCMC may not even

**consider** entering into a WTA with Plaintiffs.

   Finally, Plaintiffs may also assert third-party standing based on the constitutional injuries

suffered by their patients. "It has been held in this Circuit that an abortion clinic has standing to

assert its own claims as well as the constitutional rights of its potential patients." *W. Side

Women's Servs., Inc. v. City of Cleveland, Ohio*, 573 F. Supp. 504, 511 (N.D. Ohio 1983). See

also, *Women's Med. Prof'l Corp. v. Baird*, 277 F. Supp. 2d 862, 870 (S.D. Ohio 2003) *aff'd in

part and vacated in part,* 438 F.3d 595 (6th Cir. 2006) (finding that Dr. Haskell of Women's

Medical Professional Center had standing to assert not only his own rights, but the rights of patients who seek abortions). Plaintiffs have alleged in this case that "the WTA Requirement, Public Hospital Ban and the Automatic Suspension Provision have the purpose and/or effect of imposing a substantial obstacle in the path of women seeking abortions without furthering a valid state interest." Amended Complaint, RE 42, Page ID# 452. The rights of these women to obtain an abortion are "inextricably bound up" with the right of Plaintiffs to continue operating their business. *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1396 (6th Cir. 1987). Furthermore, Plaintiffs are in a better position to assert the rights of their patients because of the interest patients have in protecting their privacy. *Id.* Therefore, Plaintiffs are proper proponents of the third-party rights of their patients. For all these reasons Plaintiffs have sufficiently pled an injury in fact.

### B. Should Plaintiffs Lose their ASF License, the Injury Would Be Fairly Traceable to the UC Defendants.

Should Plaintiffs lose their ASF licenses and be forced to close, this injury would be fairly traceable to UC's compliance with the unconstitutional Public Hospital Ban. Plaintiffs have alleged that Defendants UCMC and UC Health are "persons" under 42 U.S.C. § 1983 and are acting under color of law. Amended Complaint, RE 42, Page ID# 433. A private party may be found liable for a § 1983 claim where its actions are compelled by state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 171 (1970). To establish that a private party acted under color of state law on a state compulsion theory, the state must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Lansing v. City of Memphis*, 202 F.3d 821, 829 (6th Cir. 2000) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)) (internal quotation marks omitted). "More than mere approval or acquiescence in the initiatives of the private party is

6

necessary to hold the state responsible for those initiatives." *Id.* Instead, "a complaining party must demonstrate a sufficient nexus between the challenged action and the regulatory scheme alleged to be the impetus behind the private action." *Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)) (internal quotation marks omitted).

Here, Defendants UCMC and UC Health are private nonprofit corporations. Amended Complaint, RE 42, Page ID# 432-33. However, their decision to terminate their WTA with PPSWO and refusal to enter into a WTA with any abortion provider was compelled by the Public Hospital Ban in HB59. *Id.* at Page ID# 443. The decision to terminate PPSWO's WTA was dictated by the State and was not based on any medical or professional discretion or judgment. The UC Defendants had no discretion to act otherwise. *Id.* Therefore, because the UC Defendants meet the state compulsion test, they acted under color of law and are subject to § 1983 claims, as UCMC effectively concedes. *See* RE 44 at Page ID, n.1.

Having established that Defendants are amenable to a § 1983 claim, Plaintiffs can also show that Defendants' compliance with the Public Hospital Ban was the cause of the alleged constitutional violations. "'Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim.'" *Paige v. Coyner*, 614 F.3d 273, 281 (6th Cir. 2010), quoting *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). A plaintiff must establish both cause in fact and proximate cause. *Id.*

With respect to Plaintiffs' Fourteenth Amendment Equal Protection claim, the causal connection between the UC Defendants' conduct and Plaintiffs' injury is straightforward. Defendants UCMC and UC Health has a discriminatory policy (compelled by statute) of refusing to provide any abortion provider with a WTA. Amended Complaint, RE 42, Page ID# 443.

