# Exhibit 3



ENTERED
JUN 17 2022

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

WOMEN'S MEDICAL GROUP PROFESSIONAL CORPORATION, *ET AL.*,

Plaintiffs,

-vs.-

BRUCE VANDERHOFF, *ET AL.*,

Defendants.

Case No. A 2200704

Judge Alison Hatheway

**ENTRY GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

This matter comes before the Court on Plaintiffs', Women's Medical Professional Group Corporation d/b/a Women's Med Dayton ("WMD"), and Planned Parenthood Southwest Ohio Region ("PPSWO"), Second Motion for Preliminary Injunction. This case involves a challenge to 2021 Am. S.B. No. 157 ("SB 157"), which prohibits ambulatory surgical facilities ("ASF"), such as Plaintiffs, from contracting with backup doctors who teach or provide instruction, directly or indirectly, at a medical school affiliated with a state university or college, or with backup doctors who are employed by and compensated pursuant to a contract with, and provide consultation to, a medical school affiliated with a state university or college, for the purposes of supporting the ASF's request for a variance from Ohio's written transfer agreement ("WTA") requirement.[1]

---

[1] More precisely, SB 157 provides that any physician who serves as a backup or "consulting physician" as required to support a variance application must attest that:

(1) The physician does not teach or provide instruction, directly or indirectly, at a medical school or osteopathic medical school affiliated with a state university or college as defined in section 3345.12 of the Revised Code, any state hospital, or other public institution.

[and]

(2) The physician is not employed by or compensated pursuant to a contract with, and does not provide instruction or consultation to, a medical school or osteopathic medical school affiliated with a state university or college as defined in section 3345.12 of the Revised Code, any state hospital, or other public institution.

R.C. § 3702.305(A).

## FACTUAL BACKGROUND

On February 25, 2022, Plaintiffs filed their Seven-Count Complaint alleging, inter alia, that SB 157 violates: (1) Plaintiffs' substantive due process rights under Article I, Sections 1, 16, and 20 of the Ohio Constitution; (2) their patients' substantive due process rights under Article I, Sections 1, 16, and 20 of the Ohio Constitution; (3) Plaintiffs' right to procedural due process under Article I, Sections 1 and 16 of the Ohio Constitution; and (4) Plaintiffs' right to equal protection under Article I, Section 2 of the Ohio Constitution. Plaintiff WMD filed its Motion for Temporary Restraining Order Followed by Preliminary Injunction. On March 2, 2022, the Court granted Plaintiff's Motion for Temporary Restraining Order and a Hearing on Plaintiff's Motion for Preliminary Injunction was held on April 15, 2022.

On April 15, 2022, Defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them were Temporarily Enjoined from revoking or refusing to renew WMD's ambulatory surgical facility license or otherwise preventing WMD from providing procedural abortion services for reasons related to noncompliance with SB 157 until June 21, 2022. Plaintiff WMD's first Motion for Preliminary Injunction was granted because Defendants, Ohio Department of Health ("ODH"), and its Director, Bruce Vanderhoff, denied WMD's November 30, 2021 request for a variance due to its failure to comply with SB 157 prior to the effective date.[2] By its terms, SB 157 granted clinics 90 days from the effective date of March 23, 2022—that is, until June 21, 2022—to demonstrate compliance with SB 157.

---

[2] WMD was informed that its request for a variance was being denied because all four of its back-up doctors were "credentialed as obstetrician/gynecologists with full active status admitting privileges at Miami Valley Hospital," and all four were professors or instructors at Wright State University Boonshoft School of Medicine.

2

On May 26, 2022, Plaintiffs filed this Motion for Preliminary Injunction presently before the Court. On June 13, 2022, following a briefing period, counsel for all parties appeared via Zoom for a Hearing on the Motion.

## LAW AND ANALYSIS

### A. Standard of Review

Generally, a party seeking a preliminary injunction must demonstrate "that the moving party has a substantial likelihood of success in the underlying suit; that the moving party will suffer irreparable harm if the order does not issue; that no third parties will be harmed if the order is issued; [and] that the public interest is served by issuing the order." *City of Cincinnati v. City of Harrison*, 1st Dist. Hamilton No. C-090702, 2010-Ohio-3430, ¶ 8, citing *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267-68, 747 N.E.2d 268 (1st Dist. 2000). The purpose of a preliminary injunction is to preserve the status quo. *Martin v. Flick*, 150 N.E.2d 314, 316 (1st Dist. 1958).

