# Exhibit 9

Case 2:11-cv-02365-CM-KMH Document 3 NAUSER Filed v08/10/11 PMoseR 1 et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 2 of 53 PAGEID #: 3405

1

```
 1              UNITED STATES DISTRICT COURT
                    DISTRICT OF KANSAS,
 2
      HODES & NAUSER, MD's, PA,
 3                        et al.,
                                   Docket No. 11-2365-CM
 4
        Plaintiff,              Kansas City, Kansas
 5                              Date: 7/1/11
          v.
 6
      ROBERT MOSER, et al,
 7
        Defendants.
 8    ...................

 9                    TRANSCRIPT OF
           TEMPORARY RESTRAINING ORDER HEARING
10         BEFORE THE HONORABLE CARLOS MURGUIA,
                UNITED STATES DISTRICT JUDGE.
11
      APPEARANCES:
12
      For the Plaintiffs:   Teresa A Woody
13                          Woody Law Firm, PC
                            1621 Baltimore Avenue
14                          Kansas City, MO  64108

15                          Bonnie Scott Jones
                            Center for Reproductive Rights - NY
16                          120 Wall Street - 14th Floor
                            New York, NY  10005
17
      For the Defendants:   Jeffrey A Chanay & Steve R Fabert
18                          Office of Attorney General - Topeka
                            120 SW 10th Avenue - 2nd Floor
19                          Topeka, KS  66612-1597

20    Movant:               Cheryl A Pilate
                            Morgan Pilate LLC
21                          142 N Cherry
                            Olathe, KS  66061
22
      Court Reporter:       Nancy Moroney Wiss, CSR, RMR, FCRR
23                          Official Court Reporter
                            558 US Courthouse
24                          500 State Avenue
                            Kansas City, KS  66101
25
```

Case 2:11-cv-02365-CM-KMH Document 36 Filed 10/31/11 Page 3 of 53
HODES & NAUSER v. MOSER, et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 3 of 53 PAGEID #: 3406

2

| | | |
|---|---|---|
| 15:03:16 | 1 | THE COURT: Give me a moment please just to |
| 15:03:18 | 2 | set up here. Let the record show we're here regarding |
| 15:03:44 | 3 | Case Number 11-2365. It's a case entitled -- may have |
| 15:03:53 | 4 | to help me with the pronunciation of the plaintiffs' |
| 15:03:55 | 5 | names. |
| 15:03:55 | 6 | MS. WOODY: Doctors Hodes and Nauser. |
| 15:03:59 | 7 | THE COURT: Hodes and Nauser versus Moser, |
| 15:04:04 | 8 | et al. Would the parties please enter their appearance? |
| 15:04:06 | 9 | MS. WOODY: Your Honor, Teresa Woody on |
| 15:04:08 | 10 | behalf of the plaintiffs, and here are Doctor Hodes and |
| 15:04:11 | 11 | Doctor Nauser, and with me is Bonnie Scott Jones who's |
| 15:04:14 | 12 | been admitted pro hac vice this morning. |
| 15:04:17 | 13 | THE COURT: Thank you. |
| 15:04:19 | 14 | MR. CHANAY: Your Honor, on behalf of the |
| 15:04:21 | 15 | defendant, it's Jeffrey Chanay, Deputy Attorney General |
| 15:04:24 | 16 | of Kansas, and with me is Steve Fabert, Assistant |
| 15:04:27 | 17 | Attorney General. |
| 15:04:28 | 18 | THE COURT: Thank you. Appreciate the |
| 15:04:29 | 19 | parties accommodating the court with the scheduling of |
| 15:04:32 | 20 | this hearing on very short notice. There is something |
| 15:04:36 | 21 | before and pending at this time, which would be |
| 15:04:40 | 22 | plaintiffs' motion for temporary restraining order |
| 15:04:44 | 23 | and/or preliminary injunction, which is Document Number |
| 15:04:48 | 24 | Four. This morning, the court granted Aid For Women's |
| 15:04:53 | 25 | motion to intervene as well as Aid for Women has filed a |

Case 2:11-cv-02858-OM-KMH Doc: 1800 GONADSFiled: 10/91 vPage3of 5t al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 4 of 53 PAGEID #: 3407

3

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 15:04:58 | 1  | motion to join plaintiff's motion for temporary          |
| 15:05:01 | 2  | restraining order and/or preliminary injunction, which   |
| 15:05:04 | 3  | is Document 27.  Upon review of the motion, the court    |
| 15:05:09 | 4  | grants Aid for Women's motion.  As a result, for our     |
| 15:05:14 | 5  | record, Miss Pilate, if you could enter your appearance  |
| 15:05:19 | 6  | as well here at this hearing.                            |
| 15:05:20 | 7  | MS. PILATE:  Thank you, Your Honor.  Good                |
| 15:05:22 | 8  | afternoon.  Cheryl Pilate for intervenors Central Family |
| 15:05:27 | 9  | Medical, LLC, doing business as Aid for Women, and also  |
| 15:05:31 | 10 | representing Doctor Ronald Yeomans who is present with   |
| 15:05:34 | 11 | me at counsel table.  Thank you.                         |
| 15:05:38 | 12 | THE COURT:  In regards to our court                      |
| 15:05:39 | 13 | appearance this afternoon, the court has scheduled this  |
| 15:05:43 | 14 | to be heard, but with that, there's some time            |
| 15:05:47 | 15 | limitations the court has informed the parties about     |
| 15:05:51 | 16 | regarding their arguments or however you want to use     |
| 15:05:55 | 17 | your time.  Hopefully, you both were -- all of you were  |
| 15:05:58 | 18 | informed, and you have 30 minutes per party, and we      |
| 15:06:04 | 19 | actually have set up a timer that will be placed in      |
| 15:06:09 | 20 | front of the podium that I would trust and ask that you  |
| 15:06:14 | 21 | monitor and keep track of, and what I'll do is let you   |
| 15:06:19 | 22 | know if you want a warning when you're about to have     |
| 15:06:22 | 23 | your time expire.  I would request please that when that |
| 15:06:26 | 24 | timer shows that you have zero time remaining, that you  |
| 15:06:29 | 25 | stop.  If not, I will have to interrupt you with         |

Case 2:11-cv-02365-CM-KMH HODES & NAUSER v. MOSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 5 of 53 PAGEID #: 3408

4

| | | |
|---|---|---|
| 15:06:33 | 1 | whatever is being presented or being argued.  Yes? |
| 15:06:37 | 2 | MS. WOODY:  Your Honor, we would like to |
| 15:06:39 | 3 | divide the argument and provide at least a short period |
| 15:06:42 | 4 | of time for intervenors to make a comment to the court |
| 15:06:46 | 5 | with respect to the argument. |
| 15:06:48 | 6 | THE COURT:  That's fine.  If there's nothing |
| 15:06:50 | 7 | else, we'll start at this time.  Miss Woody. |
| 15:06:54 | 8 | MS. WOODY:  Good afternoon, Your Honor.  May |
| 15:07:03 | 9 | it please the court.  We are here on behalf of Doctors |
| 15:07:07 | 10 | Hodes and Nauser requesting injunctive relief of the |
| 15:07:10 | 11 | licensing process and temporary regulations promulgated |
| 15:07:14 | 12 | under Senate Bill 36.  Doctor Hodes and Doctor Nauser |
| 15:07:17 | 13 | are very well respected physicians with a clinic located |
| 15:07:21 | 14 | in Overland Park, Kansas where they operate an |
| 15:07:24 | 15 | obstetrics and gynecology practice.  Doctor Hodes has |
| 15:07:28 | 16 | been practicing in this field for over 30 years.  Doctor |
| 15:07:32 | 17 | Nauser has been practicing with Doctor Hodes for |
| 15:07:35 | 18 | 13 years, and he is her father.  Doctor Nauser and |
| 15:07:39 | 19 | Doctor Hodes have a full OB/GYN practice which includes |
| 15:07:43 | 20 | a full range of services including gynecological |
| 15:07:47 | 21 | surgeries.  They also perform abortions in their |
| 15:07:49 | 22 | practice, and especially are referred to by other |
| 15:07:52 | 23 | physicians in instances where there are complications, |
| 15:07:54 | 24 | medical complications for the woman, or where there is a |
| 15:08:00 | 25 | fetal anomaly that would require an abortion.  They have |

Case 2:11-cv-02365-CM-KMH HODES & NAUSER v. MOSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 6 of 53 PAGEID #: 3409

5

15:08:06 1  been providing these services at their same clinic in

15:08:09 2  Overland Park for over 24 years without incident.  Since

15:08:13 3  2002, their practice like all other practices in the

15:08:16 4  state of Kansas where office surgeries are performed in

15:08:21 5  a physician's office have been regulated by the Kansas

15:08:25 6  Board of Healing Arts, which in 2002 had a panel of some

15:08:28 7  35 doctors who promulgated standards for offices in

15:08:32 8  Kansas where office surgeries were performed.  With

15:08:37 9  respect to these regulations which apply to all surgical

15:08:40 10  procedures and offices, whether -- not just abortions,

15:08:43 11  but other procedures for dental procedures,

15:08:49 12  gastroenterology, all those sorts of surgeries that can

15:08:51 13  be performed in an outpatient basis at a doctor's

15:08:54 14  office, many of which are far more risky and invasive

15:08:59 15  than abortion procedures performed at Doctor Hodes and

15:09:02 16  Doctor Nauser's office, they've been regulated under

15:09:04 17  these -- these standards promulgated by the board of

15:09:07 18  healing arts for some eight years, and they are

15:09:10 19  inspected routinely with respect to these procedures by

15:09:13 20  representatives of the Kansas Board of Healing Arts.

15:09:19 21          On May 16th of this year, however, the

15:09:22 22  Kansas legislature enacted Senate Bill 36, and under

15:09:25 23  that bill, said that it would become effective July 1st,

15:09:30 24  and that anyone who was not licensed, any provider who

15:09:33 25  was not licensed as of that date would not be allowed to

Case 2:11-cv-02357-KM-MHODES, u.ReNAUSER filed,1071 v. MOSER, et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 7 of 53 PAGEID #: 3410

6

15:09:36  1    perform abortions, and that any abortions performed

15:09:39  2    after that date without a license would be considered a

15:09:41  3    crime.  KDHE was charged with implementing regulations

15:09:45  4    under that act, and it is those temporary regulations

15:09:49  5    and the licensing procedure that we are asking the court

15:09:52  6    to enjoin today.

15:09:55  7             That occurred on May 16th, the act was

15:09:59  8    enacted.  Doctor Hodes and Doctor Nauser immediately

15:10:01  9    reached out to the KDHE to say it's going to be

15:10:04  10   impossible for you to both promulgate regulations and

15:10:08  11   give the providers an opportunity to comply in a very

15:10:11  12   limited time before July 1st.  They basically heard

15:10:15  13   nothing until May 26th when they were told that

15:10:18  14   temporary regulations would be forthcoming.  On July

15:10:22  15   9th, they did receive a copy of draft regulations from

15:10:26  16   the KDHE.

15:10:26  17            THE COURT:  June 9th?  June 9th?

15:10:29  18            MS. WOODY:  June 9th.  I'm sorry, on

15:10:31  19   June 9th, they received -- they received the draft of

15:10:33  20   the temporary regulations from the KDHE, and these

15:10:37  21   imposed stricter regulations, more stringent regulations

15:10:41  22   on their facility than had previously been -- that they

15:10:44  23   had previously been subject to under the standards of

15:10:48  24   the board of healing arts.  They were also told that

15:10:52  25   they would have a licensing application, that the

Case 2:11-cv-00366-KMHODGE RENAGSER Filed/10/VPA vPage 7 of 53t al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 8 of 53 PAGEID #: 3411

7

15:10:55    1    licenses would -- application would be available on

15:10:57    2    June 13th, and that they were to have their -- their

15:11:00    3    license application submitted no later than June 17th.

