IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PLANNED PARENTHOOD** | : | Case No. 1:15-cv-568 |
| **SOUTHWEST OHIO REGION,** *et al.,* | : | |
| | : | Judge Michael R. Barrett |
| *Plaintiffs*, | : | |
| vs. | : | |
| **BRUCE T. VANDERHOFF, M.D.,** | : | |
| *Defendant*. | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STATE DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    THE SUPREME COURT'S HOLDING IN *DOBBS V. JACKSON WOMEN'S HEALTH ORGANIZATION* DOES NOT DISTURB THE FOURTEENTH AMENDMENT'S PROCEDURAL DUE PROCESS PROTECTIONS. .............................................................................. 2

    II.    PLAINTIFFS HAVE CONSTITUTIONALLY PROTECTED PROPERTY INTERESTS. ........................................................................................ 3

    III.    THE CHALLENGED LICENSING REQUIREMENTS DEPRIVE PLAINTIFFS OF THEIR PROTECTED PROPERTY INTERESTS IN VIOLATION OF CONSTITUTIONAL REQUIREMENTS. .................... 7

        A.    The Automatic Suspension Provision Deprives Plaintiffs of Their Protected Property Interests in Violation of Procedural Due Process. ................................................................... 7

        B.    Defendant's Arbitrary Enforcement of Variance Requirements Provides No Meaningful Opportunity to Comply and Thus Violates Plaintiffs' Rights to Fair Notice. ............................................. 10

        C.    The WTA Requirement and Public Hospital Ban Function Jointly to Unconstitutionally Delegate Ohio's Licensing Authority to Private Parties. ................................................................ 12

CONCLUSION ...................................................................................................................... 13

## INTRODUCTION

Today, despite Defendant's arguments to the contrary, abortion remains legal in Ohio up to 22 weeks of pregnancy. *Preterm-Cleveland v. Yost*, No. A2203203 (Hamilton Ct. Com. Pl. Sept. 14, 2022) (entry granting temporary restraining order enjoining enforcement of Ohio's six-week abortion ban under Ohio's Constitution), attached as exhibit No. 1.[1] While Plaintiffs and their businesses remain regulated by the State of Ohio, these regulations must provide procedural due process to safeguard Plaintiffs' constitutionally protected property interests in their Ambulatory Surgical Facility ("ASF") licenses and the continuation of their business. The U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), has no impact on Plaintiffs' procedural due process claims. Indeed, the Court in *Dobbs* only eliminated constitutional protection for the right to abortion under the substantive due process privacy protections of the Fourteenth Amendment. The Sixth Circuit's procedural due process holding in *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006) is therefore undisturbed by *Dobbs* and is binding on this Court.

Defendant claims that Ohio has provided sufficient procedural safeguards to prevent the erroneous deprivation of Plaintiffs' property interests. Far from fair notice, announcing new variance requirements after the Director has denied the application—requiring immediate shutdown of Plaintiffs businesses—fails to provide any notice whatsoever. The Written Transfer Agreement ("WTA") Requirement and the Public Hospital ban, as part of Ohio's larger regulatory scheme, have deliberately created a system where private actors are given the exclusive authority to determine Plaintiffs licenses. Lastly, the Automatic Suspension Provision

---

[1] The *Preterm Cleveland* temporary restraining order was extended through October 12, 2022 at a status conference held on September 19, 2022. Even prior to the state court's temporary restraining order against Ohio's six-week ban, abortion was legal and accessible in Ohio up to approximately six weeks. Pls.' Mem. Supp. Mot. for Summ. J. ("Pls.' Mot. for SJ") at 6, ECF No.186-1.

creates a licensing system where Defendant infringes on Plaintiffs' property interests without any opportunity to challenge the substance of their deprivation, before *or* after it occurs, with no valid governmental interest that could possibly justify such a severe deprivation of due process. Based on *Baird* and other precedent discussed further below, Plaintiffs are entitled to summary judgment on their procedural due process claims.

