# EXHIBIT 1

# IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PRETERM-CLEVELAND, *et al.*, | : | |
| | : | Case No.: A2203203 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge Christian A. Jenkins |
| | : | |
| DAVID YOST, *et al.*, | : | |
| | : | Decision and Entry |
| Defendants. | : | |
| | : | |
| | : | |

---

## I.  Procedural Background

Plaintiffs filed their verified complaint, motion for a temporary restraining order and supporting affidavits on September 2, 2022.  Plaintiffs seek an order enjoining the enforcement of Ohio's so-called "Heartbeat Act," which subjects medical providers to potential felony prosecution for performing abortions of intrauterine pregnancies after the detection of a fetal heartbeat, or approximately six weeks after the patient's last menstrual period ("LMP").[1]

Defendants David Yost, Bruce Vanderhoff, Kim Rothermel and Bruce Saferin filed their opposition on September 7, 2022.[2]  One of the Prosecutor Defendants, Julia Bates of Lucas County, Ohio, filed a response to plaintiffs' motion on September 7, 2022 stating that she does not

---

[1] 2019 Ohio Laws File 3 (Sub. S.B. 23), referred to herein as "S.B. 23."

[2] David Yost is Attorney General of Ohio.  Bruce Vanderhoff is the Director of the Ohio Department of Health.  Kim Rothermel is Secretary of the State Medical Board of Ohio.  Bruce Saferin is Supervising Member of the State Medical Board of Ohio.  These defendants are collectively represented by the Ohio Attorney General's Office and referred to herein as the "State Defendants."  The remaining defendants are the county prosecutors in Ohio's six most populous counties where the clinics operated by plaintiffs are located, namely Cuyahoga County, Hamilton County, Franklin County, Montgomery County, Lucas County and Summit County, which collectively account for approximately 42 percent of Ohio's population. These defendants are referred to herein as the "Prosecutor Defendants."

object to the issuance of the requested relief. Plaintiffs filed a reply in support of their motion on September 8, 2022.

The Court heard arguments on plaintiffs' motion at a hearing on September 8, 2022. At the hearing, the State Defendants argued for the first time that this Court does not have jurisdiction because, at the time of the hearing, the Ohio Supreme Court had not yet granted plaintiffs' application for voluntary dismissal of the mandamus action they brought in the Ohio Supreme Court challenging S.B. 23 (Ohio S.Ct. Case No. 2022-0803). Plaintiffs responded that dismissal of the mandamus action is ministerial and a matter of right such that this Court could properly proceed. The remaining Prosecutor Defendants advised the Court that they do not object to the issuance of the requested temporary restraining order.

## II. S.B. 23

S.B. 23 is a lengthy bill that amends and creates several sections of the Ohio Revised Code. Pertinent to this matter, S.B. 23 creates the following new provisions:

<u>R.C. 2919.193</u>

(A) Except as provided in division (B) of this section, no person shall knowingly and purposefully perform or induce an abortion on a pregnant woman before determining in accordance with division (A) of section 2919.192 of the Revised Code whether the unborn human individual the pregnant woman is carrying has a detectable heartbeat.

Whoever violates this division is guilty of performing or inducing an abortion before determining whether there is a detectable fetal heartbeat, a felony of the fifth degree. A violation of this division may also be the basis of either of the following:

(1) A civil action for compensatory and exemplary damages;

(2) Disciplinary action under section 4731.22 of the Revised Code.

(B) Division (A) of this section does not apply to a physician who performs or induces the abortion if the physician believes that a medical emergency, as defined in section 2919.16 of the Revised Code, exists that prevents compliance with that division.

2

(C) A physician who performs or induces an abortion on a pregnant woman based on the exception in division (B) of this section shall make written notations in the pregnant woman's medical records of both of the following:

(1) The physician's belief that a medical emergency necessitating the abortion existed;

(2) The medical condition of the pregnant woman that assertedly prevented compliance with division (A) of this section.

For at least seven years from the date the notations are made, the physician shall maintain in the physician's own records a copy of the notations.

(D) A person is not in violation of division (A) of this section if the person acts in accordance with division (A) of section 2919.192 of the Revised Code and the method used to determine the presence of a fetal heartbeat does not reveal a fetal heartbeat.

### R.C. 2919.195

(A) Except as provided in division (B) of this section, no person shall knowingly and purposefully perform or induce an abortion on a pregnant woman with the specific intent of causing or abetting the termination of the life of the unborn human individual the pregnant woman is carrying and whose fetal heartbeat has been detected in accordance with division (A) of section 2919.192 of the Revised Code.

Whoever violates this division is guilty of performing or inducing an abortion after the detection of a fetal heartbeat, a felony of the fifth degree.

(B) Division (A) of this section does not apply to a physician who performs a medical procedure that, in the physician's reasonable medical judgment, is designed or intended to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman.

A physician who performs a medical procedure as described in this division shall declare, in a written document, that the medical procedure is necessary, to the best of the physician's reasonable medical judgment, to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman. In the document, the physician shall specify the pregnant woman's medical condition that the medical procedure is asserted to address and the medical rationale for the physician's conclusion that the medical procedure is necessary to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman.

