IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **PLANNED PARENTHOOD** : | |
| **SOUTHWEST OHIO REGION,** *et al.*, : | |
| : | |
| *Plaintiffs*, : | Case No. 1:15-cv-568 |
| : | |
| v. : | **JUDGE MICHAEL R. BARRETT** |
| : | |
| **BRUCE T. VANDERHOFF, M.D.** : | |
| In his official capacity as Director of the : | |
| Ohio Department of Health | |
| : | |
| *Defendant*. : | |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

  The preliminary injunction order enjoining enforcement of Ohio's Human Rights and Heartbeat Protection Act ("Heartbeat Act") has been appealed, and the issue is far from settled. Though Plaintiffs may continue to perform surgical abortions until fetal viability under that order, the Heartbeat Act remains a valid reflection of the will of Ohioans as enacted into law through their elected representatives. But even while the future of abortion in Ohio is an open question subject to ongoing litigation, there remains no question of material fact in this case that should prevent this Court from granting Director Vanderhoff ("the Director") judgment as a matter of law.

  Plaintiffs have failed to demonstrate that they have a property interest created by Ohio law. Plaintiffs say that they have been denied "fair notice" because "announcing new variance requirements after the Director has denied the application—requiring immediate shutdown of Plaintiffs businesses—fails to provide any notice whatsoever." Pls' Response, DE 192 at PageID 3830. But despite having submitted several exhibits with their Motion for Summary Judgment,

1

Plaintiffs did not cite any these exhibits to substantiate their allegations. Plaintiffs again assert that the Director "infringes on Plaintiffs' property interests without any opportunity to challenge the substance of their deprivation, before or after it occurs," ignoring entirely the procedures afforded to them under law. *See* Ohio Rev. Code §3702.309; Ohio Rev. Code §3702.32(D)(2); *see also* Director's MSJ, DE 187 at PageID 3612-15.

Most tellingly, however, is Plaintiffs assertion that "*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), has no impact on Plaintiffs' procedural due process claims." DE 192 at PageID 3830. While *Dobbs* overruled the substantive due process right to abortion, it also undermined Plaintiffs' claims to property interests in their abortion ASF licenses and abortion businesses. *Dobbs* recognized that the Ohio General Assembly may regulate or prohibit abortion without offending the Constitution, and further acknowledged Ohio's legitimate interests in the "preservation of prenatal life at all stages of development; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, and disability." *Dobbs,* 142 S. Ct. at 2284 (internal citations omitted). Plaintiffs' failure to grapple with these new realities only underscores the inability to prove their entitlement to judgment in this case.

Because Plaintiffs have not carried their burden, they cannot prevail here. Thus, this Court should grant the Director judgment as a matter of law.

## ARGUMENT

As detailed in his Motion for Summary Judgment, the Director is entitled to judgment as a matter of law on each of Plaintiffs' three claims. Plaintiffs have not shown that they have a property

interest protected by the Due Process Clause, nor have they established that they suffered a constitutional deprivation without receiving due process of law. For these reasons, Plaintiffs are not entitled to judgment as a matter of law, and their motion should be denied.

**I.     Plaintiffs Have Failed to Demonstrate A Property Interest in Their ASF Licenses, a Written Transfer Agreement, or a Variance from the Law.**

To succeed here, Plaintiffs must establish that "(1) [they have] a life, liberty, or property interest protected by the Due Process Clause; (2) [they were] deprived of that protected interest; and (3) the State did not afford [them] adequate procedural rights prior to depriving [them] of the property interest." *Planned Parenthood SW OH Region v. Hodges*, 138 F. Supp. 3d 948, 954 (S.D. Ohio 2015). It is then Plaintiffs burden to show that they have a protected property interest which Ohio deprived them of without an adequate opportunity to be heard. But because Plaintiffs have failed to meet their burden, they can suffer no deprivation, so their due process claims fail.