Furthermore, Plaintiffs have alleged that this discriminatory policy serves no legitimate state purpose. Amended Complaint, RE 42, Page ID# 436, 437, and 452. Therefore, the UC defendants directly caused Plaintiffs' injury in fact, that is, the unconstitutional discrimination.

Plaintiffs have also properly alleged that UCMC and UC Health were both a cause in fact and proximate cause of the Fourteenth Amendment Procedural and Substantive Due Process violations. "'Cause in fact is typically assessed using the 'but for' test, which requires us to imagine whether the harm would have occurred if the defendant had behaved other than it did.'" *Paige*, 614 F.3d at 281, quoting *Powers*, 501 F.3d at 608. Plaintiffs have alleged that but for the Public Hospital Ban and UCMC's decision to arbitrarily and discriminatorily terminate its WTA with PPSWO in compliance with it, PPSWO would not be in jeopardy of losing its ASF license. Amended Complaint, RE 42, Page ID# 447. Likewise, LRSC, WMGPC's clinic in Sharonville, Ohio, would not have lost its license had UCMC not denied it a WTA pursuant to the arbitrary and discriminatory Public Hospital Ban. *Id.* at 448.

Proximate cause in the context of § 1983 cases is framed "as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct. Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." *Powers*, 501 F.3d at 609.

Here, UCMC's compliance with the Public Hospital Ban has foreseeably resulted in the loss of LRSC's ASF license, and has placed PPSWO in jeopardy of losing its ASF license as well. As Plaintiffs have alleged, it was foreseeable that if UCMC did not provide a WTA, no other hospital would provide a WTA because most of the local hospitals are Catholic institutions with a stated opposition to cooperating in the provision of abortion services. Amended

Complaint, RE 42, Page ID# 444. The fact that it was the Ohio Department of Health which ultimately took action to revoke LRSC's ASF license and denied PPSWO's variance applications does not cut off the UC Defendants' liability because ODH's actions were foreseeable.

Because UCMC and UC Health are subject to § 1983 liability, and because they were the actual and proximate cause of Plaintiffs' constitutional injuries, Plaintiff has established the causation element of Article III standing.

**C. A Declaratory Order from the Court Would Redress Plaintiffs' Injury.**

To establish the final element of Article III standing, Plaintiffs must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61, quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 43 (1976). Plaintiffs have asked this Court to issue a declaratory judgment declaring the Public Hospital Ban unconstitutional, that UCMC and UC Health are not prohibited by the Public Hospital Ban from entering into a WTA with Plaintiffs, and that Defendants' doctors are not prohibited from entering into back-up physician agreements with Plaintiffs. Amended Complaint, RE 42, Page ID# 454. Although this relief does not guarantee that the UC Defendants would provide Plaintiffs with a WTA or that UC doctors would enter into back-up agreements with Plaintiffs, it is a necessary step in addressing the constitutional injuries described above. UCMC and UC Health would no longer be coerced into discriminating against abortion providers. This would be sufficient to redress Plaintiffs' Fourteenth Amendment Equal Protection violation. *Ne. Florida Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666.

Furthermore, even though there is no guarantee that the UC Defendants will provide Plaintiffs with a WTA following a declaration that the Public Hospital Ban is unconstitutional,

the court's order would still redress the Procedural and Substantive Due Process violations. A declaratory judgment clarifying that the UC Defendants are not bound by the Public Hospital Ban would redress the injury, even if the UC Defendants could exercise their discretion to deny the WTA on other grounds. *See  FEC v. Akins,* 524 U.S. 11, 25–26 (1998) ("Of course, as the FEC points out, it is possible that even had the FEC agreed with respondents' view of the law, it would still have decided in the exercise of its discretion not to require AIPAC to produce the information. But that fact does not destroy Article III 'causation,' for we cannot know that the FEC would have exercise its prosecutorial discretion this way . . . . For similar reasons, the courts in this case can 'redress' respondents' 'injury in fact.'" (citations omitted)).  A plaintiff may obtain declaratory and injunctive relief requiring the hospital to ignore the unconstitutional state provisions.  *See Doe v. Charleston Area Medical Center*,  529 F.2d 638, 645 (4th Cir. 1975) (ordering hospital to ignore state abortion ban).