### B. Analysis

#### 1. *Likelihood of Success on the Merits*

Plaintiffs argue that unless this Court enjoins Defendants from revoking or refusing to renew Plaintiffs' due to their non-compliance with SB 157, Plaintiffs' patients' fundamental right to privacy will be violated.[3] When legislation infringes on fundamental rights, the Ohio Constitution requires it to survive strict scrutiny to be upheld. *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000). "Under the strict-scrutiny standard, a statute unconstitutionally infringes

---

[3] As this Court has previously determined in the case of *Planned Parenthood Sw. Ohio Region v. Ohio Dep't. of Health*, "third-party standing [for abortion providers on behalf of their patients] is available in circumstances like these," Hamilton C.P. No. A 2100870, Entry Granting Pls.' Second Mot. For Prelim. Inj. at 3-4.

3

upon a fundamental right unless the statute is necessary to promote a compelling governmental interest and is narrowly tailored to achieve that interest." *Oliver v. Feldner*, 7th Dist. Noble No. CA-290, 149 Ohio App.3d 114, 121, ¶ 40, 776 N.E.2d 499 (2002). The burden rests on the State to show that its interest is compelling and that the law is narrowly tailored. *In re Jud. Campaign Complaint Against O'Toole*, 2014-Ohio-4046, 141 Ohio St.3d 355, 361, ¶ 20, 24 N.E.3d 1114.

Plaintiffs argue that SB 157 fails under strict scrutiny because the State cannot show that SB 157's prohibition on physicians serving as backup doctors based on direct or indirect affiliation with a state university furthers any compelling government interest. Defendants argue that strict scrutiny does not apply under the Ohio Constitution and that the statute need only survive rational basis review. Defendants' argument is not well taken. This Court has previously determined that a fundamental right to privacy exists under the Ohio Constitution and continues to do so. Therefore, to survive strict scrutiny, Defendants must demonstrate that the statute is necessary to promote a compelling governmental interest and that it is narrowly tailored to achieve that interest.

Defendants argue that no compelling interest is necessary because Plaintiffs lack third-party standing to sue on their patients' behalf. Further, they argue that no fundamental right to abortion exists under the Ohio Constitution. While the Court finds Defendants' argument to be not well taken, the Court finds that SB 157 fails even under rational basis review. Defendants argue that SB 157 survives rational basis review because it is rationally related to the legitimate purpose of preventing public funds for abortion. Defendants also assert that it is rationally related to the interest in "the health, safety, and welfare of citizens." Defendants summarily argue that SB 157 is rationally related to these purposes but fail to articulate how so. The intended purpose of back-up doctors is to provide life saving care in the rare emergency circumstances resulting from a procedural abortion, not provide or assist in providing procedural abortion. To prohibit otherwise

4

qualified physicians from being able to provide such care, as this statute appears to do, is contrary to the State's interest in "the health, safety, and welfare of citizens." Therefore, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on their patients' substantive due process claim.

### 2. *Plaintiffs Patients will Suffer Irreparable Harm Without Relief*

The Court finds that Plaintiffs' patients will suffer irreparable harm if Defendants are permitted to enforce SB 157. Because Plaintiffs will be unable to provide procedural abortions, there will be no procedural abortion centers in the Southwest Ohio region and patients will be forced to travel to Columbus, Ohio or further for that type of care. It is clear that this would cause undue and severe, if not insurmountable, burdens for those who are low-income.

### 3. *No Third Parties will be Harmed*

Because Plaintiffs have been providing safe abortion care in accordance with applicable laws, including laws that require back-up doctors for the purpose of providing lifesaving care in the rare event of an emergency, for decades, the Court finds that no third parties will be harmed if Defendants are enjoined. In fact, the public interest will be served by allowing abortion providers to continue providing this essential and constitutionally protected health care.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is hereby **GRANTED**. Defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them are **PRELIMINARILY ENJOINED** from revoking or refusing to renew Plaintiffs' ambulatory surgical facility license or otherwise preventing WMD from providing procedural abortion services for reasons related to non-compliance with SB 157 until final judgment is entered in this case. Because the relief granted to

Plaintiff will not result in monetary loss to Defendant, the Court hereby sets Plaintiff's Civ.R.65(C) bond requirement at $0.00.

**IT IS SO ORDERED.**

Dated: **JUN 1 7 2022**

Judge Alison Hatheway