15:11:04    4    On June 13th, in the intervening time-frame, they -- in

15:11:09    5    addition to getting the license application, they also

15:11:11    6    received notice that the regulations, the draft

15:11:14    7    regulations they had initially been provided on June 9th

15:11:17    8    were being revised, and that they would get revised

15:11:20    9    copies of those regulations at some point in the future,

15:11:23   10    those temporary regulations.

15:11:26   11            That occurred after they had actually

15:11:29   12    submitted their application on June 17th, as was

15:11:32   13    required procedurally.  They then received on the

15:11:35   14    morning of June 20th new regulations that -- new

15:11:39   15    temporary regulations and were told that these temporary

15:11:42   16    regulations would be the ones that would be applied to

15:11:44   17    determine whether they were able to get a license on

15:11:47   18    July 1st.  These new regulations were far more stringent

15:11:51   19    even than the draft regulations that had been provided

15:11:55   20    to them on June 9th.  They had extremely strict

15:11:58   21    standards, provided, for instance, for two hours of

15:12:01   22    recovery for any patient of an abortion procedure, an

15:12:05   23    amount of recovery time far in excess of anything

15:12:08   24    required either at the Kansas hospitals or Kansas

15:12:12   25    ambulatory surgical centers for much more invasive and

Case 2:11-cv-02835-JWM-KMH HODES & NAUSER, MDs, PA v MOSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 9 of 53 PAGEID #: 3412

8

15:12:16  1   risky surgical procedures.  They also imposed extremely

15:12:19  2   strict physical plan regulations mandating the size of

15:12:24  3   the rooms in which procedures could be performed,

15:12:26  4   mandating that each room have its own washing -- hand

15:12:30  5   washing and facilities, sink and a lavatory by itself

15:12:34  6   attached to each procedure room, and standards such as

15:12:37  7   requiring 50 square feet of janitorial storage for each

15:12:41  8   procedure room which for the Hodes practice and Nauser

15:12:45  9   practice would have meant 350 square feet of janitorial

15:12:48  10  storage alone.

15:12:51  11          Upon reviewing these regulations, Doctor

15:12:55  12  Hodes and Doctor Nauser reached out to the KDHE, and

15:12:58  13  asked if there would be waivers available, because it

15:13:01  14  was impossible for them to comply by July 1st.  It would

15:13:06  15  have required them essentially to tear down their

15:13:08  16  building and re-build it, totally reconfigure it and --

15:13:12  17  and make it larger.  They were told there would be no

15:13:16  18  waivers, and that they -- if they were -- failed to be

15:13:19  19  in compliance by July 1st, their license would be

15:13:22  20  denied.  This is inconsistent with the way other Kansas

15:13:25  21  state regulations have been applied, particularly ones

15:13:27  22  for hospitals where when there's a change in the

15:13:29  23  physical plan for a hospital facility, they've been

15:13:32  24  given up to two years to make those changes.  But for

15:13:35  25  these providers, and there are only three providers of

Case 2:11-cv-02856-JM-KMH HODES & NAUSER, MDs, PA v MOSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 10 of 53 PAGEID #: 3413

9

15:13:38  1   abortions in the state of Kansas that were affected by

15:13:40  2   these, for these three providers, there was a -- they

15:13:43  3   were to comply with these regulations within nine days

15:13:46  4   of having received these regulations or their license

15:13:49  5   would be denied.

15:13:52  6           Obviously, there was an inspection scheduled

15:13:55  7   for even sooner than that.  The original inspection was

15:13:57  8   scheduled for June 27th, and they asked to have that

15:14:02  9   moved until June 29th, but even so, recognized that it

15:14:06  10  would be totally impossible for them to comply with

15:14:08  11  these regulations, come the physical plan status alone,

15:14:14  12  and so, they have moved this court for temporary

15:14:17  13  injunction.  They knew there's -- the state has raised

15:14:20  14  an argument that there's some potential waiver because

15:14:23  15  they didn't go through and exhaust their administrative

15:14:27  16  remedies, but there was absolutely no purpose for them

15:14:30  17  going in that manner.  They'd all ready been told that

15:14:32  18  they would not get a waiver, and they knew that they

15:14:35  19  would not be able to comply with those regulations by

15:14:37  20  July 1st.

15:14:38  21          And indeed, this morning, even though this

15:14:42  22  motion for temporary restraining order and preliminary

15:14:44  23  injunction was pending before this court, they received

15:14:46  24  from the KDHE notice of intent to deny their license

15:14:50  25  which came in at about 10:15 or 10:30 this morning.

Case 2:11-cv-23365-CM-KMH HODES & NAUSER MDS, v. NAUSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 11 of 53 PAGEID #: 3414

10

| | | |
|---|---|---|
| 15:15:00 | 1 | It's clear that these regulations -- these temporary |
| 15:15:03 | 2 | regulations and this licensing process infringe on the |
| 15:15:08 | 3 | plaintiff's due process.  There is absolutely no way |
| 15:15:13 | 4 | that they could have complied with this -- with these |
| 15:15:16 | 5 | requirements in the very limited, very quick time-frame |
| 15:15:20 | 6 | provided to them, and there was absolutely no way that |
| 15:15:24 | 7 | they were going to be able to continue providing |
| 15:15:28 | 8 | services to women who needed those services without -- |
| 15:15:33 | 9 | without -- they simply would have to close, and indeed |
| 15:15:36 | 10 | they were denied a license, and now are unable to |
| 15:15:38 | 11 | provide those -- those abortions at their facility under |
| 15:15:43 | 12 | the licensing today. |
| 15:15:45 | 13 | So, it's clear that there's irreparable harm |
| 15:15:48 | 14 | to them, there's irreparable harm to the women that they |
| 15:15:52 | 15 | serve.  For instance, just in the last couple of days -- |
| 15:15:55 | 16 | and we've submitted this in our supplemental declaration |
| 15:15:57 | 17 | of Doctor Hodes -- just in the last couple of days, he |
| 15:16:00 | 18 | has been referred patients by referring physicians |
| 15:16:04 | 19 | because of his expertise in this area where there were |
| 15:16:07 | 20 | serious medical conditions for the woman or a medical |
| 15:16:12 | 21 | anomaly for the fetus, in both of those instances, he |
| 15:16:16 | 22 | has been unable to perform the abortions that the |
| 15:16:20 | 23 | referring physician requested because these regulations |
| 15:16:24 | 24 | are now in place.  This has put these women in a |
| 15:16:28 | 25 | position where they are unable to get the medical |

Case 2:11-cv-02365-CM-KMH  Document 8  NAUSER Filed 08/10/14  NAUSER Page 12 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 12 of 53 PAGEID #: 3415

11

15:16:31  1   treatment they need in the state of Kansas, and so,

15:16:34  2   despite the -- despite the state's argument that this

15:16:38  3   will heighten medical processes and medical procedures

15:16:45  4   for women in Kansas, it in fact is denying women who

15:16:49  5   very much need these services, the ability to access an

15:16:53  6   abortion in Kansas, because they can't get them at

15:16:56  7   Planned Parenthood, and Doctor Hodes and the referring

15:16:59  8   physicians are unaware of any other abortion provider

15:17:02  9   who can provide those services in the state of Kansas

15:17:05  10  for women who have these kind of complications or these

15:17:08  11  kind of fetal anomalies.

15:17:11  12          So, there is -- there -- you can quickly see

15:17:15  13  that there is an undue burden both on the doctors and on

15:17:18  14  the patients who are unable to access these procedures,

15:17:22  15  even though they need them.  In addition, it is clear

15:17:27  16  that these regulations really were designed to make

15:17:32  17  access to abortion more difficult in the state of

15:17:34  18  Kansas.

15:17:35  19          Now, the state tries to argue that because

15:17:37  20  they have granted Planned Parenthood a last minute

15:17:42  21  license, that -- that there is adequate access, and

15:17:46  22  there isn't a problem with the regulations, and they

15:17:48  23  cite to the court the Greenville case, and say that

15:17:51  24  regulations on facilities are okay, and basically imply

15:17:56  25  that anything that the state wants to do, any kind of

Case 2:11-cv-02365-CM-KMH HODES & NAUSER Document 128-10 PA NOSER et al. Page 13 of 51

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 13 of 53 PAGEID #: 3416

12

15:17:58  1    regulations that the state wants to impose should not be

15:18:04  2    unconstitutional.

15:18:07  3           We've cited to the case -- a case very

15:18:09  4    similar to this in 2007 where Judge Smith in the Western

15:18:13  5    District of Missouri, in examining some regulations

15:18:15  6    very, very similar to those here, only those here are

15:18:18  7    actually even more onerous and more burdensome than the

15:18:22  8    ones that were being addressed by the court with the

15:18:27  9    Missouri regulations, he did find that there was both a

15:18:30  10   likelihood that it violated plaintiff's due process, and

15:18:34  11   that it imposed an undue burden on both the doctors and

15:18:37  12   the women with respect to the constitutionality of those

15:18:41  13   regulations, and granted a preliminary injunction on

15:18:44  14   that matter.

15:18:46  15          If you look at the regulations in the chart

15:18:49  16   that we've provided, you can see that the regulations

15:18:51  17   far exceed anything that is required for Kansas

15:18:56  18   ambulatory surgical centers, for Kansas hospitals, and

15:19:00  19   certainly, even the case that they cite, the Greenville

15:19:03  20   versus South Carolina case, the regulations in those

15:19:07  21   cases -- in that case, the physical regulations were far

15:19:10  22   less stringent, far less onerous, far less specific and

15:19:15  23   particular than we have here in the -- in the case of

15:19:17  24   these temporary regulations with respect to Kansas.

15:19:20  25          So, there clearly is, we believe, a showing

Case 2:11-cv-02365-CM-KMH HODES & NAUSER MDs, P.A. v. NOSER et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 14 of 53 PAGEID #: 3417

13

15:19:24   1    of irreparable harm on behalf of the plaintiffs and the

15:19:28   2    doctors and their patients, and that's balanced against

15:19:31   3    any harm to the state in continuing things the way they

15:19:35   4    are, continuing the status quo.

15:19:37   5              And we submit that there really is no -- no

15:19:41   6    injury to the state whatsoever in continuing things the

15:19:44   7    way they were.  The facilities are all ready regulated.

15:19:48   8    They're regulated like any other facility that provides

15:19:51   9    surgical procedures at a doctor's office under the

15:19:56   10   standards developed by the Kansas Board of Healing Arts.

15:19:59   11   They have been in compliance with those standards,

15:20:01   12   they've been performing procedures like this at their

15:20:04   13   office for over 24 years.  If the injunction is put in

15:20:07   14   place, they will still be subject to those regulations

15:20:10   15   by the board of healing arts, and still be subject to

15:20:13   16   those inspections and still be subject to the high

15:20:16   17   standards of medical care for women that those standards

15:20:19   18   impose on all providers of surgical procedures in a

15:20:23   19   doctor's office.  This is -- this has been going on for

15:20:27   20   eight years.  They've had no issues with that.  And they

15:20:31   21   will continue to have that oversight by the Kansas Board

15:20:36   22   of Healing Arts if this injunction is granted.  So,

15:20:41   23   there is really no detriment to the state.