## ARGUMENT

**I.  THE SUPREME COURT'S HOLDING IN *DOBBS V. JACKSON WOMEN'S HEALTH ORGANIZATION* DOES NOT DISTURB THE FOURTEENTH AMENDMENT'S PROCEDURAL DUE PROCESS PROTECTIONS.**

Defendant claims that the Supreme Court's recent decision in *Dobbs* somehow abrogated Plaintiffs' claims asserting violations of procedural due process. Def. Bruce Vanderhoff's Omnibus Mot. for Summ. J. & Mem. in Opp'n to Pls.' Mot. for Summ. J. ("Opp'n Br.") at 18, ECF No. 187. But *Dobbs* is utterly irrelevant to the resolution of Plaintiffs' motion for summary judgment.

*Dobbs* eliminated a substantive due process right to abortion, overturning *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). But the procedural due process protections required by the Fourteenth Amendment constitute an entirely distinct basis for Plaintiffs' claims that is independent of the Court's holdings in *Roe* and *Casey*. Indeed, Plaintiffs' Third Amended Complaint solely raises procedural due process claims. *See* Pls.' 3rd Am. Compl. For Decl. & Inj. Relief at ¶¶ 138-43, ECF No. 177. And Plaintiffs have only moved for summary judgment on those claims.

Defendant seems to suggest, however, that "the full import of the *Dobbs* decision" relieves the Ohio General Assembly and the Ohio Department of Health ("ODH") of their constitutional obligation to provide *any* due process when depriving Plaintiffs of their property

2

interests. Opp'n Br. at 1-2, ECF No. 187. Defendant recasts each violation of Plaintiffs' due process rights—from the Automatic Suspension Provision, which forces the immediate closure of Plaintiffs' clinics without any pre- or -post deprivation review whenever an application for a variance is denied (or merely ignored for 60 days), to ODH's imposition of novel variance requirements only *after* Plaintiffs have submitted their applications, to the wholesale delegation of licensing authority to private entities—as little more than the State's permissible regulation of abortion. *Id*.

Implicit in Defendant's argument is the notion that *Dobbs* has thrust abortion, and abortion providers such as Plaintiffs, beyond the reach of any otherwise applicable legal doctrine. *Dobbs* cannot stand for so broad a proposition. *Dobbs* did not strip Plaintiffs of their constitutional rights in full or their constitutionally protected property rights,[2] nor did it give the State carte blanche to disregard the plain text of the Constitution, which forbids a state from "depriv[ing] any person of life, liberty, or *property*, without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added).

Whatever the impact of *Dobbs* on the abortion legal landscape, it is plainly cabined to the *substantive* due process doctrine, leaving the legal basis for Plaintiffs' procedural due process claims undisturbed. Under clear procedural due process precedent, and for the reasons stated in Plaintiffs' opening brief, this Court should grant Plaintiffs' Motion for Summary Judgment.

## II. PLAINTIFFS HAVE CONSTITUTIONALLY PROTECTED PROPERTY INTERESTS.

Until his most recent brief, Defendant has conceded the existence of Plaintiffs'

---

[2] In fact, though the challenged licensing requirements in this case nominally apply to any ASF in Ohio, the sole category of ASFs that have needed to apply for a WTA variance has been abortion providers. *See* Pls.' Mot. for SJ at 2-3, ECF No. 186-1. Defendant characterizes Ohio's deliberate campaign against abortion providers succinctly: "With each subsequent law, the General Assembly imposed even greater restrictions on abortion." Opp'n Br. at 20, ECF No. 187. Indeed, Defendant seems to argue that abortion providing ASFs are the only category of ASFs now deprived of a constitutionally protected property interest in their license. *Id*. at 19 ("[N]o property right to the continued operation of a surgical abortion ASF can exist because that right was never 'enshrined in state law.'").

3

constitutionally protected property interest in the operation of their businesses. *See, e.g.,* Op. & Order at 7-8, *Planned Parenthood Southwest Ohio Region v. Hodges*, 15-cv-568 (S.D. Ohio Oct. 13, 2015), ECF No. 28 ("PI ASP Op.") (order granting Plaintiffs' motion for preliminary injunction) (noting that "the Director does not dispute that PPSWO has a protected property interest," and finding that this "property interest plainly exists in the continued operation of its ASF," and "PPSWO also has a protected property interest in its ASF license because PPSWO previously has obtained and currently has a valid license for operation pursuant to Ohio Rev. Code § 3702.304 and will be unable to operate its business without it under the new Ohio statutory scheme") (citing, *inter alia*, *Bell v. Burson*, 402 U.S. 535, 539 (1971)).