A physician who performs a medical procedure as described in this division shall place the written document required by this division in the pregnant woman's medical records. The physician shall maintain a copy of the document in the physician's own records for at least seven years from the date the document is created.

(C) A person is not in violation of division (A) of this section if the person acts in accordance with division (A) of section 2919.192 of the Revised Code and the method used to determine the presence of a fetal heartbeat does not reveal a fetal heartbeat.

(D) Division (A) of this section does not have the effect of repealing or limiting any other provision of the Revised Code that restricts or regulates the performance or inducement of an abortion by a particular method or during a particular stage of a pregnancy.

## III. Discussion

### A. This Court has Subject Matter Jurisdiction.

Although not raised in their written submission, the State Defendants argued at hearing that this Court lacked subject matter jurisdiction under the "jurisdictional priority" rule because essentially the same case was then pending in a superior court (i.e., the Ohio Supreme Court). On September 12, 2022, the Ohio Supreme Court granted plaintiffs' application to voluntarily dismiss the mandamus action they had brought in the Ohio Supreme Court. Ohio S.Ct. Case Announcement 2022-3174.

The Supreme Court's dismissal should obviate the need to address the State Defendants' jurisdictional priority argument. However, because the issue raised by the State Defendants is jurisdictional, and in view of the fact that the original mandamus action was pending in the Supreme Court at the time this action was filed such that a question about the Court's jurisdiction could still theoretically be raised, the Court will address its jurisdiction.

The jurisdictional priority rule provides simply that, "as between state courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings

acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 9 (holding that mandamus action filed first in the court of appeals had jurisdictional priority over subsequently filed mandamus action in the Ohio Supreme Court). Thus, under this rule it is immaterial which court is superior to the other, but rather where the matter was first filed.

Under Ohio's Constitution, a court of common pleas has "original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." Ohio Constitution, Article IV, Section 4(B). A common pleas court "is a court of general jurisdiction, with subject-matter jurisdiction that extends to all matters at law and in equity that are not denied to it." *Ohio High School Athletic Ass'n v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 7 (citations omitted).

Plaintiffs in this case filed a complaint in mandamus with the Ohio Supreme Court on June 29, 2022, five days after the reversal of *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) in *Dobbs v. Jackson*, 142 S.Ct. 2228, 213 L.Ed.2d 545 (2022).[3] Plaintiffs filed a motion for emergency stay at the same time. In response to plaintiffs' motion for emergency stay, the State Defendants argued before the Ohio Supreme Court that the mandamus action was not properly brought and that the Ohio Supreme Court "lacks original jurisdiction to entertain requests for prohibitory injunctions." Memorandum of Attorney General David Yost, *et al*. in Response to Motion for Emergency Stay at p. 5, filed in Ohio S.Ct. Case No. 2022-0803 June 30, 2022.[4] The State Defendants further argued that plaintiffs could not pursue mandamus relief in the Ohio

---

[3] A writ of mandamus is an order from a court issued in the name of the state to an inferior tribunal, public official or other body commanding the performance of an act. *See* R.C. 2731.01.
[4] The Court takes judicial notice of the filings in Ohio Supreme Court Case No. 2022-0803, publicly available at https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2022/0803.

Supreme Court because they "have an adequate remedy: they can pursue their constitutional challenges in lower courts, seeking declaratory and injunctive relief." *Id*. at 6. In short, the State Defendants took the position before the Supreme Court that plaintiffs' case should be before a court of common pleas like this Court as an action for declaratory judgment and injunctive relief.

The Supreme Court denied plaintiffs' motion for emergency stay without opinion on July 1, 2022. *See* Ohio Supreme Court Case Announcement #2, 2022-Ohio-2317.[5] The State Defendants then moved the Ohio Supreme Court on July 20, 2022 to dismiss the mandamus action arguing again that plaintiffs' claims should be brought in common pleas court as an action for declaratory judgment and injunctive relief. On September 2, 2022, plaintiffs consented in writing to the dismissal of their Ohio Supreme Court mandamus action by filing an application under Ohio Supreme Court Rule of Practice 4.05. Plaintiffs then filed a complaint for declaratory judgment and injunctive relief in this Common Pleas Court on September 2, 2022, as State Defendants argued they should. Nonetheless, at hearing the State Defendants objected. The State Defendants argued that case could not be considered in the court where they said it should be presented on the theories they argued were proper because the Ohio Supreme Court had not yet put on an entry granting the dismissal they requested and to which the plaintiffs had consented. Then on September 12, 2022, the Ohio Supreme Court granted the application for dismissal.[6]

The Court holds that it would have jurisdiction under the Ohio Constitution and pursuant to the jurisdictional priority rule even if the Ohio Supreme Court had not dismissed the mandamus action. *See State ex rel. Hasselbach v. Sandusky County Bd. of Elections*, 157 Ohio St.3d 433, 2019-Ohio-3751, 137 N.E.3d 1128, ¶9 ("[I]f the second case is not for the same cause of action,