Plaintiffs claim that "*Baird*, moreover, is consistent with a long line of Ohio state court cases recognizing that there is a constitutionally protected property interest in existing business licenses and in the continued operation of one's business, a matter of state law." DE 192 at PageID 3835. But the cases Plaintiffs cite do not involve property interests conferred by Ohio law or its Constitution. In *Asher v. City of Cincinnati*, the state court, in deciding a § 1983 claim, found that the plaintiff had "a constitutionally protected property interest in running his business free from unreasonable and arbitrary interference from the government **under the Due Process Clause**" of the Federal Constitution. 122 Ohio App.3d 126, 136, 701 N.E.2d 400 (1st Dist.1997). Every additional case cited in the Plaintiffs' motion invokes rights guaranteed by the Federal Due Process Clause. *See State v. Cooper*, 71 Ohio App.3d 471, 474, 594 N.E.2d 713 (4th Dist.1991) ("***The Fifth and Fourteenth Amendments to the United States Constitution*** state that no person shall be

3

deprived of life, liberty, or property without due process of law. '[T]he right to engage in a lawful business is a property right and * * * carries with it the right to appeal to the public for patronage, through bills, circulars, cards or other advertising matter.'"); *In re Thornburg*, 55 Ohio App. 229, 232, 9 N.E.2d 516 (1936) (A state's police power "is limited and confined by the [*federal*] *constitutional provision* that the citizen shall not thereby unreasonably, arbitrarily, or without due process of law, be deprived of his life, liberty or property. The constitutional right of the citizen cannot be abridged or destroyed under the guise of police regulation.").

Similarly, in *O'Daniel v. Ohio State Racing Com.,* 37 Ohio St.2d 87, 307 N.E.2d 529 (1974), the Ohio Supreme Court did not find that suspension of the horse trainer's license deprives the licensee of a protected property interest as Plaintiffs assert. DE 192 at PageID 3835. Instead, that Court rejected the plaintiff's claim that the suspension of his license was "without procedural due process required by the **Fourteenth Amendment to the United States Constitution**."[1] *Id.* at 93. In *Maranatha Group Homes, Inc. v. Ohio Youth Comm.*, the 6th district court noted in dicta that **the federal courts** have held that "[w]hen a state has granted an individual or corporation permission or a license to do business or to practice a profession, that individual or corporation has a property interest in its continuation," 6th Dist. Fulton C.A. No. F-79-18, 1980 Ohio App. LEXIS 9871, at *10 (June 27, 1980) (citing *In re Ruffalo* (1968), 390 U.S. 544); (*Dent v. State of West Virginia* (1889), 129 U.S. 114, 32 L. Ed. 623.)) And *State v. Hochhausler* acknowledged that "[i]t is well settled that the **Due Process Clause** applies to the suspension or revocation of a driver's license." 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996).

---

[1] Nowhere do the words "property interest" appear in the text of the opinion. *O'Daniel v. Ohio State Racing Com.*, 37 Ohio St.2d 87, 307 N.E.2d 529 (1974).

Plaintiffs failed to provide any authority that Ohio courts have recognized a property interest in a license or in the continued operation of an abortion business under Ohio law. Such a showing is necessary because "[a] property interest exists when a person has a 'legitimate claim of entitlement' created by substantive limits on the state discretion to deny a right or privilege enshrined in state law." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). And even though *Baird* did find a protected property interest in the continued operation of an existing abortion ASF, that operation was required and protected by federal, not Ohio, law. *See Roe v. Wade,* 410 U.S. 113 (1973). Ohio law's WTA Requirement "does not create a property right subject to traditional due process." *WCI, Inc. v. Ohio Liquor Control Comm'n,* 116 Ohio St.3d 547, 2008-Ohio-88, ¶ 24, (citing *State ex rel. Zugravu v. O'Brien*, 130 Ohio St. 23, 27 (1935). And it is beyond question that Plaintiffs do not have a property interest in a WTA or a variance.

But even more egregiously, Plaintiffs attempt to conflate the Variance Provision—that allows an ASF to obtain a license even when it fails to acquire a WTA—with an ASF license. As an initial matter, because Plaintiffs chose to challenge the variance scheme in Ohio state court and not here, they cannot ask this Court to review the legality of that scheme.[2] But more importantly, a WTA is just one requirement of many necessary to obtain an ASF license. *See generally* Ohio Rev. Code 3702.30. The claim that "Plaintiffs' ability to continue operating their businesses depends on the unreviewable and standardless variance decision" is not simply "exactly backwards" but

---

[2] Plaintiffs claim that "the denial of a variance is equivalent to the denial of a license," but that is not true. To qualify for an ASF license, Plaintiffs must have a WTA with a local hospital to ensure for the safe transfer of patients in the event of an emergency. It is only when an ASF fails to obtain a WTA that a variance may be applied for, but such application is discretionary. If the denial of a variance from the WTA requirement—the *only* requirement at issue in this litigation—were equivalent to the denial of a license, then Plaintiffs, who amended the complaint for the third time contemporaneously with filing their state court litigation to the variance scheme, should have challenged the variance scheme here.