As Plaintiffs have alleged, UCMC terminated its WTA with PPSWO and refused to enter into one with LRSC due to the Public Hospital Ban. Therefore, if UCMC were no longer bound by the Public Hospital Ban, it would be free to provide Plaintiff PPSWO with a WTA again. If UC Defendants chose not to enter into a WTA with Plaintiffs once the Court enters its declaratory order, their doctors would still be eligible to enter into back-up agreements to admit patients at UCMC, greatly enlarging the pool of eligible providers needed for obtaining a variance. This relief is not "merely speculative," but rather probable.

Finally, UC Defendants argue that Plaintiffs' proper relief is against the state, not them, since any relief against the State will necessarily resolve all our claims against the UC Defendants. See Motion to Dismiss, RE 44, Page ID # 483.  This argument fails however since Plaintiffs may seek relief against both the state and UC Defendants, even if relief against either

10

defendant would redress the injury. See Fed. R. Civ. P. 20(a)(2) (allowing joinder of defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action" (emphasis added)).

## IV. CONCLUSION

As Plaintiffs have properly pleaded that they have suffered a concrete injury, that Defendants UCMC and UC Health caused said injury, and that a court order declaring the Public Hospital Ban unconstitutional would likely redress the injury, Plaintiffs respectfully request the Court deny Defendants' motion to dismiss.

Respectfully submitted,

Carrie Y. Flaxman
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, D.C. 20005
Tel: (202) 973-4800
Fax: (202) 296-3480
carrie.flaxman@ppfa.org

Jennifer Keighley
Planned Parenthood Federation of America
434 W. 33rd Street
New York, N.Y. 10001
Tel:: (212) 261-4749
Fax:: (212 )247-6811
jennifer.keighley@ppfa.org

*Co-Counsel for Plaintiff Planned Parenthood Southwest Ohio Region*

/s/Jennifer L. Branch
Jennifer L. Branch # 0038893
*Trial Attorney for Plaintiffs*
Alphonse A. Gerhardstein  # 0032053
GERHARDSTEIN & BRANCH CO. LPA
432 Walnut Street, Suite 400
Cincinnati, Ohio 45202
Tel: (513) 621-9100
Fax:  (513) 345-5543
agerhardstein@gbfirm.com
jbranch@gbfirm.com
*Counsel for Plaintiffs Planned Parenthood Southwest Ohio Region and Women's Medical Group Professional Corporation*

11

B. Jessie Hill # 0074770
Cooperating Counsel for the ACLU of Ohio
Case Western Reserve Univ., School of Law
11075 East Boulevard
Cleveland, Ohio 44106
Tel: (216) 368-0553
Fax: (216) 368-2086
bjh11@cwru.edu

*Co-Counsel for Women's Medical Group
Professional Corporation*

Jennifer Lee
Brigitte Amiri
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
Fax: (212) 549-2650
jlee@aclu.org
bamiri@aclu.org

*Of-Counsel for Plaintiff Women's
Medical Group Professional
Corporation*

Freda J. Levenson #0045916
ACLU of Ohio Foundation, Inc.
4506 Chester Avenue
Cleveland, Ohio 44103
Tel: (216) 472-2220
Fax: (216) 472-2210
flevenson@acluohio.org

*Of-Counsel for Plaintiff Women's
Medical Group Professional
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2016  a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail and email upon all parties for whom counsel has not yet entered an appearance electronically, including:

/s/ Jennifer L. Branch
Trial Attorney for Plaintiffs