15:20:44   24             On the other hand, the detriment to the

15:20:45   25   doctors both in having to shut down that part of their

15:20:49   1   practice, to lose the revenue from that part of their

15:20:52   2   practice, to lose patients, and in the patients

15:20:56   3   themselves from their inability to access these

15:20:58   4   services, is -- is very much impacted.  And the fact

15:21:02   5   that there's one abortion provider that's licensed in

15:21:09   6   the state of Kansas is not sufficient to meet the needs

15:21:11   7   of those women, and to in effect spirit away the undue

15:21:15   8   burden, Doctors -- Doctor Hodes and Nauser perform some

15:21:20   9   25 percent of the abortions in the state of Kansas.

15:21:23  10   It's -- it is really -- it's imaginary -- it's -- it's

15:21:29  11   imaginary to presume that the women who otherwise were

15:21:32  12   treated by them can simply go to Planned Parenthood just

15:21:36  13   as it would be if -- as we said in our briefs, if there

15:21:39  14   was only -- if you had three hospitals, and went down to

15:21:41  15   one hospital, and said, well, that's fine, because

15:21:43  16   everybody who went to the other two hospitals can just

15:21:45  17   go to the first one.  There simply isn't enough --

15:21:49  18   enough, there aren't enough providers, and there simply

15:21:53  19   isn't the expertise at the Planned Parenthood facility

15:21:57  20   for some of the more serious complications that Doctors

15:22:00  21   Hodes and Nauser treat.

15:22:01  22           So, the fact that there's one -- one

15:22:04  23   facility left in the state that's licensed does not take

15:22:07  24   away either the -- does not take away the undue burden

15:22:10  25   for -- for women who are seeking these procedures.  So,

NANCY MORONEY WISS, CSR, RMR, FCRR

Case 2:11-cv-23865-CM-KMH Document 8-NAUSER Filed 08/10/PA v. NAUSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 16 of 53 PAGEID #: 3419

15

|           |    |                                                                      |
|-----------|----|----------------------------------------------------------------------|
| 15:22:16  | 1  | it's clear that there's irreparable harm to the doctors              |
| 15:22:19  | 2  | and to their patients.  It's clear that there is not any             |
| 15:22:25  | 3  | sort of irreparable harm to the state.  Status quo will              |
| 15:22:28  | 4  | be maintained.  They'll be able to regulate these                    |
| 15:22:32  | 5  | providers just as they have been doing, and in the --               |
| 15:22:35  | 6  | they'll have -- they can go through the regular                      |
| 15:22:37  | 7  | licensing process and -- and develop what happens there.             |
| 15:22:42  | 8  | There's no medical emergency, no health                              |
| 15:22:46  | 9  | emergency that mandates that these regulations have to               |
| 15:22:49  | 10 | go into effect on July 1st as they're currently drafted.             |
| 15:22:52  | 11 | There's no reason to believe that they should go into                |
| 15:22:55  | 12 | effect without waivers.                                              |
| 15:22:57  | 13 | And there's -- then there's the public                               |
| 15:23:00  | 14 | interests, and as we've just cited to the court, there's             |
| 15:23:02  | 15 | ample interest in the public in having these -- this                 |
| 15:23:06  | 16 | facility open to the public so that they can obtain                  |
| 15:23:10  | 17 | abortion procedures there.  Abortion is a lawful                     |
| 15:23:14  | 18 | procedure.  And -- and these doctors are highly                      |
| 15:23:18  | 19 | experienced doctors that provide sophisticated services              |
| 15:23:21  | 20 | to some women with the most serious complications that               |
| 15:23:26  | 21 | require abortions.                                                    |
| 15:23:29  | 22 | Finally, likelihood of success.  Clearly, I                          |
| 15:23:33  | 23 | don't see how there can be any question that there is --            |
| 15:23:36  | 24 | that they're likely to prevail on their due process                  |
| 15:23:42  | 25 | claim.  And again, we would draw the court's attention               |

Case 2:11-cv-02365-CM-KMH Document 8 NAUSER Filed 08/10/11 Page 17 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 17 of 53 PAGEID #: 3420

16

| | | |
|---|---|---|
| 15:23:45 | 1 | to Judge Smith's opinion in the Planned Parenthood case |
| 15:23:49 | 2 | in the Western District of Missouri where he clearly |
| 15:23:52 | 3 | found that there -- the same kind of thing, where there |
| 15:23:54 | 4 | were no waivers implemented, very strict -- very strict |
| 15:23:58 | 5 | physical plan requirements implemented with no |
| 15:24:01 | 6 | opportunity for waivers and no ample time-frame to meet |
| 15:24:05 | 7 | those, that that was an infringement on the plaintiff's |
| 15:24:10 | 8 | due process, and that he believed it likely that -- that |
| 15:24:14 | 9 | those statute -- those regulations would be |
| 15:24:16 | 10 | unconstitutional under the due process clause. |
| 15:24:20 | 11 | Finally, there is the likelihood of success, |
| 15:24:25 | 12 | the merits of undue burden, and it was -- as we've just |
| 15:24:28 | 13 | outlined, there is an undue burden both to the plaintiff |
| 15:24:30 | 14 | doctors and to plaintiffs seeking abortion in the state |
| 15:24:33 | 15 | of Kansas if these regulations are not enjoined. |
| 15:24:37 | 16 | I'm going to turn my time over now to |
| 15:24:39 | 17 | intervenors to -- to take a -- to explain to the court |
| 15:24:46 | 18 | their position and how it might differ from ours, but we |
| 15:24:49 | 19 | are respectfully asking this court to enter -- to enter |
| 15:24:52 | 20 | injunctive relief, enjoining the licensing process and |
| 15:24:56 | 21 | the temporary regulations currently promulgated under |
| 15:25:00 | 22 | Senate Bill 36. Thank you. |
| 15:25:07 | 23 | MS. PILATE: Thank you, Your Honor. I will |
| 15:25:10 | 24 | be fairly brief. I'd like to say at the outset that we |
| 15:25:13 | 25 | would like to adopt and incorporate into our argument |

Case 2:11-cv-02665-CM-KMH-HO Document 6 NANSER Filed MB/10/PA Page SER of 52 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 18 of 53 PAGEID #: 3421

17

| | |
|---|---|
| 15:25:18 | 1 | all of the arguments so ably made by Miss Woody and her |
| 15:25:23 | 2 | co-counsel both in their pleadings and in the oral |
| 15:25:26 | 3 | argument. Your Honor, I'd like to say at the outset |
| 15:25:33 | 4 | that my clients are concerned about the health and |
| 15:25:38 | 5 | safety of women, but that's not what these regulations |
| 15:25:42 | 6 | are about. If these regulations were about the health |
| 15:25:46 | 7 | and safety of women, they might contain something to |
| 15:25:51 | 8 | address the one part of the process where this very |
| 15:25:56 | 9 | vulnerable population that my clinic serves might suffer |
| 15:26:01 | 10 | some harm, which is between the parking lot and the |
| 15:26:04 | 11 | front door. And it is during that passage when they |
| 15:26:08 | 12 | suffer the screamers, the shouters, the hecklers who are |
| 15:26:13 | 13 | saying things that I won't repeat. But when they make |
| 15:26:16 | 14 | it to the clinic, that is their safe place. It is the |
| 15:26:21 | 15 | parking lot to the front door that poses the risk, not |
| 15:26:25 | 16 | the clinic. Your Honor, my client is the only provider |
| 15:26:33 | 17 | in Wyandotte County. They serve a vulnerable |
| 15:26:36 | 18 | under-served population that needs access to affordable |
| 15:26:42 | 19 | services. These regulations, like so many decisions by |
| 15:26:48 | 20 | governments, business, and other entities fall most |
| 15:26:54 | 21 | heavily and burden the most poor women. The vast |
| 15:26:59 | 22 | majority, between 90 and 95 percent of the people that |
| 15:27:04 | 23 | my clinic serves are poor women. A good half, maybe a |
| 15:27:08 | 24 | little bit more are African American and Latino. The |
| 15:27:13 | 25 | Latino part is very important, because my clinic has |

Case 2:11-cv-02365-CM-KMH Document 8 NAUSER MDB-10/PA v. NUSER of al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 19 of 53 PAGEID #: 3422

18

|          |    |                                                                              |
|----------|----|------------------------------------------------------------------------------|
| 15:27:16 | 1  | three bilingual staff members, and as far as I know, it                      |
| 15:27:21 | 2  | is the only place where many members of the Latino                           |
| 15:27:27 | 3  | population feel like they can communicate and feel                           |
| 15:27:32 | 4  | comfortable.  Our clinic does only first trimester                           |
| 15:27:36 | 5  | abortions.  It is set up to do a very simple, frankly,                       |
| 15:27:42 | 6  | medical procedure that does not take much time.  Many of                     |
| 15:27:45 | 7  | the regulations are simply inapplicable to our clinic.                       |
| 15:27:49 | 8  | And so, we would ask the court to take that into account                     |
| 15:27:53 | 9  | as well.  Your Honor, abortions have been safely                             |
| 15:27:56 | 10 | performed in the building at 7th and Central for                             |
| 15:27:59 | 11 | 21 years.  The time line that has been set up in this                        |
| 15:28:02 | 12 | case is absurd.  The final regulations were received on                      |
| 15:28:09 | 13 | June 20th, and compliance in full was expected by                            |
| 15:28:13 | 14 | July 1st.  Frankly, Your Honor, that would require the                       |
| 15:28:16 | 15 | skills of a magician, and what my clinic has is a                            |
| 15:28:20 | 16 | dedicated staff, a registered nurse, and a very                              |
| 15:28:24 | 17 | dedicated physician.  There are no magicians there.  So,                     |
| 15:28:29 | 18 | Your Honor, we respectfully request that you enter the                       |
| 15:28:34 | 19 | emergency relief requested, and that these clinics and                       |
| 15:28:41 | 20 | other providers are able to continue providing this very                     |
| 15:28:45 | 21 | necessary service to the women of Kansas.  Again, we                         |
| 15:28:50 | 22 | don't believe this has anything to do with the health                        |
| 15:28:53 | 23 | and safety.  There has been no time to comply.  My                           |
| 15:28:57 | 24 | client desires to comply, frankly, and was denied even                       |
| 15:29:01 | 25 | an inspection.                                                               |

Case 2:11-cv-23865-CM-KMH  Document 8 NAUSER Filed 08/10/PA  Page SER of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 20 of 53 PAGEID #: 3423

19

```
15:29:02   1          Your Honor, I will draw your attention to
15:29:04   2   one fact that we are addressing rapidly.  The statute
15:29:08   3   requires the physician to have clinical privileges at a
15:29:12   4   hospital within 30 miles.  We anticipate that that issue
15:29:15   5   is going to be resolved within days, perhaps within, you
15:29:19   6   know, the next week or so.  We've been working very hard
15:29:22   7   on that.  There has been no more need for our physician
15:29:25   8   to have clinical privileges at a hospital than a
15:29:29   9   dermatologist who treats teen-age acne, but we are
15:29:33  10   complying with that, don't seek to litigate that, and do
15:29:38  11   seek Your Honor's order as requested.  Thank you.
15:29:50  12          THE COURT:  At this time, Mr. Chanay, on
15:29:52  13   behalf of -- Mr. Fabert?
15:29:55  14          MR. CHANAY:  Mr. Fabert will be arguing.
15:29:57  15          THE COURT:  Mr. Fabert.
15:29:59  16          MR. FABERT:  Thank you, Your Honor.  I want
15:30:08  17   to distinguish here today the statute and the
15:30:15  18   regulations.  As I understand their motion and the
15:30:18  19   argument, the challenge is to the regulations, but there
15:30:21  20   is no challenge being made to the statute.  I don't read
15:30:31  21   the statute the same way the plaintiffs do.  And I'm not
15:30:35  22   sure I read the primary case that they rely on the same
15:30:38  23   way either.  We have a statute here whose most important
15:30:43  24   provision is the Statute Seven that relates to the
15:30:47  25   limitation on lawfully performed abortions.  It starts
```