Defendant's new argument that Plaintiffs lack a property interest in their business and their ASF licenses ignores decades of precedent to the contrary. In an attempt to support this faulty proposition, Defendant distorts the Sixth Circuit's holding in *Baird*, reading that case as announcing a general rule that abortion clinics have no property interest in an ASF license. *See* Opp'n Br. at 3, ECF No. 187. This is plainly false. The court in *Baird* determined first-time applicants do not have a property interest in obtaining a new license, but affirmed the property interest of existing ASFs, such as Plaintiffs here, in their ongoing businesses. 438 F.3d at 611. Moreover, in *Baird*, the Sixth Circuit specifically found that "Dr. Haskell and WMPC ha[d] a protected property interest in the continued operation of the Dayton clinic." *Id.* at 612. In coming to this conclusion, the court cited a large body of precedent holding that "due process protects an interest in the continued operation of an existing business" as well as "a person's choice of careers and occupations." *Id.* at 611-12.[3]

---

[3] In other contexts, federal courts, including the Supreme Court and the Sixth Circuit, have recognized protected property and liberty interests in the continued operation of one's business and the maintenance of one's license. *See, e.g.*, *Mackey v. Montrym*, 443 U.S. 1, 10 n.7 (1979) (noting that "the Due Process Clause applies to a state's suspension or revocation of a driver's license"); *Johnson v. Morales*, 946 F.3d 911, 922, 937 (6th Cir. 2020) (relying

4

*Baird*, moreover, is consistent with a long line of Ohio state court cases recognizing that there is a constitutionally protected property interest in existing business licenses and in the continued operation of one's business, a matter of state law. *See, e.g., Asher Invs. Inc. v. City of Cincinnati*, 701 N.E.2d 400, 406 (Ohio Ct. App. 1997) (citing *State v. Cooper*, 594 N.E.2d 713 (Ohio Ct. App. 1991)); *Cooper*, 594 N.E.2d at 715 (quoting *In re Thornburg*, 9 N.E.2d 516, 518 (Ohio Ct. App. 1936) ("[T]he right to engage in a lawful business is a property right.")); *Maranatha Grp. Homes, Inc. v. Ohio Youth Comm'n*, 6th Dist. Fulton C.A. No. F-79-18, 1980 Ohio App. LEXIS 9871, *10 (June 27, 1980) ("When a state has granted an individual or corporation permission or a license to do business or to practice a profession, that individual or corporation has a property interest in its continuation."); *see also O'Daniel v. Ohio State Racing Comm'n*, 307 N.E.2d 529, 533 (Ohio 1974) (finding that suspension of a horse trainer's license deprives the licensee of a protected property interest); *State v. Hochhausler*, 668 N.E.2d 457, 463 (Ohio 1996). Indeed, the Ohio Revised Code implicitly recognizes that a license constitutes a property interest subject to due process constraints, since it provides that licensees may continue to operate pending a final hearing and adjudication of an administrative agency's proposed license revocation. Ohio Rev. Code § 119.06. And one Ohio court has specifically held that Plaintiffs "have protected liberty and property interests in the operation of their businesses and in the continuation of their chosen professions." *Planned Parenthood Sw. Ohio Region v. Ohio Dep't of Health*, No. A 2100870, at 6-7 (Hamilton Ct. Com. Pl. Apr. 5, 2021). *See also Women's Med. Grp. Pro. Corp. v. Vanderhoff*, No. A 2200704, at 1 (Hamilton Ct. Com. Pl. Apr. 15, 2022) (recognizing Plaintiff WMD's "due process rights to continue to operate its business and its

---

on Supreme Court precedent that "has long recognized that an individual may have a significant interest in maintaining a license," and the "Court has repeatedly recognized the severity of depriving someone of his or her livelihood") (internal quotation marks omitted); *Brookpark Ent., Inc. v. Taft*, 951 F.2d 710, 716 (6th Cir. 1991); *Hillside Prods., Inc. v. Duchane*, 249 F. Supp. 2d 880, 897 (E.D. Mich. 2003) (collecting cases).

5

staff's due process rights to pursue their professions").