---

[5] Publicly available at https://www.supremecourt.ohio.gov/rod/docs/pdf/0/2022/2022-ohio-2317.pdf.
[6] *See* September 12, 2022 Supreme Court Case Announcement #2, 2022-Ohio-3714, publicly available at https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2022/0803.

nor between the same parties, the former suit will not prevent the latter"). While the parties and basic subject matter in both cases are the same, the claims advanced and the relief sought differ. Plaintiffs sought mandamus relief before the Ohio Supreme Court, whereas this case is an action for declaratory judgment and injunctive relief. The standard applicable to plaintiffs' claims in this case is quite different from the standard applicable to a mandamus action and does not involve any question about the nature of the relief sought or whether it is available from the court in which the claims are pending. Thus, this Court has jurisdiction to adjudicate plaintiffs' claims regardless.

**B.  Plaintiffs Have Demonstrated that a Temporary Restraining Order Enjoining The Enforcement Of S.B. 23 Is Appropriate.**

When ruling on a motion for temporary restraining order, the Court must consider whether: 1) the movant has shown a substantial likelihood of success on the merits; 2) the movant will suffer an irreparable injury; 3) a temporary restraining order could harm third parties; and 4) the interest of the public will be served by granting a temporary restraining order. *See City of Cincinnati v. City of Harrison*, 1st Dist. Hamilton No. C-090702, 2010-Ohio-3430, ¶8.

**1.  Plaintiffs are substantially likely to prevail on the merits.**

The State Defendants take the position that plaintiffs' motion "turns entirely on the question of whether they are likely to succeed on the merits." State Defendants Memo. Opp. p. 7. The State Defendants make two arguments in support of their position: 1) plaintiffs, as abortion providers rather than patients, lack standing to assert a claim that there is a right to abortion under the Ohio Constitution; and 2) there is no such right to abortion under the Ohio Constitution. *Id*. at 8.

**a) Plaintiffs have standing**.

Plaintiffs are five corporations that provide reproductive health services, including abortion services, both surgical and medication, at eight locations throughout Ohio and a licensed physician

who is the medical director of plaintiff Planned Parenthood Southwest Ohio Region, which provides reproductive health services including abortion. Plaintiffs allege that they and/or their providers are threatened with criminal penalties, loss of their medical licenses, civil forfeiture and civil suits for potential violations of S.B. 23. They sue on behalf of their staff, officers, agents and patients. Complaint ¶¶ 9-14.[7]

At the September 8, 2022 hearing, counsel for the State Defendants argued that, because none of the individual patients affected by S.B. 23 have brought their own actions challenging its application, the Act is functioning as intended by permitting abortions beyond six weeks under its limited exceptions. In other words, the absence of claims by patients somehow validates the statute. To the contrary, the State Defendants' argument in this regard demonstrates the propriety of third party standing in this case.

The affidavits presented by plaintiffs recount the stories of patients seeking abortion services who were turned away as a result of S.B. 23, often under some of the most difficult circumstances imaginable. Dr. Liner's affidavit tells the story of a 25-year-old who needed chemotherapy for recurrent cancer, but could not obtain chemotherapy after discovering she was pregnant. She sought an abortion but was found to be eight weeks pregnant. Her medical provider was unwilling to provide documentation to support an exception to S.B. 23, so her only choice other than foregoing chemotherapy was to travel out of state for medical care. Liner Aff. ¶ 14. Dr. Liner also recounts the story of a patient with a desired pregnancy who discovered severe fetal anomalies in the second trimester (when most fetal anomalies are discovered). This patient, too, was forced to go out of state for medical care, thereby prolonging the pregnancy. Id. ¶ 5.

---

[7] The complaint is properly verified by the Affidavit of Dr. Sharon Liner. In support of their motion for a temporary restraining order, plaintiffs have also submitted the affidavits of Dr. Liner, David Burkons, M.D., Aeran Trick, LPN, Allegra Pierce, Dr. Adarsh Krishen, and W.M. Martin Haskell, M.D. These affidavits compile and recount the effect that S.B. 23 has had on abortion providers and patients.

Dr. Burkons describes a high-school-aged patient who ended up in the hospital on suicide watch after being turned away because of S.B. 23.  Burkons Aff. ¶ 3.  Dr. Burkons also explains that patients with ectopic pregnancies have reported being turned away from emergency rooms due to S.B. 23, with one case resulting in fallopian tube rupture requiring surgery rather than typical medical management.  Id. ¶ 17.  The providers in those cases were apparently concerned that intrauterine pregnancies might also be present and feared prosecution under S.B. 23 if they aborted such a pregnancy when intending to treat an ectopic pregnancy, which is specifically excepted from S.B. 23.

Aeran Trick, an LPN at Women's Med Center of Dayton, describes numerous patients who have experienced enormous distress – financial, emotional and employment-related – as a result of S.B. 23 and the need to arrange costly emergency travel to obtain medical care.  Ms. Trick describes a 37 year-old patient with stage III melanoma whose oncologist would not treat her until her pregnancy was terminated.  The patient was denied an abortion due to S.B. 23 and became inconsolable.  Trick Aff. ¶ 6.