5

also demonstrably false: an ASF is *required* to have a WTA to obtain and maintain an ASF license. Ohio Rev. Code §3702.303(A) (an ASF "*shall* have a written transfer agreement with a local hospital.") (emphasis added). A variance can be substituted for a WTA at the discretion of the Director, but only if an ASF cannot procure a WTA. The fact that the law allows for an exception to the WTA Requirement does not then convert that exception into a property interest subject to the strictures of due process merely because Plaintiffs have failed to procure a WTA—which every other ASF (including several abortion ASFs) in Ohio acquire each and every year—and must now rely on to maintain their licenses.

Because Plaintiffs do not have any property interests to support their due process claims, their motion should be denied, and the Director's Motion for Summary Judgment should be granted.

II. **Plaintiffs Have Failed to Establish That They Have Been Deprived of Protected Property Interest Without Sufficient Procedural Due Process.**

A. **Plaintiffs "fair notice" procedural due process claim fails as a matter of law.**

As a matter of law based on undisputed facts, Plaintiffs have not established that the Director has violated any requirement of procedural due process by enforcing Ohio's Variance Provision. Plaintiffs attempt to camouflage their unfounded "fair notice" claim in exaggerated language—calling their position "well-established," "axiomatic," and "self-evident." DE 192 at PageID 3969-70. But Plaintiffs appear to forget that they must establish *three* separate elements to prove a procedural due process claim: (1) a protected constitutional interest; (2) deprivation of that protected interest; and (3) failure to provide adequate procedural due process as to the deprivation. *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F. Supp. 3d 948, 954 (S.D. Ohio 2015). And Plaintiffs have failed to establish any of these elements.

6

In his Motion for Summary Judgement, the Director made two primary arguments for why he is entitled to summary judgment on Plaintiffs' "fair notice" claim—to which Plaintiffs largely fail to respond. First, Plaintiffs do not have a protected property interest in receiving a variance from the WTA Requirement based on the Sixth Circuit's decision in *Baird* (the first element of a procedural due process claim). DE 187 at PageID 3606-08. Second, regardless of the above, the Director has not deprived Plaintiffs of any protected property interest without providing them procedural due process (the second and third elements of a procedural due process claim). *Id.* at PageID 3608-09.

> i. *Baird forecloses Plaintiffs' contention that they have a protected property interest in a variance from the WTA requirement.*

As discussed in the Director's Motion for Summary Judgement, the Sixth Circuit in *Baird* held that ODH's then-Director did not violate procedural due process by denying a clinic's request for a waiver of the WTA Requirement. *See Baird*, 438 F.3d at 615 (holding that the plaintiff clinic "had no property interest in the waiver" and thus "no right to due process before the waiver was denied"); DE 187 at PageID 3606-08. Without a property interest in a waiver or variance from the WTA Requirement, Plaintiffs cannot complain about the Director[3] updating requirements for obtaining a variance over the seven years in which this case has been pending. For this reason alone, the Court should grant summary judgment to the Director on Plaintiffs' "fair notice" claim.

> 2. *Regardless, the Director has not deprived Plaintiffs of any protected property interest without procedural due process.*

---

[3] Since 2015, there have been five different people that have acted as ODH Director: Richard Hodges, Lance Himes, Amy Acton, Stephanie McCloud, and the current Director Bruce Vanderhoff.

7

Even assuming for the sake of argument that Plaintiffs have a property interest in a variance from the WTA Requirement (they do not), they fail to establish that they have been deprived of a variance without proper notice. DE 192 at PageID 3969. Indeed, Plaintiffs do not contest that the Director notified Plaintiffs when he granted or denied variance requests. *See* DE 187 at PageID 3608 (citing Pls.' MSJ, DE 184-1 at PageID 3349, 3351).[4] For this additional reason, Plaintiffs' "fair notice" claim fails as a matter of law based on undisputed facts.[5]

Thus, this Court should grant the Director summary judgment on Plaintiffs' "fair notice" claim (Count III of Plaintiffs' Third Amended Complaint).