Case 2:11-cv-02365-CM-KMH Document 8 NAUSER Filed 08/10/PA v. NAUSER et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 21 of 53 PAGEID #: 3424

20

| | | |
|---|---|---|
| 15:30:52 | 1 | with an exemption for all true medical emergencies.  If |
| 15:30:58 | 2 | we have any women who are suffering from true medical |
| 15:31:02 | 3 | emergency, those abortions can go forward unregulated |
| 15:31:06 | 4 | without the requirement of the license for the facility. |
| 15:31:12 | 5 | The statute creates a regimen of facilities licensing. |
| 15:31:18 | 6 | That is different from the board of healing arts which |
| 15:31:22 | 7 | has regulatory authority over physicians, and which |
| 15:31:26 | 8 | regulates the conduct of the doctors.  The facilities |
| 15:31:30 | 9 | are going to have separate licensing, and separate |
| 15:31:35 | 10 | oversight by the department of health and environment. |
| 15:31:38 | 11 | And that's why it misses the point to talk about the |
| 15:31:43 | 12 | extent to which the doctors are all ready subject to |
| 15:31:46 | 13 | regulations by the board of healing arts.  They always |
| 15:31:50 | 14 | have been subject to regulation by the board of healing |
| 15:31:52 | 15 | arts.  They're going to continue to be subject to that |
| 15:31:54 | 16 | regulation.  Those regulations and that agency have |
| 15:31:58 | 17 | nothing to do with overseeing the facilities.  It just |
| 15:32:03 | 18 | so happens, coincidentally, the plaintiffs in this case |
| 15:32:07 | 19 | are both the physicians who perform the abortions and |
| 15:32:10 | 20 | the owners of the facilities.  That could be otherwise. |
| 15:32:14 | 21 | We could have a circumstance where a new applicant for |
| 15:32:19 | 22 | licensing does not have the coincidence where the |
| 15:32:24 | 23 | physicians performing the abortion are also the owners |
| 15:32:26 | 24 | and operators of the facility.  The regulations that |
| 15:32:31 | 25 | have to be adopted by the department of health and |

Case 2:11-cv-02665-CM-KMH Document 1 NAUSER Filed 08/10/14 Page 21 of 54 et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 22 of 53 PAGEID #: 3425

21

| | | |
|---|---|---|
| 15:32:34 | 1 | environment have to address not just the specialized |
| 15:32:39 | 2 | concerns of these plaintiffs, they have to also address |
| 15:32:44 | 3 | the issue of any and all future applicant for licensing |
| 15:32:48 | 4 | under the statute.  We need sufficiently explicit, |
| 15:32:53 | 5 | clear, understandable regulations that can be complied |
| 15:32:57 | 6 | with not just by these individuals but also by all |
| 15:33:01 | 7 | future applicants.  We are, of course, caught coming and |
| 15:33:06 | 8 | going between a potential objection that the regulations |
| 15:33:10 | 9 | are too vague and objection that the regulations are too |
| 15:33:15 | 10 | specific.  If the regulations did not include |
| 15:33:20 | 11 | definitions of what the facilities ought to look like, |
| 15:33:22 | 12 | they would be challenged as unreasonably vague.  Because |
| 15:33:28 | 13 | the temporary regulations do specify what the facilities |
| 15:33:31 | 14 | ought to look like, they're now challenged as being too |
| 15:33:34 | 15 | specific.  I think the fact that these plaintiffs are |
| 15:33:39 | 16 | not pursuing their administrative remedies in front of |
| 15:33:44 | 17 | the KDHE is proof that the real grievance here is |
| 15:33:49 | 18 | against the statute, not against the regulations.  There |
| 15:33:53 | 19 | is no grievance that arises from the lack of sufficient |
| 15:34:00 | 20 | time to comply with this statute.  They do not want to |
| 15:34:04 | 21 | comply with the statute ever.  They do not want |
| 15:34:08 | 22 | additional time to comply with the statute.  They want |
| 15:34:12 | 23 | to be permanently relieved of the obligation ever to |
| 15:34:16 | 24 | comply with the statute.  That is something the |
| 15:34:20 | 25 | department of health and environment cannot do for them |

| | |
|---|---|
| 15:34:23 | 1 |
| 15:34:28 | 2 |
| 15:34:31 | 3 |
| 15:34:34 | 4 |
| 15:34:37 | 5 |
| 15:34:42 | 6 |
| 15:34:46 | 7 |
| 15:34:50 | 8 |
| 15:34:55 | 9 |
| 15:34:59 | 10 |
| 15:35:02 | 11 |
| 15:35:08 | 12 |
| 15:35:12 | 13 |
| 15:35:14 | 14 |
| 15:35:19 | 15 |
| 15:35:23 | 16 |
| 15:35:26 | 17 |
| 15:35:32 | 18 |
| 15:35:33 | 19 |
| 15:35:38 | 20 |
| 15:35:43 | 21 |
| 15:35:46 | 22 |
| 15:35:51 | 23 |
| 15:35:56 | 24 |
| 15:36:00 | 25 |

1  under any circumstances.

2        There is no fair reading of this statute

3  that would authorize the department of health and

4  environment to create out of thin air a process for

5  granting case by case exceptions and waivers.  No such

6  waiver provision has been included in the statute.  And

7  for that reason, you can't criticize KDHE for failing to

8  grant waivers and exception.  The ultimate question,

9  because we are in US District Court and the state of

10  Kansas is the defendant, is whether there is a

11  constitutional violation, not merely is there an

12  arguable harm that could be addressed in a court case.

13  Court does not have jurisdiction to award tort damages

14  under the Eleventh Amendment.  We're here solely for

15  injunctive relief consistent with the Eleventh

16  Amendment, and the question is whether the state is

17  acting unconstitutionally, enacting and enforcing this

18  statute.

19        Now, as I read the Planned Parenthood versus

20  Drummond case, the Missouri case that's been relied on,

21  Judge Smith specifically held that he believed those

22  plaintiffs would fail in their facial challenge to the

23  statute.  That statute required all abortion providers

24  in the state of Missouri to comply with the standard for

25  ambulatory surgical centers.  I'm looking at the

15:36:09  1    September 24, 2007 decision in that case, 2007 Westlaw

15:36:15  2    2811407.  The fourth page of that opinion states, the

15:36:22  3    court holds that PPK does not have a probability of

15:36:28  4    success of establishing these facial claims.  It goes on

15:36:34  5    further to say, for plaintiffs to succeed, the court

15:36:36  6    would have to determine the statute, and intended

15:36:40  7    regulations cannot be justified as a legitimate health

15:36:43  8    or safety measure.  The court does not believe

15:36:46  9    plaintiffs will carry their heavy burden.  Further into

15:36:50  10   that opinion, the judge pointed out that it is

15:36:54  11   reasonable to have regulations that require all

15:36:59  12   facilities where surgery is performed to abide by the

15:37:03  13   same regulations.  What we're really here today about is

15:37:09  14   an argument that these plaintiffs are entitled to a

15:37:13  15   grandfather provision that is not in the statute, that

15:37:17  16   they are constitutionally entitled to a grandfather

15:37:19  17   provision that tells them that they are never, ever

15:37:23  18   going to be required to comply with current law, that

15:37:27  19   the law cannot be updated in any way that would restrict

15:37:32  20   their ability to keep performing their day to day

15:37:35  21   activities in the way they've been accustomed to.

15:37:39  22   Kansas law has never recognized a right protected by law

15:37:45  23   to perform medicine the way these plaintiffs have been

15:37:48  24   performing it.  To the extent they've been lawfully

15:37:52  25   performing it, that's been primarily as a result of

Case 2:11-cv-23865-CM-KMH  HODES & NAUSER  MDs, PA  v. NOSER et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 25 of 53 PAGEID #: 3428

24

15:37:54   1    judicial decisions that restrict past statutes that made

15:37:59   2    abortion illegal.  We don't have a protected property

15:38:04   3    interest here in the business that these plaintiffs are

15:38:08   4    engaging in.  They do not have existing licenses that

15:38:11   5    tell them that they have a -- a state guaranteed right

15:38:15   6    to engage in the business of providing abortions.  The

15:38:24   7    state of Kansas does have the right to regulate

15:38:26   8    abortions.  Judge Smith noted that in his decision.

15:38:30   9         The only question is whether they're going

15:38:33   10   to regulate abortions under a uniform rule applicable

15:38:37   11   both to these plaintiffs and to ambulatory surgical

15:38:41   12   centers, or whether instead, this court is going to

15:38:44   13   compel the state to create exceptions that apply only to

15:38:51   14   these plaintiffs and to no one else, to let them operate

15:38:53   15   the way they want to, free of all oversight and

15:38:58   16   regulation of the way their facilities are structured,

15:39:01   17   maintained and operated.

15:39:06   18        The standard for a temporary injunction, the

15:39:10   19   standard for temporary restraining order require there

15:39:15   20   to be a finding of irreparable harm, not just some harm,

15:39:18   21   but irreparable harm.  The statute says that all medical

15:39:23   22   emergencies can go forward unlicensed.  Statute also

15:39:27   23   says that unlicensed facilities can perform five first

15:39:33   24   trimester abortions every month without transgressing

15:39:36   25   the regulations or the statute.  I think I have a

Case 2:11-cv-02665-CM-KMH Document 8 Filed 08/10/11 Page 26 of 52 NAUSER, et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 26 of 53 PAGEID #: 3429

25

| | | |
|---|---|---|
| 15:39:40 | 1 | different idea of what irreparable harm is than the |
| 15:39:43 | 2 | plaintiffs have put forward. It is not enough to show |
| 15:39:48 | 3 | that there is some harm. The harm must be a harm that |
| 15:39:53 | 4 | cannot be remedied in any other way other than the |
| 15:39:57 | 5 | issuance of the temporary restraining order, and that |
| 15:40:01 | 6 | simply is not true in this case. |
| 15:40:04 | 7 | We cited the court to the case of State, ex |
| 15:40:08 | 8 | rel, Schneider versus Liggett. One of the key holdings |
| 15:40:11 | 9 | of that case from 1976 was the Kansas administrative |
| 15:40:15 | 10 | agencies have no jurisdiction to decide constitutional |
| 15:40:18 | 11 | challenges. The constitutional challenges must be |
| 15:40:21 | 12 | brought for the first time when an administrative case |
| 15:40:25 | 13 | has first been transferred to the district court on |
| 15:40:27 | 14 | appeal. That's what ought to be done in this case. |
| 15:40:31 | 15 | These plaintiffs should proceed to exhaust their |
| 15:40:35 | 16 | administrative remedies, and then if they don't get a |
| 15:40:38 | 17 | license, they should appeal to the district court. The |
| 15:40:44 | 18 | district court can then entertain their constitutional |
| 15:40:46 | 19 | challenges and decide whether this statute needs to have |
| 15:40:52 | 20 | a grandfather clause read into it in order to comply |
| 15:40:55 | 21 | with due process. KDHE cannot do that for them. It |
| 15:41:00 | 22 | lacks the authority to do it. |
| 15:41:07 | 23 | I have never heard of a regulated industry |
| 15:41:13 | 24 | being granted a due process right to craft the |
| 15:41:17 | 25 | regulations that apply to them, which is what I see in |

Case 2:11-cv-23365-CM-KMH Document 8-NAUSER Filed 08/10/PA Page 27 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 27 of 53 PAGEID #: 3430

26

15:41:21    1    the motion, that due process would require that these

15:41:25    2    regulations actually result from a meet and confer of

15:41:31    3    some kind with the regulated businesses. That is not my

15:41:35    4    understanding of due process. Due process comes when

15:41:44    5    the protected interest, whether it's the liberty

15:41:47    6    interest or property interest, is threatened, or the

15:41:50    7    government takes action, the government affords due

15:41:54    8    process at that time.