The only two Ohio state court cases cited by Defendant in support of the claim that Plaintiffs have no property interest in their ASF licenses—*WCI, Inc. v. Ohio Liquor Control Commission*, 116 Ohio St.3d 547, 2008-Ohio-88, 880 N.E.2d 901, and *State ex rel. Zugravu v. O'Brien*, 196 N.E. 664, 666 (Ohio 1935)—both concern liquor licenses and for that reason are easily distinguishable. As the Ohio courts have recognized, liquor licenses are uniquely subject to regulation for reasons that are not applicable to other kinds of licenses. *See, e.g.*, *Scioto Trails Co. v. Ohio Dep't of Liquor Control*, 462 N.E.2d 1386, 1387 (Ohio Ct. App. 1983) ("Since the advent of the Eighteenth and Twenty-First Amendments to the United States Constitution, it is generally recognized that intoxicating liquor is peculiarly subject to regulation by the state and is not afforded the same type of constitutional rights as might be afforded other business pursuits. . . .").

Finally, Defendant asserts that Plaintiffs have no property interest in a variance. Opp'n Br. at 4, ECF No. 187. Defendant fails to acknowledge, however, that under the challenged scheme, the denial of a variance is equivalent to the denial of a license. The denial of a variance cannot be appealed, and no court can review the substance of the reasons supporting the variance decision. Because the variance denial itself is entirely insulated from review under Ohio law, when that is appealed, the only question that can be considered at an administrative hearing on the proposed revocation of Plaintiffs' licenses is whether the ASF had a variance or a WTA, and, if the answer is no, the revocation will be upheld. Ohio Rev. Code § 3702.304(C); Ohio Admin. Code 3701-83-14(F); *Women's Med Ctr. of Dayton v. Dep't of Health*, 2019-Ohio-1146, 133 N.E.3d 1047, ¶ 54 (2d Dist.) ("Not only was the variance issue not properly before the trial court, it was not part of the hearing officer's consideration in the April 26, 2016 hearing, and the

adjudication order specifically provided that 'WMC[D]'s statements regarding the rejection of its variance application [were] not the subject of this Adjudication Order.'"), *appeal not allowed*, 129 N.E.3d 472. Accordingly, under the statutory and regulatory scheme challenged here, Plaintiffs have been deprived of their property interests in their licenses simply through Defendant's assertion of arbitrary and even nonsensical reasons for denying a variance, because that reason can never be reviewed by any court and yet can provide the sole basis for revoking WMD's ASF license.

In defending this Kafkaesque scheme, Defendant's argument seems to be that, because Ohio has denied providers any opportunity for review of the variance decision or the reasons underlying it, there is no property right and therefore no constitutional violation. But this is exactly backwards: the fact that Plaintiffs' ability to continue operating their businesses depends on the unreviewable and standardless variance decision aggravates rather than alleviates the denial of due process inherent in this scheme. Plaintiffs have thus amply demonstrated a protected property interest in their business and their ASF licenses.

**III.     THE CHALLENGED LICENSING REQUIREMENTS DEPRIVE PLAINTIFFS OF THEIR PROTECTED PROPERTY INTERESTS IN VIOLATION OF CONSTITUTIONAL REQUIREMENTS.**

   **A.     The Automatic Suspension Provision Deprives Plaintiffs of Their Protected Property Interests in Violation of Procedural Due Process.**

Defendant incorrectly contends the Automatic Suspension Provision ("ASP") is constitutional, pointing to the post-deprivation administrative hearing Ohio law provides for an ASF to challenge a license suspension. Opp'n Br. at 28, ECF 187. Defendant's argument is erroneous for two reasons. First, as *Baird* clearly dictates, and as this Court reasoned in entering a preliminary injunction against the ASP, a pre-deprivation opportunity to be heard and "react to [the] proposed governmental action *before* deprivation occurs" is constitutionally required when

7

the license suspension would force Plaintiffs to shut down immediately. 438 F.3d at 613-14 (emphasis added).[4] Pre-deprivation process is constitutionally required except in "extraordinary situations," *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993), such as when the State reasonably believes that an emergency requires immediate action. But as this Court has already held, the connection between the ASP and patient health and safety is "tenuous," "theoretical," and falls decidedly outside of the narrow exceptions for pre-deprivation review. PI ASP Op. at 16, 18, ECF 28; *see also* Pls.' Mot. for SJ at 20 n. 4, ECF 186-1.