These stories continue at great length throughout the affidavits presented by plaintiffs.  The argument advanced by counsel for the State Defendants that the failure of any of these pregnant women to come forward with claims somehow indicates that they are not aggrieved by the law is dubious at best.  The State Defendants contend that "[a]n aggrieved patient could file suit . . . [n]othing stops any would-be patient from doing so."  State Defendants' Memo. Opp. p. 29.  As detailed in the affidavits, patients denied abortion services because of S.B. 23 are often under great distress from, for example, not being able to obtain treatment for life threatening cancers, or from fearing job loss and an inability to provide for their families because they must arrange travel out of state on short notice, often without the resources to do so.  It is not surprising that individuals

dealing with such situations do not hire lawyers and file lawsuits, but rather focus their energies on their health, keeping their jobs, caring for their families or keeping up with their educational studies. Moreover, the circumstances that lead women to seek an abortion can be intensely private. It is understandable that many women would be reluctant to place the deeply personal details of their experiences in the public record, even under a pseudonym, in such a highly charged and divisive matter.

Decades of precedent have confirmed and other judges on this Court have held that "[t]hird party standing is available in circumstances like these." *See Planned Parenthood Southwest Ohio Region v. Ohio Dept. of Health,* Hamilton C.P. No. A 2101148 (Apr. 19, 2021) at 5. Ohio law clearly recognizes that there may be circumstances where third-party standing is appropriate. *See Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 49 (citations omitted); *City of E. Liverpool v. Columbiana County Budget Comm'n*, 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, ¶ 25; *Cincinnati City Sch. Dist. V. State Bd. of Educ.*, 113 Ohio App.3d 305, 314, 680 N.E.2d 1061 (10th Dist.1996); *Akron Ctr. for Reproductive Health v. N. Coast Christian Community*, 9th Dist. Summit No. 12414, 1986 Ohio App. LEXIS 7534, *7 (July 9, 1986). This is such a case. The Court is satisfied that the evidence presented at this stage of the proceedings sufficiently establishes circumstances that would hinder aggrieved patients from advancing the claims presented by plaintiffs on their behalf such that third party standing is appropriate.

### b) There is a fundamental right to abortion under the Ohio Constitution.

For nearly 50 years it was settled law in the United States that there was a federal constitutional right to abortion. As a result of this long-established federal right, S.B. 23 was enjoined by a federal court from its effective date until the U.S. Supreme Court's reversal of *Roe*

in *Dobbs v. Jackson*, 142 S.Ct. 2228, 213 L.Ed.2d 545 (2022). Given this history and the supremacy of federal law in this area, it is not surprising that there is limited caselaw directly addressing whether the Ohio Constitution and its unique language protect the right to abortion.

Neither party has provided the Court with any authority addressing this issue since the U.S. Supreme Court's decision in *Dobbs*, and the Court has been unable to locate any. However, in 1993 Ohio's Tenth District Court of Appeals expressly recognized in the abortion context that "the Ohio Constitution confers greater rights than are conferred by the United States Constitution." *Preterm Cleveland v. Voinovich*, 89 Ohio App.3d 684, 691, 627 N.E.2d 570, 575 (10th Dist.1993).[8] The Tenth District concluded that:

> In light of the broad scope of "liberty" as used in the Ohio Constitution, it would seem almost axiomatic that the right of a woman to choose whether to bear a child is a liberty within the constitutional protection. This necessarily includes the right of a woman to choose to have an abortion so long as there is no valid and constitutional statute restricting or limiting that right.

*Id.* at 691-692.[9] The Tenth District then considered whether a statute requiring physicians to provide patients seeking an abortion with information about the procedure, gestational age of the fetus and medical risks of carrying the pregnancy to term at least 24 hours prior to the procedure imposed an undue burden on the constitutional right to an abortion. Because *Roe* and *Planned*

___

[8] Indeed, the Tenth District found it to be "obvious" that the Ohio Constitution can and does in several contexts "confer greater rights upon individuals (or greater restrictions upon the legislative power of the General Assembly) than are imposed by the United States Constitution." *Id.* at 689. This is consistent with established Ohio authority in numerous other contexts. *See e.g. Humphrey v. Lane*, 89 Ohio St.3d 62, 67, 728 N.E.2d 1039 (2000); *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 21; *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 48; *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 7; *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶¶ 23-27; *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280-82, 649 N.E.2d 182 (1995); *Simpkins v. Grace Brethren Church of Del.*, 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 61; *Arnold v. City of Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus.
[9] The State Defendants' reliance on *Williams v. Marian Rapid Transit*, 152 Ohio St. 114, 87 N.E.2d 334 (1949) for the proposition that there is no right to abortion in the Ohio Constitution is misplaced. That case involved whether a child injured in an accident in utero could recover for personal those injuries and their effects after birth. Abortion was not at issue in any way, and the decision does nothing to inform the question of whether there is a right to abortion under the Ohio Constitution.

*Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) were then the law of

the land, the court analyzed the restrictions under those precedents, but specifically noted that:

> This does not mean, as intimated in the dissenting and concurring opinion, that we
> are required to follow the undue-burden test of [*Casey*] to the Ohio Constitution,
> but only that we are not free to find constitutional a statute that violates the United
> States Constitution as interpreted by [*Casey*] on the basis that the Ohio Constitution
> is not violated, *but are free to find a statute to violate the Ohio Constitution, even
> though it does not violate the United States Constitution.*

*Id.* at 695, n. 9 (emphasis added).  With the U.S. Supreme Court's reversal of *Roe*, this is precisely

the situation in which the Court finds itself today – S.B. 23 does not violate the U.S. Constitution

as recently interpreted in the *Dobbs* decision, but it may violate the Ohio Constitution.  So far as

this Court can tell, no Ohio court has directly addressed this issue, so this Court will.

Article I Section 16 of the Ohio Constitution (the "Due Course of Law Clause") provides
that:

> All courts shall be open, and every person, for an injury done him in his land, goods,
> *person*, or reputation, shall have a remedy by due course of law, and shall have
> justice administered without denial or delay.  Suits may be brought against the state,
> in such courts and in such manner, as may be provided by law.

(Emphasis added).  Well-established Ohio law holds that this provision provides substantive and

procedural due process rights.  *See Stolz v. J & B Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-

5088, 122 N.E.3d 1228, ¶ 13 (citations omitted).  Substantive due process jurisprudence provides

that governmental action that limits the exercise of a fundamental constitutional right is subject to

the highest level of judicial scrutiny.  *See Sorrell v. Thevenir*, 69 Ohio St. 3d 415, 423, 633 N.E.2d

504 (1994).

No great stretch is required to find that Ohio law recognizes a fundamental right to privacy,

procreation, bodily integrity and freedom of choice in health care decision making.  In 2011, the

Ohio Constitution was amended by popular referendum to adopt the Health Care Freedom

Amendment (Article I, Section 21) ("HCFA"). The plain language of subsections B and C of the HCFA is simple and clear:

> (B) No federal, state, or local law or rule shall prohibit the purchase or sale of health care or health insurance.
>
> (C) No federal, state, or local law or rule shall impose a penalty or fine for the sale or purchase of health care or health insurance.

The State Defendants argue that the HCFA was intended by its drafters to provide a legal basis for Ohio and Ohioans to undermine or avoid the federal Affordable Care Act, not to outlaw health care regulation in Ohio. They point to the language in subsection (D) providing in pertinent part that "[t]his section does not . . . affect any laws calculated to deter fraud *or punish wrongdoing* in the health care industry" to suggest that the Amendment does not render health care regulations unconstitutional. But this misses the point – as a result of the HCFA, the Ohio Constitution contains a direct recognition of the fundamental nature of the right to freedom in health care decisions.

The fact that no one has yet challenged any existing health care regulations under the HCFA does not negate the import of its plain language.[10] The HCFA does not define "health care," but the use of the disjunctive "or" renders the term separate and distinct from the purported target of the amendment – health insurance. Abortion, whether procedural or medication, clearly constitutes health care within the ordinary meaning of that term. Moreover, the drafters could

---

[10] A mandamus action was brought in the Ohio Supreme Court under the HCFA by several individuals who contended that pandemic-related mask requirements and other protective measures violated the HCFA and sought an order from the Court directing the Ohio Senate and its 33 members to "defend [the HCFA] against any passage of legislation which may possibly conflate, obfuscate or otherwise subvert the clarity of rights conveyed by [the HCFA]" and to "order the Ohio Attorney General to halt the operation of any public or private entity that is participating in the alleged constitutional violations within the state of Ohio." *State ex rel. Johnson v. Ohio State Senate*, 2022-Ohio-1912, 2022 Ohio LEXIS 1144, 2022 WL 2056247, ¶ 2. The Court dismissed the petition for lack of jurisdiction and, therefore, did not address the merits of petitioners' claims under the HCFA. *Id.* ¶ 13.

have excluded existing and future regulation of the health care profession, or even abortion specifically, but they did not.[11]  Rather, the exception in subsection D is limited to fraud and the nebulous term, "wrongdoing," without providing any definitional or interpretive guidance. Wrongdoing is defined as "illegal or improper conduct." *Black's Law Dictionary* 1932 (11th Ed.2019).  At the time of the HCFA's adoption in 2011, abortion had been constitutionally protected as the law of the land for nearly 40 years, and could hardly be considered "wrongdoing." Finally, S.B. 23 was adopted years after the HCFA such that the General Assembly was presumably aware of its provisions recognizing a fundamental constitutional right to choice in healthcare decisions.

This Court cannot simply ignore part of Ohio's Constitution because the Ohio Attorney General asserts it is not germane to this case.  Nor must the Court defer to the General Assembly on questions of law such as those presented in this case, for "'[i]t is emphatically the province and duty of the judicial department to say what the law is.' Our function here is to determine whether the act transcends the limits of legislative power." *Adams v. DeWine*, __ Ohio St. 3d __, 2022-Ohio-89, ¶ 28 (rejecting Congressional district plan adopted by General Assembly in contravention of Ohio Constitutional amendment enacted by popular referendum); *citing Marbury v. Madison*, 5 U.S. 137, 177, 2 L. Ed. 60 (1803).