**B.   Plaintiffs' non-delegation claim fails as a matter of law.**

Tellingly, Plaintiffs' Response cites no case supporting the theory that Ohio's Public Hospital Limitation or WTA Requirement unconstitutionally delegates licensing authority to private parties. *See* DE 192 at PageID 3971-72. Plaintiffs' non-delegation theory is meritless. First, Plaintiffs cannot bring a *state-law* non-delegation claim based on Ohio's non-delegation doctrine in federal court, as that claim is barred by the Eleventh Amendment. *See McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012) (quoting *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-

---

[4] Although Plaintiffs claim that "compliance is impossible," DE 192 at PageID 3970, Plaintiffs cannot contest that they have been obtaining waivers or variances from the WTA Requirement for years. *See* Pls.' MSJ, DE 184-1 at PageID 3349-51.

[5] Plaintiffs incorrectly suggest that this Court determined at the preliminary-injunction stage that denials of variances violate procedural due process. DE 192 at PageID 3970. Far from it. The language Plaintiffs quote (at PageID 3970 of their Response) comes from this Court's analysis of the License-Suspension Provision (Ohio Rev. Code §3702.309), not the Variance Provision (Ohio Rev. Code §3702.304). *See* Preliminary-Injunction Order, DE 28, PageID 335 (discussing the License-Suspension Provision); *see also id.* at PageID 343 (preliminarily enjoining only the License-Suspension Provision).

8

21 (6th Cir. 2007)) ("The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment.").[6]

Assuming, *arguendo,* that Plaintiffs could bring such a non-delegation claim, neither the Public Hospital Limitation or WTA Requirement delegates to private hospitals or their physicians any authority whatsoever to suspend a clinic's license. The fact that Plaintiffs must submit to the Director a "complete variance application" with specific statutorily delineated requirements undercuts any theory that the General Assembly has somehow delegated unchecked regulatory authority to a private party. Ohio Rev. Code §3702.304. Plaintiffs are here challenging *denials* of variances as alleged procedural due process violations. And it is ODH's *Director*—not private hospitals or their physicians—who has absolute discretion in denying variances. Ohio Rev. Code §3702.304(A)(1); Ohio Rev. Code §3702.3011; DE 187 at PageID 3607-08. Whether considered separately or together, the Public Hospital Limitation and WTA Requirement do not unconstitutionally delegate regulatory authority to private parties.

Thus, this Court should grant the Director summary judgment on Plaintiffs' non-delegation claim (Count I of Plaintiffs' Third Amended Complaint).

### C. The License-Suspension Provision does not violate procedural due process.

Plaintiffs' contentions regarding the License-Suspension Provision are incorrect for two reasons. *See* DE 192 at PageID 3966-69. First, Plaintiffs contend that *Baird* dictates that the License-Suspension Provision violates procedural due process because it leads irrevocably to the immediate shut-down of a clinic. But that premise is false: as explained in the Director's Motion

---

[6] To the extent Plaintiffs are attempting to invoke the *federal* non-delegation doctrine, that would not help them to challenge state statutes. *See, e.g.*, *Mass. Bldg. Trades Council v. U.S. DOL (In re MCP No. 165)*, 21 F.4th 357, 387 (6th Cir. 2021) ("The Supreme Court has long recognized the power of Congress to delegate broad swaths of authority to executive agencies . . . and has ultimately concluded that extremely broad standards will pass review.").

for Summary Judgement, the License-Suspension Provision does not automatically "force Plaintiffs to shut down immediately." DE 192 at PageID 3967; *see* DE 187 at PageID 3612-15. Nor are Plaintiffs' situations like that of the clinic at issue in *Baird*. *See* DE 187 at PageID 3609.

Second, Plaintiffs suggest that this Court has already decided the license-suspension issue. DE 192 at PageID 3966-67. This Court did preliminarily enjoin the License-Suspension Provision seven years ago. But it did so because it determined that "the health and safety concerns" cited as justifying the License-Suspension Provision were, on the limited record at the time, "tenuous." Preliminary-Injunction Order, DE 28 at PageID 342. Even on a limited record and in the pre-*Dobbs* legal landscape, this Court in 2015 "recognize[d] the Director's position that the issuance of an injunction would present health and safety risks to the patients where it is not clear that the clinics have satisfied the State-identified standards for emergency care . . . ." *Id.*; *see also* DE 187 at PageID 3594.