15:41:56    9         The government does not afford due process

15:41:58   10    to everyone by inviting their lobbyists into the

15:42:03   11    legislative process. That is not where due process

15:42:06   12    applies. Likewise, due process does not mandate that

15:42:11   13    there be a -- a prior comment period before a regulation

15:42:16   14    is made effective. I see no evidence whatever to

15:42:28   15    support the contention that either the statute or the

15:42:32   16    regulation was designed to make access more difficult.

15:42:37   17    In fact, the reply brief that was filed today agrees

15:42:42   18    with my own reading of the statute that the real purpose

15:42:46   19    is to try to bring all abortion clinics under a single

15:42:50   20    standard of professionalism, that being the standard of

15:42:55   21    professionalism historically present in ambulatory

15:42:59   22    surgical centers. If there is no medical emergency in

15:43:09   23    this case, there is no irreparable harm. If there were

15:43:18   24    a true medical emergency, the statute would not even

15:43:21   25    apply.

Case 2:11-cv-02365-CM-KMH Document 8 NAUSER ... Filed 08/10/PA ... NAUSER 52 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 28 of 53 PAGEID #: 3431

27

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
| 15:43:29 | 1  | This statute, these regulations, have                                    |
| 15:43:33 | 2  | nothing whatever to do with abortion protesters at all.                  |
| 15:43:38 | 3  | The fact that this statute does not address that                         |
| 15:43:42 | 4  | completely distinct and separate subject has nothing to                  |
| 15:43:45 | 5  | do with the lawfulness of these regulations.  I think if                 |
| 15:44:00 | 6  | the purpose here is to avoid any potential risk of                       |
| 15:44:04 | 7  | prosecution for violation of the statute, we're probably                 |
| 15:44:09 | 8  | missing at least one party.  That would, I assume, be                    |
| 15:44:13 | 9  | the prosecutor in Wyandotte County.  But again, I don't                  |
| 15:44:19 | 10 | really think that that's why we're here today.  What                     |
| 15:44:22 | 11 | we're here today is to address whether the department of                 |
| 15:44:25 | 12 | health and environment ought to be restrained and                        |
| 15:44:28 | 13 | prevented from going forward with the administrative                     |
| 15:44:30 | 14 | process of hearing the administrative appeal from denial                 |
| 15:44:35 | 15 | of the application for permits.  I think that would be a                 |
| 15:44:39 | 16 | mistake.  I think it would be an unnecessary                             |
| 15:44:42 | 17 | complication in the procedural posture of this case.  I                  |
| 15:44:46 | 18 | think the right thing to do is not to restrain the                       |
| 15:44:51 | 19 | department of health and environment, to go ahead and                    |
| 15:44:55 | 20 | have the appeals prosecuted in the normal course so that                 |
| 15:44:59 | 21 | we can see what the outcome of those administrative                      |
| 15:45:02 | 22 | appeals are.  Then whichever party feels aggrieved by                    |
| 15:45:08 | 23 | the outcome of the administrative appeal can pursue                      |
| 15:45:12 | 24 | additional relief in the district court, presumably the                  |
| 15:45:17 | 25 | District Court of Shawnee County, and at that time,                      |

15:45:21    1    constitutional challenges to the interpretation and

15:45:23    2    application of the statute can properly be raised, and

15:45:27    3    the court can hear what a Kansas judge thinks this

15:45:32    4    statute really means.

15:45:37    5            If I read the -- the factual materials

15:45:42    6    correctly, I think the witnesses that are being offered

15:45:46    7    in support of this motion are in agreement with me.  If

15:45:49    8    I read the contractor's affidavit, it's the first

15:45:53    9    attachment, the contractor says he's looked at the

15:45:56   10    regulations, and they -- he says these regulations

15:45:59   11    appear to him to be perfectly ordinary and normal

15:46:03   12    requirements for an ambulatory surgical center.  He

15:46:09   13    said, that's right.  That's -- that means they've done

15:46:12   14    their job correctly.  The purpose of the regulations is

15:46:16   15    essentially to bring into alignment the practice in

15:46:22   16    individual doctor's offices with the practice in

15:46:25   17    ambulatory surgical centers, that that's the level of

15:46:31   18    health care that the legislature of the state wants to

15:46:35   19    see afforded in every abortion facility operating in

15:46:40   20    this state.  To the extent that is inconsistent with

15:46:48   21    operating a comparatively small doctor's office, that

15:46:54   22    grievance would have to be taken up with the Kansas

15:46:56   23    legislature, not with the department of health and

15:46:59   24    environment.

15:47:01   25            There is no way for the KDHE to draft and

Case 2:11-cv-23365-CM-KMH Document 8 NAUSER Filed 08/10/21 PA NOSER of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 30 of 53 PAGEID #: 3433

29

15:47:05   1   adopt regulations that carry out the orders of the

15:47:10   2   Kansas legislature without having substantially what

15:47:17   3   these regulations say.  If there is any wiggle room

15:47:21   4   there, I'm sure that all the proceedings in this case

15:47:24   5   will be taken into account in drafting any changes of

15:47:31   6   the permanent regulations that will take the place of

15:47:33   7   the temporary regulation.  But the notion that this is

15:47:37   8   somehow a facially obvious due process violation, I

15:47:45   9   think is clearly erroneous.  There is not a single case

15:47:50   10  that has been offered up here that holds that this kind

15:47:55   11  of statute and these regulations, regulations similar to

15:47:59   12  this, are due process violations.  I might point out

15:48:04   13  that what the Planned Parenthood case really held was

15:48:08   14  that to the extent non-surgical abortions were being

15:48:11   15  performed in one of those plaintiffs' facilities, those

15:48:15   16  would not appropriately be subject to the same rules and

15:48:17   17  regulations as the -- the rules applicable to surgical

15:48:21   18  facilities.  But in the course of that holding, Judge

15:48:25   19  Smith specifically included that everyone who performs

15:48:29   20  surgical abortions deserves to be subjected to the same

15:48:33   21  rules and regulations as every other surgical facility

15:48:37   22  in the state of Missouri.

15:48:39   23          I don't know how that case can be cited for

15:48:42   24  the proposition that there is some sort of property

15:48:46   25  right in continuing to operate a private medical office

15:48:55   1    that falls far short of the requirements of an

15:48:59   2    ambulatory surgical center as an abortion facility.  We

15:49:09   3    have a lot of speculation about patients who might or

15:49:13   4    might not be allowed to go to the place they would

15:49:20   5    prefer to go for their abortion.

15:49:23   6            I am not aware of any irreparable harm that

15:49:26   7    is suffered by being required to go to an ambulatory

15:49:31   8    surgical center rather than going to a doctor's office

15:49:35   9    for an abortion.  I do not know that one facility is any

15:49:42  10    more subject to the potential for screaming protesters

15:49:46  11    as opposed to the other.

15:49:52  12            The standard in the Tenth Circuit for the

15:49:56  13    issuance of temporary restraining order is plain, and it

15:50:02  14    is what we've cited the court to, the Aid for Women case

15:50:06  15    from 1996.  It is not enough to just say that some

15:50:14  16    privacy interest is implicated in the enforcement of the

15:50:18  17    statute.  Considerably more detailed showing is required

15:50:25  18    before the TRO can be issued by a US District Court here

15:50:28  19    in the state of Kansas, unlike apparently, the standard

15:50:32  20    they're applying in Missouri.

15:50:36  21            We think it would be a mistake to bring to a

15:50:40  22    halt the administrative process at the state level.  We

15:50:44  23    think it's extremely important that this administrative

15:50:46  24    process be allowed to play itself out.  I am aware of no

15:50:50  25    threat of prosecution of any of these plaintiffs.  We

Case 2:11-cv-02665-CM-KMH Document 8 NAUSER Filed 08/10/PA Page 32 of 54 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 32 of 53 PAGEID #: 3435

31

15:50:55   1   have nothing from any of the interested prosecutorial

15:51:00   2   agencies suggesting that they're waiting to swoop down

15:51:03   3   on someone, close their building, arrest them and throw

15:51:06   4   them in jail.  Kansas courts are perfectly competent to

15:51:14   5   address due process concerns.  If there really are

15:51:19   6   grandfather clause concerns under the statute, they can

15:51:25   7   be addressed by the Shawnee County District Court.  They

15:51:28   8   don't have to be addressed first and foremost here in

15:51:32   9   this court.

15:51:34  10         Without a fully developed administrative

15:51:38  11   record, we will never know whether either of the

15:51:42  12   facilities operated by these plaintiffs has any hope

15:51:45  13   ever of being licensed consistent with the statute and

15:51:49  14   the regulations.  They have outlined what they consider

15:51:54  15   the reasons that they think would probably impose a

15:52:01  16   burden on them in seeking to be licensed, but we will

15:52:05  17   never know until we've seen the entire administrative

15:52:08  18   record filled out whether the real reason they don't

15:52:13  19   have a license issued, assuming there is no license

15:52:18  20   issued, is because they didn't have enough time, or

15:52:21  21   whether instead, their grievance is that no matter how

15:52:24  22   much time they're allowed, they have no intention of

15:52:27  23   complying with the statute.

15:52:34  24         I'd like to see this case resolved in as

15:52:39  25   expeditious and final a way as possible, I think it

Case 2:11-cv-02665-CM-KMH Document 8 NAUSER MB 10/PA Page 33 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 33 of 53 PAGEID #: 3436

32

| | |
|---|---|
| 15:52:42 | 1 |
| 15:52:45 | 2 |
| 15:52:50 | 3 |
| 15:52:55 | 4 |
| 15:52:59 | 5 |
| 15:53:05 | 6 |
| 15:53:09 | 7 |
| 15:53:12 | 8 |
| 15:53:16 | 9 |
| 15:53:20 | 10 |
| 15:53:23 | 11 |
| 15:53:29 | 12 |
| 15:53:32 | 13 |
| 15:53:35 | 14 |
| 15:53:39 | 15 |
| 15:53:42 | 16 |
| 15:53:46 | 17 |
| 15:53:49 | 18 |
| 15:53:52 | 19 |
| 15:53:56 | 20 |
| 15:54:27 | 21 |
| 15:54:30 | 22 |
| 15:54:33 | 23 |
| 15:54:35 | 24 |
| 15:54:38 | 25 |

1  would be a mistake to shut down the administrative

2  process prematurely, and that's why I think that because

3  there is no threat of eminent enforcement, no one is

4  being threatened with going to jail, medical emergencies

5  are all ready addressed in the statute, we do not have

6  any reason to believe that irreparable harm will follow

7  if we let the administrative process play out, that

8  that's the right course.  And if expedited hearings are

9  needed, all plaintiffs need do is ask for them.  We have

10  a highly cooperative office of administrative hearings,

11  and we can do what it takes to get the issues resolved

12  as quickly as possible, and then come back to this

13  court, if necessary, with a fully developed

14  administrative record.  Thank you.

15           THE COURT:  Court had given 30 minutes per

16  side.  In light of the time that we've used, I am going

17  to ask the parties if they wish, they can respond to

18  each other's arguments at this time.  Give you some

19  additional time.  Five minutes.