Defendant spends much of his brief attempting to paint abortion as unsafe and identifying the WTA scheme as "the State's chosen mechanism" to safeguard patients' safety. Opp'n Br. at 30, ECF 187. These claims about the safety of abortion are irrelevant to summary judgment, and, in any event, are incorrect. Plaintiffs move for summary judgment on only procedural process claims that, by definition, require the court to analyze Plaintiffs' rights and the procedures provided by the state around depriving plaintiffs of those rights. These are purely legal questions that can be resolved by examining the statutory and regulatory scheme itself. The question of abortion safety is therefore not relevant, let alone material, to any of Plaintiffs' claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted" for summary judgment purposes.).[5] ODH has placed abortion-providing ASFs under a microscope and nonetheless there has never been an attempt to close the

---

[4] Again, in the face of severe civil penalties, Plaintiffs would have no choice but to immediately shut down operations when notified of an ASF license suspension. Pls.' Mot. for SJ at 19 n.3, ECF 186-1.

[5] Nevertheless, Defendant is wrong on the facts. Ohio collects extensive data on abortion service provision and the data clearly indicate that abortion in Ohio is safe. For example, in 2020, the most recent year for which Ohio has published data, out of a total of 20,605 induced abortions, only 0.4 percent (90 abortions) resulted in complications. 2020 Ohio Dep't of Health Induced Abortions in Ohio, at 1, 27 (2021), attached as exhibit No. 2. No deaths from abortion have been reported in the past thirteen years. 2009 Ohio Dep't of Health Induced Abortions in Ohio, at Table 10a (2010), attached as exhibit No. 3. Moreover, Plaintiffs' facilities, along with all abortion-providing ASFs in Ohio, are subject to an extensive state regulatory scheme and are inspected regularly, Ohio Rev. Code § 3702.302, and the Ohio Department of Health has the authority to take action in the event of safety concerns, Ohio Rev. Code § 3702.3011.

8

facilities for any alleged safety-related reason. Defendant's focus on the alleged danger of abortion is therefore nothing more than an attempt to distract the court from the issues actually raised by Plaintiffs' motion.

Second, even in cases where post-deprivation review may be sufficient, there must be "substantial assurance that the deprivation is not baseless or unwarranted." *Fed. Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240 (1988); *see also* PI ASP Op. at 11, ECF 28 (In due process determinations, the Court must assess "the risk of an erroneous deprivation caused by inadequate procedures designed to safeguard the interest.") (citing *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1272 (6th Cir. 1988)). Defendant claims that the available post-deprivation review is satisfactory because "if any error in the suspension is identified. . . the license will be reinstated." Opp'n Br. at 28, ECF 187. But this characterization obscures the reality of the post-deprivation review that Ohio law provides, which plainly fails to provide *any* substantive review of the automatic variance denial. The only "error" contemplated by Ohio law as sufficient to reinstate a license after suspension is whether a variance was denied or granted. *Women's Med Ctr. of Dayton*, 2019-Ohio-1146, 133 N.E.3d 1047. If the variance was denied—even based on ODH's inaction—the license suspension will be upheld. Ohio Admin. Code. 3701-83-14(F); Ohio Rev. Code § 3702.304(A), (C). As Defendant repeatedly asserts, the Director's variance determination is final, Opp'n Br. at 7, 22, ECF 187, ensuring that the post-deprivation review further denies Plaintiffs any ability to challenge the basis for the deprivation.

Thus, the ASP allows Defendant to revoke Plaintiffs' licenses, resulting in immediate closure of Plaintiffs' businesses, without meaningful pre- *or* post-deprivation review. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

9

532, 546 (1985). As a matter of law, the ASP violates constitutional procedural due process requirements, and Plaintiffs are entitled to summary judgment.

> B. **Defendant's Arbitrary Enforcement of Variance Requirements Provides No Meaningful Opportunity to Comply and Thus Violates Plaintiffs' Rights to Fair Notice.**

In violation of well-established constitutional standards, Defendant's enforcement of Ohio's variance requirements has also arbitrarily deprived Plaintiffs of procedural due process. The procedural due process requirement of fair notice dictates that the State must make clear what conduct is forbidden or required *before* a deprivation occurs. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). As explained in Plaintiffs' Motion, Defendant has unmistakably failed to provide a reasonable opportunity to comply with the variance requirements by repeatedly promulgating novel requirements in variance denial letters—rejecting back-up physicians that had previously been approved, repeatedly increasing the number of required back-up physicians without warning or explanation, and even denying a variance based on premature enforcement of a law not yet in effect. *See* Pls.' Mot. for SJ at 7-14, ECF 186-1.