The HCFA represents an express constitutional acknowledgement of the fundamental nature of the right to freedom and privacy in health care decision making.  Read together with other applicable sections of the Ohio Constitution, a clear and consistent recognition the

---

[11] Proponents of the HCFA argued that its passage would not "further overcrowd our prisons with those who pursue alternative medicine" and that under its provisions the state could not "punish the purchase or sale of cutting-edge services, procedures, and coverage."  1851 Center for Constitutional Law, "Passage of Issue 3 will protect liberty, restrain health care costs, and preserve health care choice and privacy," September 29, 2011, available at https://www.healthpolicyohio.org/tools/issue-3-the-health-care-freedom-amendment/.

fundamental nature of this right under Ohio law emerges.  *See e.g. Planned Parenthood Southwest Ohio Region v. Ohio Dept. of Health*, Hamilton C.P. No. A 2100870, p. 6 (Jan. 31, 2022) ("Deprivation of reproductive autonomy falls squarely within the meaning of an injury done to one's person under the Ohio Constitution"), *citing Stone v. City of Stow*, 64 Ohio St. 3d 156, 160-163, 593 N.E.2d 294 (1992).[12]  Accordingly, this Court recognizes a fundamental right to abortion under Ohio's Constitution.

Based on the limited record available to the Court on plaintiffs' motion for a temporary restraining order, the Court finds that S.B. 23 fails the strict scrutiny analysis applicable to enactments that impinge upon fundamental constitutional rights.  S.B. 23 is not narrowly tailored to serve a compelling state interest.  The record establishes that S.B. 23 effectively bans all or virtually all abortions after six weeks LMP.  Plaintiffs' affidavits recount the stories of patient after patient unable to obtain abortion services after six weeks – when fetal embryonic cardiac activity typically begins – even when the exception for "a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman" should logically apply.[13]

---

[12] *See also Steele v. Hamilton County Community Mental Health Bd.*, 90 Ohio St.3d 176, 180, 736 N.E.2d 10 (2000) ("personal security, bodily integrity, and autonomy are cherished liberties"); *Preterm-Cleveland v. Voinovich*, 89 Ohio App. 3d 684, 712, 627 N.E.2d 570 (10th Dist. July 27, 1993) (Petree, J. concurring in part and dissenting in part) ("Manifestly, a fundamental right to bodily integrity must be acknowledged as a necessary precondition to the enjoyment of our express guarantees of freedom in the Ohio Bill of Rights"); *Biddle v. Warren General Hospital*, 86 Ohio St.3d 395, 399-402, 1999-Ohio-115, 715 N.E.2d 518 (1999) (recognizing fundamental privacy interest in physician-patient relationship sufficient to support creation of entirely new species of tort claim for disclosure of confidential medical information).

[13] For example, the 25-year-old woman who had to miss chemotherapy appointments after discovering she was pregnant and was denied an abortion (Liner Aff. ¶ 14); the woman with an ectopic pregnancy who required surgery for a rupture suffered after being denied an abortion in an emergency room (Burkons Aff. ¶ 17); the woman with stage III melanoma who was denied an abortion in Ohio and was compelled to travel to Indiana for such care (Trick Aff. ¶ 6); the 39-year-old woman who was 13 weeks pregnant and had no amniotic fluid such that the pregnancy was not viable but whose physician would not perform an abortion because of S.B. 23 and instructed her to call the office if she developed a fever (Trick Aff. ¶ 13); the 16-year-old who was sexually assaulted by a family member and became pregnant who had to travel to Indiana for an abortion; and the minor victim of sexual assault who had to wait three weeks for an appointment for an abortion in Michigan because S.B. 23 prevented her from receiving care in Ohio (Krishen Aff. ¶ 21).

This is likely because S.B. 23 requires physicians who perform abortions after six weeks to create a document to be placed in the patient's medical records which must:

> Declare . . . that the medical procedure is necessary, to the best of the physician's reasonable medical judgment, to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman [and] specify the pregnant woman's medical condition that the medical procedure is asserted to address and the medical rationale for the physician's conclusion that the medical procedure is necessary to prevent the death of the pregnant woman or to prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman.

R.C. 2919.195(B)

Should the physician's medical judgment of "substantial risk" or "irreversible impairment" later be second guessed, he or she may be subject to prosecution for a fifth-degree felony (punishable by up to one year in prison), loss of licensure, civil forfeiture and civil liability. Thus, S.B. 23 potentially criminalizes rather than merely regulates the practice of medicine such that it should come as no surprise to anyone that many or most physicians are unwilling to perform abortions after six weeks even where an exception should apply.[14]

On the record before the Court on plaintiffs' motion for temporary restraining order, S.B. 23 is in effect a ban on abortion after six weeks LMP. The Court finds that such a ban is not narrowly tailored to serve a compelling state interest, and it therefore violates the Ohio Constitution.