Seven years later, what makes the analysis of the License-Suspension Provision different is (1) the Supreme Court's *Dobbs* decision; and (2) the Director's uncontroverted expert reports. In *Dobbs*, the Supreme Court recognized that States have "legitimate interests" in protecting "prenatal life at all stages of development." *Dobbs*, 142 S. Ct. at 2284. In light of that recognition, Ohio's post-suspension process provides sufficient procedural due process to Plaintiffs. The health and safety concerns this Court discussed in its 2015 Preliminary-Injunction Order are no longer the only constitutional considerations. Ohio's legitimate interest is protecting unborn life is also a crucial part of the analysis.

Moreover, the Director's December 2021 expert reports show that those health and safety concerns are no longer tenuous but concretely proven by unrefuted evidence. Plaintiffs failed

10

entirely to address the Director's argument and the supporting evidence—the expert reports—in their Response, instead contending that "claims about the safety of abortion are irrelevant to summary judgment." DE 192 at PageID 3967. If that were true, one is hard pressed to understand why both Plaintiffs' Third Amended Complaint and Motion for Summary Judgment each include an entire section devoted to abortion safety. 3d Am. Compl. ¶¶20-32, DE 177 at PageID 3275-77; Pls' MSJ, DE 184-1 at PageID 3477-78.

But as this Court has already recognized, the health and safety of patients is more than relevant—it is an important consideration in determining whether post-suspension proceedings are sufficient. Preliminary-Injunction Order at PageID 342. But Plaintiffs submitted no updated expert reports or declarations regarding abortion safety with their motion for summary judgment, leaving the Director's December 2021 expert reports uncontroverted. As discussed at length in the Director's Motion for Summary Judgment, those expert reports detail the compelling health and safety concerns that justify not only Ohio's WTA Requirement but also its decision to provide administrative hearings after the suspension of a license but prior to any final revocation. DE 187 at PageID 3597-3601.

Plaintiffs incorrectly claim that Ohio's post-deprivation review process "plainly fails to provide *any* substantive review of the automatic variance denial." DE 192 at PageID 3968. But as discussed above, Plaintiffs have no property interest in a variance. *See also* DE 187 at PageID 3602-06. And the case Plaintiffs lean on proves otherwise. In *Women's Med Center of Dayton v. State Department of Health*, Women's Med Center of Dayton (the "Dayton Clinic") appealed the trial court's judgment affirming an adjudication order revoking the Dayton Clinic's ambulatory surgical facility license. 2019-Ohio-1146, ¶1 (2d Dist. Ct. App.). The Dayton Clinic had the opportunity to

11

press a number of arguments in the trial court, including that ODH's decision was contrary to law, that some of the regulations ODH relied upon were unenforceable, that the Dayton Clinic was entitled to a hearing *prior* to the denial of the variance, and that the denial of the Dayton Clinic's variance request was not supported by reliable, probative, and substantial evidence. *Id.* ¶¶7-9. After an extensive analysis, the appellate court determined that ODH's finding that the Dayton Clinic did not comply with Ohio Administrative Code section 3701-83-19(E) was supported by reliable, probative, and substantial evidence and was in accordance with law. *Id.* ¶56. Plaintiffs cannot credibly claim that Ohio law leaves them without "meaningful pre- *or* post-deprivation review." DE 192 at PageID 3968.

Thus, this Court should grant the Director summary judgment on Plaintiffs' claim that the License-Suspension Provision offends procedural due process (Count II of Plaintiffs' Third Amended Complaint).

## CONCLUSION

For the forgoing reasons, and for all the reasons set forth in the Director's Motion for Summary Judgment (DE 187), this Court should grant the Director's Motion for Summary Judgment.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Amanda L. Narog*
AMANDA L. NAROG (0093954)*
ANDREW D. MCCARTNEY (0099853)
  **Lead and Trial Counsel*
Assistant Attorneys General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Amanda.Narog@OhioAGO.gov
Andrew.McCartney@OhioAGO.gov

*Counsel for Defendant Director Bruce Vanderhoff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance.

                                        */s/ Amanda L. Narog*
                                        AMANDA L. NAROG (0093954)
                                        Assistant Attorney General