20           MS. WOODY:  Sure.  Your Honor, I just want

21  to address a couple of things that Mr. Fabert mentioned.

22  First of all, the defendants cannot prevail in this case

23  by mischaracterizing the plaintiff's claims.  This is

24  not a facial challenge to the statute.  This is an as

25  applied statute to the -- the particular way the KDHE

Case 2:11-cv-02365-CM-KMH Document 8 NAUSER Filed 08/10/11 Page 34 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 34 of 53 PAGEID #: 3437

33

15:54:42   1   has implemented the licensing provisions of the act and

15:54:45   2   the temporary regulations as adopted. Secondly,

15:54:50   3   Mr. Fabert argues that there's no irreparable harm to

15:54:53   4   patients because they can simply choose another abortion

15:54:56   5   facility or they can get a medical emergency exception,

15:54:59   6   and implies somehow that the two women that we discussed

15:55:02   7   in the first part of the argument could somehow get some

15:55:04   8   kind of a waiver in that respect. But if you look at

15:55:07   9   the statute, it says only where there's -- the woman is

15:55:10   10   in danger of eminent death or impairment of a major

15:55:14   11   bodily function could she get a waiver for an emergency

15:55:19   12   abortion.

15:55:20   13       In this instance, these abortions are

15:55:22   14   medically indicated, but would not fall within the

15:55:25   15   definition of the regulations, and therefore, would not

15:55:30   16   be able to -- she would not able to get an abortion --

15:55:38   17   would not be able to get an abortion on a medical

15:55:40   18   emergency basis.

15:55:43   19       I want to take issue with the idea that the

15:55:45   20   board of healing arts does not regulate the facilities.

15:55:48   21   As the court looks at the chart that we've given the

15:55:51   22   court, clearly it does. That's the reason for the

15:55:53   23   inspections coming out. If you look at the -- for

15:55:56   24   instance, at the issue of procedure room size, you can

15:55:58   25   see that the procedure room size is spoken to in the

Case 2:11-cv-02365-CM-KMH  Document  NAUSER  Filed 08/10/14  Page 35 of 54  et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 35 of 53 PAGEID #: 3438

34

15:56:03  1    Kansas regulations for office space surgery.  It is, of

15:56:06  2    course, not nearly as stringent as the 150 square feet

15:56:09  3    requirement that's in the -- the temporary regulations,

15:56:12  4    but nor is that as stringent as -- nor is the one for

15:56:18  5    hospitals as stringent.  There's nothing about that

15:56:21  6    regulation that is appropriate in this case, and there's

15:56:24  7    nothing that would mandate such a regulation in light of

15:56:28  8    the other regulations specifically for office space

15:56:31  9    surgeries.

15:56:32  10          With respect to the argument that there's no

15:56:38  11   due process argument here, and that we should go through

15:56:41  12   the administrative route, it is the court's obligation

15:56:44  13   to address the constitutional issues under due process.

15:56:48  14   The idea that the plaintiffs here are seeking some

15:56:51  15   special treatment is not -- is not true.  Here you have

15:56:54  16   regulations that were adopted that gave the providers

15:56:59  17   nine days to come in compliance with regulations that

15:57:02  18   would have totally meant total remodeling of their

15:57:06  19   facilities.  There is no due process in that.  The

15:57:09  20   regular -- the regular procedure for adopting

15:57:12  21   regulations, with public comment going forward with

15:57:17  22   that, and then having permanent regulations entered at

15:57:21  23   some time in the future, that's the regulations that we

15:57:24  24   are asking the court to have the Kansas -- the state of

15:57:27  25   Kansas follow, not that they adopt some temporary

Case 2:11-cv-23665-CM-KMH Document NAUSER Filed 08/10/PA Page 35 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 36 of 53 PAGEID #: 3439

35

| | |
|---|---|
| 15:57:30 | 1 |
| 15:57:34 | 2 |
| 15:57:36 | 3 |
| 15:57:39 | 4 |
| 15:57:41 | 5 |
| 15:57:44 | 6 |
| 15:57:47 | 7 |
| 15:57:50 | 8 |
| 15:57:53 | 9 |
| 15:57:55 | 10 |
| 15:57:58 | 11 |
| 15:58:02 | 12 |
| 15:58:05 | 13 |
| 15:58:08 | 14 |
| 15:58:14 | 15 |
| 15:58:17 | 16 |
| 15:58:20 | 17 |
| 15:58:23 | 18 |
| 15:58:27 | 19 |
| 15:58:31 | 20 |
| 15:58:35 | 21 |
| 15:58:37 | 22 |
| 15:58:41 | 23 |
| 15:58:46 | 24 |
| 15:58:49 | 25 |

1  regulations that in effect shut these folks down.

2          There is irreparable harm to the doctors.

3  If you look at Judge Smith's opinion, he clearly says

4  that because of the Eleventh Amendment, as it's stated

5  -- as stated, they don't have an opportunity to come in

6  here for tort damages.  So, for instance, any lost

7  revenues to the -- to the doctors are irreparable harm

8  because they can never recoup those while they go

9  through the administrative procedures that the state is

10  talking about.  So, clearly there is irreparable harm

11  there.  There clearly is irreparable harm to women

12  seeking abortions and access to abortions in this state

13  by way of the temporary regulations.  And as we've said,

14  there is absolutely no reason for the court to let

15  them -- to not give injunction in this case and let the

16  case go forward, if there is any other information the

17  court needs, that it will be developed throughout --

18  throughout this procedure, it's clear, and plaintiff

19  stated in their brief, this court has discretion to

20  enter injunctive relief when it's appropriate.  If ever

21  there was a case where injunctive relief is appropriate,

22  where the state should be restrained from enforcing

23  these temporary regulations in nine days when it's

24  impossible for the plaintiffs to comply, this is such a

25  case.  If you look at Judge Smith's opinion, it doesn't

Case 2:11-cv-02665-CM-KMH HODES & NAUSER MDs, PA  v. NAUSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 37 of 53  PAGEID #: 3440

36

15:58:52    1    say what the state said.  There, he found that the same

15:58:55    2    kinds of regulations, the same kinds of restrictions,

15:58:59    3    because they didn't provide for ample time for the

15:59:01    4    plaintiffs to comply and because they didn't provide for

15:59:06    5    an opportunity for them to seek waivers, likely would be

15:59:10    6    unconstitutional.

15:59:10    7            There's no difference between the

15:59:12    8    regulations at issue here and those that were at issue

15:59:16    9    in front of the Western District of Missouri with

15:59:18   10    respect to the -- the constitutionality of those --

15:59:23   11    those issues.

15:59:23   12            Clearly, we believe that there is likelihood

15:59:27   13    of success on both the due process and the undue burden

15:59:30   14    issues, and we respectfully request that the court grant

15:59:33   15    injunctive relief.

15:59:35   16            THE COURT:  Mr. Fabert?

15:59:38   17            MR. FABERT:  Well, I just want to address

15:59:51   18    this notion that we are mischaracterizing the relief

15:59:54   19    that was being requested here.  Umm, the relief that's

15:59:59   20    being requested here is permanent, permanent,

16:00:05   21    non-enforcement of the statute.  Plaintiffs are not

16:00:09   22    asking for a schedule, for a reasonable length of time

16:00:14   23    for the KDHE to tell them exactly what they need to do

16:00:18   24    to come into compliance and to get licenses.  They have

16:00:22   25    made it very plain that the reason they consider their

Case 2:11-cv-02365-CM-KMHHODEG3ran&NAUSERilednO8dPA vPageR8fof52 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 38 of 53 PAGEID #: 3441

37

16:00:24  1   harm to be irreparable is the fact that they cannot

16:00:28  2   under any reasonable circumstances comply with any

16:00:32  3   anticipated version of the regulations.  This nine day

16:00:37  4   argument is, therefore, a red herring.  We could have

16:00:40  5   given them nine months, and their objection would be

16:00:43  6   identical.

16:00:44  7        They do not care how much time they're

16:00:47  8   allowed.  They do not want to come into compliance ever.

16:00:52  9   They want this court to tell them they don't ever have

16:00:54  10  to remodel their facilities to make them look more like

16:00:59  11  an ambulatory surgical center.

16:01:07  12       The only reason -- the only reason damages

16:01:11  13  are not available is because these plaintiffs have

16:01:14  14  chosen the forum of US District Court.  If they thought

16:01:18  15  they needed a money damages remedy, all they needed to

16:01:22  16  do was to start the proceedings in state court, because

16:01:25  17  there is no Eleventh Amendment immunity in state court.

16:01:29  18  It is their decision to choose this forum of limited

16:01:33  19  jurisdiction that limits the extent of their remedy, not

16:01:38  20  anything the state has done.

16:01:42  21       Once more, if the issue is the regulations

16:01:46  22  and the behavior of the Kansas Department of Health and

16:01:49  23  Environment, there can be no criticism of their conduct.

16:01:55  24  It is not due process for them to overstep the authority

16:01:59  25  entrusted them by the legislature of the state of

Case 2:11-cv-02665-CM-KMH Document 368-10 Filed 08/10/14 Page 39 of 54 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 39 of 53 PAGEID #: 3442

38

16:02:02　1　Kansas.　They have no power to grant waivers.　They have

16:02:04　2　no power to grant grandfather clauses.　They have no

16:02:10　3　power to entertain constitutional challenges to this

16:02:13　4　statute.　Only the District Court of Shawnee County can

16:02:18　5　entertain the constitutional challenges in the first

16:02:22　6　instance.　That is what needs to occur here to give

16:02:25　7　these plaintiffs all the remedy that they're entitled

16:02:29　8　to, and the sooner we reach that point, then they will

16:02:33　9　get all the remedy the law will ever allow them.　Thank

16:02:38　10　you.

16:02:41　11　　　　　THE COURT:　What the court would like to do

16:02:43　12　at this time is then -- appreciate the parties

16:02:46　13　accommodating the court's schedule -- if I could take a

16:02:49　14　recess to consider the arguments that have been made

16:02:51　15　this afternoon, and then return and give you the court's

16:02:55　16　ruling.　Thank you.

16:02:56　17　　　　　(Whereupon court took a recess.　Proceedings

16:38:36　18　　　　　then continued as follows:)

16:38:36　19　　　　　THE COURT:　We're back on the record.　I

16:38:59　20　want to thank the parties, counsel, for again

16:39:02　21　accommodating the court in regards to our schedule for

16:39:07　22　this afternoon, and also in regards to the expedited

16:39:13　23　briefing that the court made a request of the parties.