There is no justification for such a serious deprivation of Plaintiffs' rights, and Defendant does not even attempt to provide one. Instead, Defendant argues that fair notice was provided because ODH "appropriately notified Plaintiffs when it either denied or accepted variance requests," Opp'n Br. at 23, ECF 187. This claim not only distorts fair notice doctrine, but also provides further confirmation of Defendant's flouting of constitutional requirements.

It is axiomatic that fair notice requires a meaningful opportunity to comply with a law. *Ramsey*, 844 F. 2d at 1272 (Clarifying that in due process analysis, "the most important consideration to bear in mind is that the fundamental requirement of the Due Process Clause 'is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time

10

and in a meaningful manner.'") (quoting *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)) (additional internal quotation marks omitted); *see also Baird*, 438 F.3d at 612-13; *Leary v. Daeschner*, 228 F.3d 729, 742-44 (6th Cir. 2000); *Loudermill*, 470 U.S. at 543 n. 8 ("The point is that where there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one."). It is self-evident that announcing the requirements for compliance *after* Plaintiffs have submitted their applications and in letters denying variances provides literally no notice at all. PI ASP Op. at 11 ("[Plaintiff]'s position that the variance application is not a pre-deprivation opportunity to respond is consistent with *Loudermill* and *Leary*. The pre-deprivation opportunity to respond must come *after*, not *before*, the discretionary decision.") (emphasis in original). Plaintiffs cannot comply with requirements the State has not announced. Under threat of license suspension, the undisputed facts illustrate Defendant's systematic attempts to strip Plaintiffs of their property interests by ensuring that compliance is impossible. Pls.' Mot. for SJ at 11-14, ECF 186-1.

Defendant claims that it is possible to comply with the arbitrary requirements ODH has concocted, pointing to the history of Plaintiffs' continued ASF operations in the face of increasingly onerous requirements ODH has imposed. Opp'n Br. at 23-24, ECF 187. This claim ignores Plaintiffs' long and protracted history of good-faith compliance attempts, which ODH has repeatedly rejected, requiring repeated court intervention. Contrary to Defendant's characterization, the undisputed facts show that Plaintiffs have been denied fair notice through Defendant's disregard for constitutional standards.

As a matter of law, Defendant's enforcement of Ohio's variance provisions has consistently violated Plaintiffs' procedural due process rights, clearly entitling Plaintiffs to summary judgment.

## C. The WTA Requirement and Public Hospital Ban Function Jointly to Unconstitutionally Delegate Ohio's Licensing Authority to Private Parties.

Defendant asserts that the WTA Requirement and Public Hospital Ban are each constitutional when considered separately and, therefore, must be constitutional collectively, inexplicably citing the irrelevant *Dobbs* decision in support of this conclusory argument. *See supra* section II. Indeed, Defendant fails entirely to address the delegation problem created by the WTA Requirement and Public Hospital Ban working in tandem. As Plaintiffs explained in their Motion for Summary Judgment, in order to comply with the Public Hospital Ban and satisfy the WTA requirement, Plaintiffs may only retain their licenses by entering into agreements with private physicians and/or a private hospital. Pls.' Mot. for SJ at 23-26, ECF 186-1.

Defendant argues that there is no delegation of authority so long as the Director retains "the ultimate authority to approve and issue variances." Opp'n Br. at 26, ECF 187. But as Plaintiffs clearly explained in their Motion for Summary Judgment, Pls.' Mot. for SJ at 4, ECF 186-1, the changes that HB 59 made to the statutory scheme took this "ultimate authority" away from the Director by eliminating the possibility of a waiver and adding the requirement that an ASF have a relationship with "one or more consulting physicians who have admitting privileges at a minimum of one local hospital[.]" *See* Ohio Rev. Code § 3702.304(B)(2). As a result of that challenged law, the Director has *no* discretionary authority to *approve* a variance unless at least one private party—a hospital or backup physician—has agreed to allow Plaintiffs' ASFs to continue operating. As such, it delegates authority over Plaintiffs' licenses to a private party.[6]

Finally, Defendant also argues that Plaintiffs cannot challenge the variance provision as

---

[6] Plaintiffs' Summary Judgment Motion also explains how hospitals have the power to prevent their employed physicians from entering into an agreement to serve as a backup physician for an abortion provider, thus giving hospitals veto power over an ASF's ability to comply with the WTA requirement *and* an ASF's ability to obtain a variance from that requirement. Pl Mot. for SJ at 26-27, ECF 186-1.