        **c)**        **S.B. 23 discriminates against pregnant women in violation of the Ohio Constitution's Equal Protection and Benefit Clause.**

---

[14] The State Defendants declined to present any evidence on this point in opposition to plaintiffs' motion for temporary restraining order such that the record before the Court is limited to the verified complaint and its attachments and the supporting affidavits submitted by plaintiffs. The State Defendants will be afforded an opportunity to challenge plaintiffs' evidence, submit evidence of their own and create a complete evidentiary record at the preliminary injunction hearing.

Article I, Section 2 of the Ohio Constitution – the Equal Protection and Benefit Clause –

provides as follows:

> All political power is inherent in the people. Government is instituted for their
> equal protection and benefit, and they have the right to alter, reform, or abolish
> the same, whenever they may deem it necessary; and no special privileges or
> immunities shall ever be granted, that may not be altered, revoked, or repealed by
> the general assembly."

Ohio Constitution, Article I, Section 2.

Although the Ohio Supreme Court often follows federal decisions in the equal protection

area, there is no mandate to that effect. *See Preterm-Cleveland v. Voinovich* at 713 (Petree, J.

concurring in part and dissenting in part). The weight of recent authority recognizes that Ohio's

Equal Protection and Benefit Clause confers broader protection than its federal analogue. *See*

*State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 23; *State v. Noling*, 149

Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, ¶ 11; *League of Women Voters of Ohio v. Ohio*

*Redistricting Comm'n*, Slip Opinion No. 2022-Ohio-65, ¶ 151 (Brunner, J. concurring).

Nonetheless, the State Defendants contend that S.B. 23 is not directed at women, but rather treats

everyone the same.

In this Court's opinion, it would be intellectually incoherent to recognize a fundamental

right to privacy, procreation, bodily integrity and freedom of choice in health care decision making,

but hold that a law that limits only pregnant women in the exercise of such rights by effectively

outlawing abortion does not discriminate against them based on the rationale that there is no one

else who seeks or needs abortion services. But this is precisely what the State Defendants argue.

This argument fundamentally, and perhaps purposely, mis-frames the issue and thereby the scope

of protection afforded by the constitutional right at issue. *See Obergefell v. Hodges*, 576 U.S. 644,

671, 135 S.Ct. 2584, 2602, 192 L.Ed.2d 609 (2015) ("It is inconsistent with the approach this Court

17

has used in discussing other fundamental rights, including marriage and intimacy.  *Loving* did not

ask about a 'right to interracial marriage'; *Turner* did not ask about a 'right of inmates to marry';

and *Zablocki* did not ask about a 'right of fathers with unpaid child support duties to marry.' Rather

each case asked about the right to marry in its comprehensive sense . . .").[15]  Likewise in this case,

women, and particularly pregnant women, are denied equal protection of the law with respect to

the fundamental right to privacy, procreation, bodily integrity and freedom of choice in health care

decision making by S.B. 23, which effectively denies them, and only them, access to a well-

established, safe and potentially life-saving health care.

Thus, because it discriminates against women (and specifically pregnant women), with

respect to the protection of a fundamental constitutional right, S.B. 23 is again subject to strict

scrutiny analysis.  *See Adamsky v. Buckeye Local Sch. Dist.*, 73 Ohio St.3d 360, 362, 1995-Ohio-

298, 653 N.E.2d 212 (observing that a suspect class has traditionally been "one involving race,

national origin, religion, or sex").  A statute subject to strict scrutiny is constitutional only if it

"furthers a compelling governmental interest and the state's chosen means are narrowly tailored

to advance that interest."  *State v. Weber*, 163 Ohio St.3d 125, 2020-Ohio-6832, 168 N.E.3d 468,

¶ 17.  Under strict scrutiny "the state must assume the heavy burden of proving that the legislation

is constitutional."  *Beatty v. Akron City Hospital*, 67 Ohio St.2d 483, 492, 424 N.E.2d 586 (1981).

As discussed above, S.B. 23 fails to survive strict scrutiny.  The record demonstrates that

S.B. 23 effectively bars virtually all abortions after six weeks LMP.  As such it is clearly not

narrowly tailored to serve – indeed, it seems incompatible with -- one of the stated purposes of

---

[15] The State Defendants argued at hearing that only rights "deeply rooted in the nation or state's history or tradition" should be recognized (Tr. p. 41) under *Washington v. Glucksberg*, 521 U.S. 702 (1997).  This argument was rejected in *Obergefell*, 576 U.S. at 671 ("If rights were defined by who exercised them in the past, then received practices could serve as their own continued justification and new groups could not invoke rights once denied.  This Court rejected that approach, both with respect to the right to marry and the rights of gays and lesbians") (citations omitted).