16:39:16　24　So, thank you for that.　As I begin with the court's

16:39:20　25　ruling, I will mention this for the record.　We're at a

Case 2:11-cv-23865-CM-KMH Document 8 NAUSER Filed 08/10/PA Page 52 of 54 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 40 of 53 PAGEID #: 3443

39

| | | |
|---|---|---|
| 16:39:27 | 1 | very early stage of these proceedings.  The record has |
| 16:39:31 | 2 | not been fully developed, and what is before the court |
| 16:39:37 | 3 | is a request for preliminary relief.  The court has |
| 16:39:44 | 4 | reviewed the briefs, the evidence, and the relevant law. |
| 16:39:49 | 5 | Court has heard the parties' arguments, and again, is |
| 16:39:52 | 6 | now prepared to rule.  I'd ask the parties to follow |
| 16:39:57 | 7 | along.  This will take me a little while here to get |
| 16:40:01 | 8 | through. |
| 16:40:02 | 9 | To begin with, because defendants had notice |
| 16:40:05 | 10 | of this hearing, filed written arguments and authorities |
| 16:40:10 | 11 | regarding their position and are present, the court will |
| 16:40:16 | 12 | consider plaintiff's motion which was entitled motion |
| 16:40:19 | 13 | for a temporary restraining order and/or preliminary |
| 16:40:24 | 14 | injunction, the court will consider it as one for a |
| 16:40:28 | 15 | preliminary injunction. |
| 16:40:30 | 16 | The purpose of a preliminary injunction is |
| 16:40:32 | 17 | to maintain the status quo pending the outcome of the |
| 16:40:37 | 18 | case.  Plaintiffs as the parties seeking the preliminary |
| 16:40:42 | 19 | injunction bear the burden to establish, number one, a |
| 16:40:45 | 20 | substantial likelihood of prevailing on the merits. |
| 16:40:49 | 21 | Number two, irreparable harm unless the injunction is |
| 16:40:53 | 22 | issued.  Number three, the threatened injury outweighs |
| 16:40:57 | 23 | the harm that the injunction may cause the opposing |
| 16:41:03 | 24 | party.  And number four, an injunction, if issued, will |
| 16:41:07 | 25 | not adversely affect the public interest. |

Case 2:11-cv-23365-CM-KMH HODES & NAUSER MDs, v. NAUSER et al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 41 of 53 PAGEID #: 3444

40

| 16:41:11 | 1 | First, the court looks at the likelihood |
| 16:41:13 | 2 | that plaintiffs will succeed on the merits of their |
| 16:41:15 | 3 | claims. Plaintiffs base their injunction request on |
| 16:41:21 | 4 | their claims that defendants violated plaintiffs' |
| 16:41:24 | 5 | procedural and substantive due process rights and their |
| 16:41:30 | 6 | patient's right to privacy. To succeed on the |
| 16:41:34 | 7 | procedural due process claim under the Fourteenth |
| 16:41:38 | 8 | Amendment, plaintiffs must establish that they possessed |
| 16:41:43 | 9 | a protected interest such that the due process |
| 16:41:46 | 10 | protections were applicable. If they make such showing, |
| 16:41:50 | 11 | then they must show that they were not afforded an |
| 16:41:53 | 12 | appropriate level of process. It's a case of Farthing |
| 16:41:58 | 13 | versus City of Shawnee at 39 Fed 3rd 1131, an 1135, a |
| 16:42:04 | 14 | Tenth Circuit case from 1994. Plaintiffs argue they |
| 16:42:09 | 15 | have a property and liberty interest in the continued |
| 16:42:12 | 16 | operation of their medical practice. The right to |
| 16:42:16 | 17 | pursue a lawful business has long been recognized as a |
| 16:42:20 | 18 | property right within the protection of the Fourteenth |
| 16:42:22 | 19 | Amendment. Plaintiffs have provided evidence that their |
| 16:42:26 | 20 | medical practice has been in operation, that they have |
| 16:42:29 | 21 | been providing abortion services for approximately |
| 16:42:32 | 22 | 24 years. Based on the record presented, it appears |
| 16:42:38 | 23 | plaintiffs have a protected interest in maintaining |
| 16:42:41 | 24 | their business. Procedural due process requires notice |
| 16:42:45 | 25 | and a pre-deprivation hearing before property interests |

Case 2:11-cv-02665-CM-KMH Document 8 Filed 08/10/11 Page 42 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 42 of 53 PAGEID #: 3445

41

| | | |
|---|---|---|
| 16:42:51 | 1 | are negatively affected by governmental actors.  At this |
| 16:42:55 | 2 | stage of the litigation, plaintiffs have also provided |
| 16:43:00 | 3 | the court with evidence to suggest that defendants did |
| 16:43:02 | 4 | not afford them an appropriate level of process |
| 16:43:06 | 5 | implementing the temporary regulations and licensing |
| 16:43:11 | 6 | process.  On the record presented, it appears defendants |
| 16:43:17 | 7 | failed to provide plaintiffs with, arguably, any |
| 16:43:21 | 8 | process, let alone adequate process.  According to the |
| 16:43:25 | 9 | record presented, plaintiffs wrote to KDHE regarding the |
| 16:43:31 | 10 | act on May 17th, 2011, the day after the act was |
| 16:43:37 | 11 | enacted.  KDHE responded on May 26th, informing |
| 16:43:43 | 12 | plaintiffs that the new regulations and licenses would |
| 16:43:47 | 13 | become effective July 1st, which is today's date. |
| 16:43:52 | 14 | Plaintiffs did not receive regulations until June 9th |
| 16:43:56 | 15 | when they were given until Friday, June 17th to become |
| 16:44:00 | 16 | familiar with the regulations, confirm compliance, and |
| 16:44:06 | 17 | apply for a license.  After the close of business on |
| 16:44:10 | 18 | June 17th, KDHE sent plaintiffs a copy of the final |
| 16:44:14 | 19 | temporary regulations and licensing process.  These |
| 16:44:20 | 20 | regulations imposed more, arguably, onerous requirements |
| 16:44:27 | 21 | than the June 9th draft regulations.  Plaintiffs asked |
| 16:44:34 | 22 | for waivers, but were told no waivers would be given. |
| 16:44:40 | 23 | There's no evidence in the record that plaintiffs were |
| 16:44:42 | 24 | provided a meaningful notice or opportunity to be heard |
| 16:44:47 | 25 | or give comment on the regulations.  In addition to |

Case 2:11-cv-23365-CM-KMH Document NAUSER Filed MB 10/PA Page 43 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 43 of 53 PAGEID #: 3446

42

| | |
|---|---|
| 16:44:51 | 1 |
| 16:44:54 | 2 |
| 16:44:58 | 3 |
| 16:45:01 | 4 |
| 16:45:04 | 5 |
| 16:45:09 | 6 |
| 16:45:16 | 7 |
| 16:45:21 | 8 |
| 16:45:26 | 9 |
| 16:45:31 | 10 |
| 16:45:34 | 11 |
| 16:45:38 | 12 |
| 16:45:42 | 13 |
| 16:45:47 | 14 |
| 16:45:50 | 15 |
| 16:45:53 | 16 |
| 16:45:57 | 17 |
| 16:46:00 | 18 |
| 16:46:04 | 19 |
| 16:46:08 | 20 |
| 16:46:13 | 21 |
| 16:46:16 | 22 |
| 16:46:21 | 23 |
| 16:46:24 | 24 |
| 16:46:28 | 25 |

guaranteeing fair procedures, the due process clause of the Fourteenth Amendment, quote, covers a substantive sphere as well, barring certain government actions, regardless of the fairness of the procedures used to implement them, end quote, case of Diaz versus City and County of Denver at 567 Fed 3rd 1169, at 1181, a Tenth Circuit case from 2009 which is quoting County of Sacramento versus Lewis at 523 U S 833 at 845, 1998 Supreme Court case. In this case, the legislative enactment is required to bear a rational relation to the legitimate government interest. Plaintiffs argue the temporary regulations and licensing process requirements are medically unnecessary, unattainable and harmful to public health. Plaintiffs further argue that defendants have violated their substantive due process rights by implementing the requirements in a manner that prohibits plaintiffs from continuing to provide abortion services unless they meet onerous standards on a short amount of time. Plaintiffs contend number one, there's no medical need for the physical facility requirements; number two, it's impossible for them to comply with the physical facility requirements in time to obtain a license before the effective date of the act; number three, the physical facility requirements directly undermine public health by substantially impeding access to a lawful and

Case 2:11-cv-23365-CM-KMH Document 8 NAUSER Filed 08/10/11 Page 44 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 44 of 53 PAGEID #: 3447

43

16:46:33  1    necessary medical procedure.  Through affidavits,

16:46:38  2    plaintiffs have presented evidence that the temporary

16:46:41  3    regulations and licensing process requirements regarding

16:46:45  4    the physical facilities where abortion services are

16:46:49  5    performed are unique to those facilities, that the

16:46:52  6    regulations for facilities to handle more complex and

16:46:56  7    riskier procedures like hospitals do not contain

16:46:59  8    physical facility requirements as strict and/or onerous

16:47:04  9    as the temporary regulations and licensing process, and

16:47:09  10   that the temporary regulations and licensing process

16:47:13  11   physical facility requirements are not medically

16:47:15  12   necessary.  Defendants have not presented evidence that

16:47:20  13   the additional requirements for the facilities where

16:47:23  14   abortion services are provided are rationally related to

16:47:27  15   a legitimate governmental interest.  The evidence

16:47:34  16   presented to the court is sufficient at this early stage

16:47:39  17   of the proceedings to show a likelihood that plaintiffs

16:47:43  18   will succeed on the merits of their due process claims.

16:47:47  19   Because the court has found that plaintiffs have shown a

16:47:51  20   likelihood that they will succeed on the merits of their

16:47:53  21   due process claims, the court need not address

16:47:57  22   plaintiff's right to privacy claim.

16:47:59  23        The court next considers whether plaintiffs

16:48:01  24   will suffer irreparable harm if the court denies a

16:48:04  25   preliminary injunction.  The irreparable harm

Case 2:11-cv-02365-CM-KMH Document 8-4 Filed 08/10/11 Page 45 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 45 of 53 PAGEID #: 3448

44

16:48:06  1   requirement is satisfied if plaintiff shows a

16:48:09  2   significant risk that it will experience harm that

16:48:14  3   cannot be compensated after the fact by monetary

16:48:17  4   damages.  Irreparable harm can occur through loss of

16:48:21  5   customer or good will as well as threats to a business's

16:48:26  6   viability.  Here, plaintiffs argue that absent an

16:48:29  7   injunction, defendants will enforce the temporary

16:48:32  8   regulations and licensing process immediately, harming

16:48:36  9   plaintiffs by number one, forcing them to shut down

16:48:38  10  their ongoing abortion services; number two, subjecting

16:48:43  11  them to loss of revenues; number three, subjecting them

16:48:46  12  to loss of future patients; and number four, damaging

16:48:50  13  the professional standing.  Plaintiffs also allege, in

16:48:54  14  the absence of the requested injunction, their patients

16:48:57  15  will be exposed to unnecessary health risks.  The Kansas

16:49:02  16  women will be unable to obtain abortion services in the

16:49:05  17  state and/or in a private medical office setting, and

16:49:09  18  public health will be threatened.  Yesterday, KDHE

16:49:16  19  issued a one year license to Comprehensive Health of

16:49:19  20  Planned Parenthood of Kansas and Mid-Missouri, one of

16:49:23  21  only two other facilities in Kansas that provides

16:49:26  22  abortion services.  Defendants argue that because

16:49:30  23  Planned Parenthood was licensed, women will still be

16:49:33  24  able to obtain abortion services in Kansas.  They also

16:49:37  25  argue that plaintiffs can seek to get a license to

Case 2:11-cv-02365-CM-KMH HODES & NAUSER Filed 08/10/PA v. MOSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 46 of 53 PAGEID #: 3449