12

an unlawful delegation of licensing authority before this Court, pointing to an entirely separate case that Plaintiffs WMGPC and PPSWO filed in state court. In *Women's Medical Group Professional Corp., v. Vanderhoff*, plaintiffs brought a challenge under the Ohio Constitution to S.B. 157, 134th Gen. Assemb. (Ohio 2021) ("SB 157"). This bill, enacted in December 2021, builds on the existing variance scheme by prohibiting ASFs from contracting with backup doctors who teach or provide instruction, directly or indirectly, at a medical school affiliated with a state university or college or with backup doctors who are employed by and compensated pursuant to a contract with, and provide instruction or consultation to, a medical school affiliated with a state university or college for the purposes of supporting the ASF's request for a variance from Ohio's WTA requirement. Only this new statute is at issue in the state court case. Defendants cite no authority for their claim that a separate case in state court, involving state constitutional claims against a statute that is not at issue here and was passed long after this litigation commenced, prevents Plaintiffs from challenging the variance provision as part of the challenge to the WTA Requirements before this Court. This Court should therefore reject Defendant's unfounded contention.

## CONCLUSION

For all of the foregoing reasons, this Court should grant Plaintiffs' motion for summary Judgment and deny Defendant's motion for summary judgment as to Count I (Due Process Nondelegation – WTA Requirement); Count II (Procedural Due Process – Automatic Suspension Provision); and Count III (Procedural Due Process – Fair Notice).

Respectfully submitted,

/s/ B. Jessie Hill

| | |
|---|---|
| CARRIE Y. FLAXMAN<br>Planned Parenthood Federation of America<br>1110 Vermont Avenue, NW, Suite 300<br>Washington, DC 20005<br>(202) 973-4800<br>(202) 296-3480 (fax)<br>carrie.flaxman@ppfa.org<br>*Admitted Pro Hac Vice*<br>*Co-counsel for Plaintiff Planned Parenthood Southwest Ohio Region*<br><br>MELISSA COHEN<br>KYLA EASTLING*<br>Planned Parenthood Federation of America<br>123 William Street, Floor 9<br>New York, NY 10038<br>(212) 541-7800<br>(212) 247-6811 (fax)<br>melissa.cohen@ppfa.org<br>kyla.eastling@ppfa.org<br>*Admitted Pro Hac Vice*<br>*\*Admission for Pro Hac Vice forthcoming.*<br>*Co-counsel for Plaintiff Planned Parenthood Southwest Ohio Region*<br><br>FREDA J. LEVENSON #0045916<br>ACLU of Ohio Foundation, Inc.<br>4506 Chester Avenue<br>Cleveland, OH 44103<br>(216) 472-2220<br>(216) 472-2210 (fax)<br>flevenson@acluohio.org<br>*Counsel for Plaintiff Planned Parenthood Southwest Ohio Region and Plaintiff Women's Med Group Professional Corporation* | B. JESSIE HILL #0074770<br>*Trial Attorney for Plaintiffs*<br>Cooperating Counsel for the ACLU of Ohio<br>Case Western Reserve Univ., School of Law<br>Cleveland, Ohio 44106<br>(216) 368-0553<br>(216) 368-2086 (fax)<br>bjh11@cwru.edu<br>*Counsel for Plaintiff Planned Parenthood Southwest Ohio Region and Plaintiff Women's Med Group Professional Corporation*<br><br>RACHEL REEVES<br>BRIGITTE AMIRI<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 284-7358<br>(212) 549-2651 (fax)<br>rreeves@aclu.org<br>bamiri@aclu.org<br>*Admitted Pro Hac Vice*<br>*Of-Counsel for Plaintiff Women's Med Group Professional Corporation* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2022, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail and email upon all parties for whom counsel has note entered an appearance electronically.

/s/ *B. Jessie Hill*
Attorney for Plaintiffs