S.B. 23 (i.e., to protect women's health). The record is replete with evidence of women who have suffered and whose health has been placed in jeopardy as a result of S.B. 23. By way of yet another example, plaintiffs refer to the widely-publicized case of a ten-year-old rape victim who was six weeks and three days pregnant when she sought an abortion in Ohio.[16] This child was a victim of crime who should have had access to clearly needed health care in the form of abortion in her community. However, she was denied under S.B. 23 and forced to travel to Indiana.[17] Very soon such care will be unavailable in Indiana. It is already unavailable in Kentucky.[18] Thus, S.B. 23 clearly discriminates against pregnant women and places an enormous burden on them to secure safe and effective health care such that it violates Ohio's Equal Protection and Benefit Clause and is therefore unconstitutional.

### 2. Plaintiffs and their patients will suffer irreparable harm.

A finding that a constitutional right has been threatened or impaired mandates a finding of irreparable injury. *See Magda v. Ohio Elections Comm'n*, 2016-Ohio-5043, 58 N.E.3d 1188, ¶ 38 (10th Dist.); *citing Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.2001); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). *See also Ohio Democratic Party v. LaRose*,

---

[16]Vakil, Caroline, *10-year-old-girl denied abortion in Ohio*, (July 2, 2022), publicly available at https://thehill.com/policy/healthcare/3544588-10-year-old-girl-denied-abortion-in-ohio/ (accessed September 14, 2022).

[17] S.B. 23's denial of abortion after the detection of fetal cardiac activity is reminiscent of the law in Ireland prior to the country's popular referendum legalizing abortion in 2018. In a well-known case that spurred the referendum movement, a pregnant woman died of sepsis when a hospital refused to perform an abortion even though she was in the process of miscarrying because a fetal heartbeat could still be detected. https://www.usnews.com/news/best-countries/articles/2022-06-27/the-story-behind-irelands-abortion-ban-and-its-reversal

[18] The State Defendants do not directly address the reality of how S.B. 23 has operated, preferring instead to criticize plaintiffs' affidavits as second-hand anecdotes of no evidentiary value. (Tr. 44-45). However, on the record before the Court at this time it does not appear that these stories are mere aberrations. As noted above, the parties will have an opportunity to make a complete evidentiary record at the preliminary injunction hearing.

2020-Ohio-4664, 159 N.E.3d 852, ¶ 61 (irreparable harm presumed where a plaintiff demonstrates a threat or impairment to the constitutional right to vote).

The record provides ample facts reviewed above that support a finding of irreparable harm. In addition to those stories, consider the high school student whose pregnancy caused constant vomiting who ended up in the hospital on suicide watch after learning she could not obtain an abortion in Ohio.  Burkons Aff. ¶ 9.  Dr. Burkons reports that one patient inquired, "What do you want me to do . . . throw myself down the steps?"  Burkons Aff. ¶ 10.  Dr. Liner describes another woman who said she would terminate her pregnancy by drinking bleach, and reports that multiple women threatened to commit suicide after being denied abortion care.  Liner Aff. ¶ 11.  Plaintiffs have clearly satisfied the irreparable harm requirement.

### 3. Other factors weigh in favor of temporary injunctive relief.

There will be no harm to third parties if S.B. 23 is enjoined.  In the absence of S.B. 23, plaintiffs may resume providing abortion services subject to the pre-existing limitations under Ohio law, much as they had for nearly 50 years. [19]  Likewise, the public interest is served in numerous ways by enjoining S.B. 23.  The public interest is clearly served when Ohioans needing health care are able to obtain it safely in their communities, without undue delay, stress, cost or travel.  Women in need will be able to obtain safe and effective care from physicians exercising their medical judgment without fear of criminal prosecution.  Suicides and unnecessary injuries and deaths of pregnant women who seeking abortion services from providers other than licensed

---

[19] *See e.g.* R.C. 2919.201 (generally prohibiting abortion when the probable post-fertilization age is 20 weeks or greater); R.C. 2919.10 (prohibiting abortion where the provider knows the pregnant woman is seeking the procedure because of a test result indicating Down Syndrome in the unborn child); R.C. 2919.15 (generally prohibiting "dismemberment" abortions); R.C. 2919.17 (generally prohibiting abortion after fetal viability).

professionals will be prevented. All of these are in the public interest, which is clearly advanced by suspending enforcement of S.B. 23.

      **C.**       **The Relief Granted Is Limited To Enjoining Enforcement of S.B. 23.**

The Court's Order today is limited to enjoining the enforcement of S.B. 23. Other provisions of Ohio law respecting abortion are unaffected by this order. Nor does this Court's Order affect any other orders respecting abortion in Ohio in effect from any other court of competent jurisdiction. Enforcement of S.B. 23 is enjoined, nothing more.

**IV.**       **Conclusion**

For the foregoing reasons, the Court hereby orders that defendants, their employees, agents, and successors in office, and all those acting in concert with them, are hereby temporarily restrained and enjoined from enforcing S.B. 23 for the next 14 days, and from later taking any enforcement action premised on a violation of S.B. 23 that occurred while such relief is in effect. Because the relief granted to plaintiffs will not result in monetary loss to defendants, the Court hereby waives the bond requirement of Civ.R. 65(C).


      So ordered.



Date: September 14, 2022                      */s/ Christian A. Jenkins*
                                         Common Pleas Court Judge