45

16:49:40  1   perform abortion services at another facility.  Thus,

16:49:46  2   the defendants argue, the only remaining harm of

16:49:49  3   plaintiffs is the speculative harm that plaintiffs will

16:49:52  4   lose revenue and future clients, receive damage to the

16:49:58  5   professional standing, and that there will be a threat

16:50:00  6   to public health.  Plaintiffs presented evidence that

16:50:03  7   without an injunction, they would have to cease

16:50:08  8   providing medical services today.  KDHE informed

16:50:12  9   plaintiffs this morning that they would be denied a

16:50:15  10  license.  They have patients scheduled to receive these

16:50:19  11  services within the next week.  According to the

16:50:23  12  affidavit submitted, these services are often medically

16:50:26  13  necessary, and a delay in the services creates a health

16:50:30  14  risk for patients.  There is evidence in the record of

16:50:34  15  at least two women with fetal anomalies and serious

16:50:38  16  medical complications that will suffer irreparable harm

16:50:42  17  if an injunction is not issued.  At least one of the

16:50:47  18  plaintiffs performs 25 percent of these services in the

16:50:51  19  state of Kansas.  One plaintiff has been licensed, but

16:50:55  20  the record indicates that that clinic does not have the

16:50:59  21  specific expertise of plaintiffs Hodes and Nauser in

16:51:06  22  performing certain complicated procedures, and is

16:51:10  23  unlikely to be able to absorb the patients of both

16:51:13  24  plaintiffs in the manner that will address the health

16:51:15  25  concerns involved with dealing with delaying the

Case 2:11-cv-23365-CM-KMH Document NAUSER-Filed 08/10/PA Page 5 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 47 of 53 PAGEID #: 3450

46

| | | |
|---|---|---|
| 16:51:18 | 1 | services to patients.  There's also evidence that |
| 16:51:24 | 2 | plaintiffs will lose revenue through future clients, and |
| 16:51:28 | 3 | good will, and suffer harm to their professional |
| 16:51:31 | 4 | reputation if they are forced to stop providing legal |
| 16:51:35 | 5 | medical services.  Based on the record presented, the |
| 16:51:38 | 6 | court finds that plaintiffs have sufficiently shown that |
| 16:51:41 | 7 | they will suffer irreparable harm unless a temporary |
| 16:51:45 | 8 | restraining order is issued. |
| 16:51:47 | 9 | Next, the court looks at whether the |
| 16:51:49 | 10 | threatened injury outweighs the harm that the temporary |
| 16:51:54 | 11 | restraining order may cause defendants.  If the court |
| 16:51:56 | 12 | were to issue the requested orders, defendants would be |
| 16:51:58 | 13 | prohibited, at least temporarily, from enforcing the |
| 16:52:01 | 14 | temporary regulations and licensing process.  There's no |
| 16:52:05 | 15 | evidence that an injunction will impose any affirmative |
| 16:52:10 | 16 | obligations, administrative burden or cost to |
| 16:52:13 | 17 | defendants.  The delay in enforcing the state's laws |
| 16:52:17 | 18 | that might result from an injunction is not as great as |
| 16:52:20 | 19 | the threatened harm to plaintiffs and their patients. |
| 16:52:23 | 20 | An injunction would not prevent the regulation of |
| 16:52:26 | 21 | plaintiff's medical services entirely.  Plaintiffs would |
| 16:52:30 | 22 | remain subject to existing regulatory requirements and |
| 16:52:34 | 23 | government oversight.  Any delay or interruption from |
| 16:52:38 | 24 | the issuance of an injunction will be temporary pending |
| 16:52:42 | 25 | the resolution of this action.  The court finds that the |

Case 2:11-cv-23665-CM-KMH Document NAUSER Filed 08/10/14 Page 48 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 48 of 53 PAGEID #: 3451

47

16:52:47  1    significance, certainty and reparability of the

16:52:52  2    threatened harm outweigh any potential harm to

16:52:56  3    defendants.

16:52:57  4              Finally, court will consider whether the

16:52:59  5    injunction, if issued, would adversely affect the public

16:53:02  6    interest.  This action involves access to and regulation

16:53:06  7    of medical services that directly affect the public

16:53:09  8    interest.  Although regulation of medical services is a

16:53:13  9    recognizable public interest that would be affected by

16:53:17  10   issuing the requested injunction, the court believes

16:53:20  11   that the public's interest lies in preserving the status

16:53:24  12   quo pending resolution of this case.  As the court

16:53:30  13   mentioned, if an injunction is issued, plaintiffs would

16:53:33  14   remain subject to the existing regulatory requirements

16:53:36  15   and government oversight.  The court finds that

16:53:40  16   restraining action on the temporary regulations and

16:53:43  17   licensing process until the merits of this action can be

16:53:48  18   resolved would not adversely affect the public interest.

16:53:52  19   As a result of considering these factors, the court

16:53:56  20   finds plaintiffs have established entitlement to the

16:54:00  21   requested preliminary injunction.  Plaintiff's motion is

16:54:04  22   granted.  Defendants and their agents and successors and

16:54:09  23   office are temporarily restrained from enforcing the

16:54:13  24   licensing requirements of Senate Bill Number 36, 2011

16:54:18  25   bill, at Sections 2, 8 -- 2 and 8, and also enforcing

Case 2:11-cv-23865-CM-KMH HODES & NAUSER Filed 08/10/11 NAUSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 49 of 53 PAGEID #: 3452

48

16:54:26    1    the temporary regulations and licensing procedures until

16:54:30    2    a resolution of this action.

16:54:34    3          I would direct the parties to, in light of

16:54:37    4    the court's ruling, contact the magistrate judge

16:54:41    5    assigned to this case to request that a scheduling order

16:54:46    6    regarding this case be set as soon as possible. Based

16:54:53    7    on the court's ruling, at this time, is there any

16:54:59    8    request or argument for a bond to be issued?

16:55:09    9          MR. FABERT: If it please the court, I think

16:55:11   10    Federal Rule 65 C makes a posting of some bond

16:55:19   11    mandatory, and there is no discretion to completely

16:55:21   12    waive and dispense with the posting of a security bond.

16:55:27   13          THE COURT: Is there a request for a bond

16:55:29   14    amount?

16:55:38   15          MR. FABERT: Umm, we think a nominal figure

16:55:44   16    of $25,000 would be sufficient.

16:55:46   17          THE COURT: In regards to your statement

16:55:49   18    that the bond is mandatory, is that based on your

16:55:55   19    reading of the rule or some other source?

16:56:01   20          MR. FABERT: I think the language of the

16:56:03   21    rule states the court may issue a preliminary injunction

16:56:06   22    or a temporary restraining order only if the movant --

16:56:10   23    if the movant gives surety in an amount that the court

16:56:15   24    considers proper. And so, the black letter language of

16:56:17   25    the rule, I think, makes it obligatory to impose some

Case 2:11-cv-23365-CM-KMHH Document 8 NAUSER Filed 08/10/PA Page 5 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 50 of 53 PAGEID #: 3453

49

16:56:21  1   requirement on the security bond.

16:56:27  2          THE COURT:  Thank you.  Plaintiffs want to

16:56:30  3   be heard in regards to a request that a bond be set at

16:56:33  4   this time?

16:56:33  5          MS. WOODY:  Yes, Your Honor.  It's

16:56:34  6   plaintiff's position that Rule 65 provides the court

16:56:36  7   with discretion as to whether or not to enter a bond.

16:56:39  8   Based on the court's finding that there is no

16:56:41  9   affirmative action required by the state in this matter,

16:56:44 10   and no damages -- that there would be no damages to the

16:56:48 11   state from proceeding under the injunction, and as I

16:56:51 12   believe that injunctions of this nature have been

16:56:53 13   granted without bond as evidenced by the case that we

16:57:00 14   have cited to you, which is Judge Smith in the Western

16:57:02 15   District granted an injunction without a bond, and we

16:57:07 16   would draw the court's attention to the Tenth Circuit

16:57:10 17   case of Coquina Oil Corp versus Transwestern Pipeline

16:57:14 18   Company, there's no bond necessary absent the proof of

16:57:17 19   showing of likelihood of harm to the state.

16:57:21 20          THE COURT:  Anything else?

16:57:23 21          MS. WOODY:  No.

16:57:25 22          MR. FABERT:  I don't believe so.

16:57:27 23          THE COURT:  In regards to the rule, the rule

16:57:29 24   has the language that you've put on the record,

16:57:33 25   Mr. Fabert.  I would tell you that courts have actually

Case 2:11-cv-02665-CM-KMH Document 3 NAUSER Med 08/10/PA Page 50 of 51 al.

Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 51 of 53 PAGEID #: 3454

50

16:57:37   1   weighed in, in regards to that language.  I refer the

16:57:41   2   record to a case of RoDa Drilling Company versus Siegal

16:57:45   3   at 552 Fed 3rd 1203, at 1215, a Tenth Circuit case from

16:57:51   4   2009, noting wide latitude of trial courts in

16:57:56   5   determining whether to require a bond, despite what

16:58:00   6   appears to be the plain reading of the rule.  It appears

16:58:07   7   to be something which this court has discretion based on

16:58:12   8   the court's interpretation of the rule.  Again, the

16:58:15   9   court made its ruling.  I believe in good faith the

16:58:23  10   state has asked for a bond to be imposed.  At this time,

16:58:29  11   again, it's an early stage of these proceedings.  The

16:58:32  12   record's not fully developed.  The court under these

16:58:36  13   circumstances does not believe that a bond should be

16:58:40  14   required.  I don't believe that there's been a

16:58:45  15   sufficient showing of likelihood of harm by the court

16:58:49  16   not issuing the bond.  Bond request has been considered

16:58:52  17   by the court.  At this time, at this hearing, that

16:58:56  18   request is denied.  If there's nothing else from the

16:58:59  19   parties, this hearing's adjourned.  Thank you.

16:59:08  20         MR. CHANAY:  I'm sorry, Your Honor, I just

16:59:10  21   had one question.  Is the state free to continue under

16:59:13  22   process of developing its permanent regulations by

16:59:16  23   taking evidence from the public and comment on the

16:59:18  24   regulations as they have intended for the -- for the

16:59:22  25   permanent application?  I would certainly understand

Case 2:11-cv-23365-CM-KMH HODES: & NAUSER-MDS, v. NOSER et al.
Case: 1:15-cv-00568-MRB Doc #: 184-10 Filed: 07/29/22 Page: 52 of 53 PAGEID #: 3455

51

| | | |
|---|---|---|
| 16:59:25 | 1 | your ruling to keep them from implementing them, but may |
| 16:59:28 | 2 | they at least continue on in the development process and |
| 16:59:32 | 3 | taking public comment and information for those |
| 16:59:34 | 4 | regulations? |
| 16:59:38 | 5 | THE COURT: I don't know if I need to hear |
| 16:59:39 | 6 | from plaintiffs in regards to that, because I would find |
| 16:59:42 | 7 | the plaintiffs have specifically addressed what relief |
| 16:59:46 | 8 | they were requesting. I don't think the relief the |
| 16:59:48 | 9 | court has granted in any way would interrupt or |
| 16:59:52 | 10 | interfere with that part of the process from continuing. |
| 16:59:56 | 11 | MR. CHANAY: All right. Very good. |
| 16:59:57 | 12 | THE COURT: Anything else? |
| 16:59:57 | 13 | MR. CHANAY: No, Your Honor. |
| 16:59:58 | 14 | THE COURT: If there's nothing else, this |
| 17:00:00 | 15 | hearing's adjourned. Thank you. |
| | 16 | (Whereupon court recessed proceedings.) |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
 1
 2                    C E R T I F I C A T E
 3
 4
 5      I, Nancy Moroney Wiss, a Certified Shorthand Reporter
 6   and the regularly appointed, qualified and acting
 7   official reporter of the United States District Court
 8   for the District of Kansas, do hereby certify that as
 9   such official reporter, I was present at and reported in
10   machine shorthand the above and foregoing proceedings.
11      I further certify that the foregoing transcript,
12   consisting of 52 typewritten pages, is a full, true, and
13   correct reproduction of my shorthand notes as reflected
14   by this transcript.
15      SIGNED July 12, 2011.
16
17                      S/_____
18                      Nancy Moroney Wiss, CSR, CM, FCRR
19
20
21
22
23
24
25
```

NANCY MORONEY WISS, CSR, RMR, FCRR